# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CLYNES, Individually and On Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>      v.<br><br>HEBRON TECHNOLOGY CO., LTD., ANYUAN SUN, and CHANGJUAN LIANG,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Michael Clynes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Hebron Technology Co., Ltd. ("Hebron" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Hebron; and (c) review of other publicly available information concerning Hebron.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Hebron securities between April 24, 2020 and June 3, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Hebron conducts equipment and engineering service operations focusing on the research, development and manufacture of fluid equipment including valves, pipe fittings and others. Since July 2019, the Company has also provided financial advisory service operations.

3.      On June 3, 2020, Grizzly Research presented a report alleging that Hebron is an "insider enrichment scheme without economic basis," citing questionable transactions including an undisclosed related party transaction for nearly $26 million.

4.      On this news, the Company's share price fell $8.26, or nearly 37%, to close at $14.29 per share on June 3, 2020, on unusually heavy trading volume. The stock continued to decline the next trading session by $2.51, or nearly 18%, to close at $11.78 per share on June 4, 2020, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that many of

Hebron's acquisitions, including Beijing Hengpu and Nami Holding (Cayman) Co., Ltd., involved undisclosed related parties; (2) that the Company's disclosure controls regarding related party transactions was ineffective; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.      Plaintiff Michael Clynes, as set forth in the accompanying certification, incorporated by reference herein, purchased Hebron securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading

statements and/or material omissions alleged herein.

12.     Defendant Hebron is incorporated under the laws of the British Virgin Islands with its principal executive offices located in Wenzhou City, Zhejiang Province, People's Republic of China. Hebron's Class A common stock trades on the NASDAQ exchange under the symbol "HEBT."

13.     Defendant Anyuan Sun ("Sun") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Changjuan Liang ("Liang") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Sun and Liang (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Hebron conducts equipment and engineering service operations focusing on the research, development and manufacture of fluid equipment including valves, pipe fittings and others. Since July 2019, the Company has also provided financial advisory service operations.

**Materially False and Misleading**
**Statements Issued During the Class Period**

17.     The Class Period begins on April 24, 2020. On that day, Hebron filed its annual

report on Form 20-F with the SEC for the period ended December 31, 2019. Therein, the Company

stated, "Except as set forth in our discussion below in 'Related Party Transactions,' our directors

and officers have not been involved in any transactions with us or any of our affiliates or associates

which are required to be disclosed pursuant to the rules and regulations of the SEC." Specifically,

as to related party transactions, the report stated, in relevant part:

> There are no other related party transactions for the year ended December 31, 2019,
> 2018 and 2017, except the transactions mentioned below.
>
> Starting on July 12, 2019, we rented office from NiSun Shanghai and incurred
> $63,749 rent expense for the year ended December 31, 2019. The annual rent from
> NiSun Shanghai is approximately $113,200.
>
> As of December 31, 2019, we had due to related party balance of $7,345,399 due
> to Mr. Bodang Liu, our largest shareholder, of which, $7 million was related to
> purchase price payable for acquisition of NiSun BVI. The due to related party
> balance was non-interest bearing and due on demand. There was nil balance due to
> related party as of December 31, 2018 and 2017.
>
> From time to time, our chief executive office and his immediate family members
> jointly provided guarantees or personal assets as collateral to our loan agreements,
> trade financing agreements, letters of guarantee, funding agreements and other
> credit agreements with commercial banks. For the years ended December 31, 2019,
> 2018 and 2017, the outstanding bank loan balance amounted to $861,846,
> $1,698,058 and $872,852, respectively, were guaranteed by the Group's chief
> executive officer and his immediate family members.

18.     Regarding the Company's disclosure controls, the report stated:

> As of December 31, 2019, the end of the fiscal year covered by this report, our
> management, under the supervision and with the participation of our Chief
> Executive Officer and Chief Financial Officer, performed an evaluation of the
> effectiveness of our disclosure controls and procedures. Based on the evaluation,
> our Chief Executive Officer and Chief Financial Officer concluded that, as of
> December 31, 2019, our disclosure controls and procedures were ineffective. Such
> conclusion is due to the presence of material weakness in internal control over
> financial reporting as described below.

* * *

Based on the assessment, management determined that, as of December 31, 2019, we did not maintain effective internal control over financial reporting due to the existence of the following material weaknesses:

- The Company does not have adequate internal accounting personnel with sufficient knowledge of the US GAAP and SEC reporting standards, which could lead to material misstatements being undetected in a timely manner.

\* \* \*

The following changes in our internal controls over financial reporting occurred during the twelve months ended December 31, 2019 and have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting:

- We have begun to maintain written policies and procedures, and prepare Board minutes and resolutions for significant transactions on a timely basis. We believe these efforts will improve our internal controls.

19.     On May 22, 2020, the Company issued a press release to announce that it would acquire Nami Holding (Cayman) Co., Ltd. The press release stated, in relevant part:

Hebron Technology Co., Ltd. ("Hebron" or the "Company") (Nasdaq: HEBT), a technology oriented enterprise group conducting business in the pharmaceutical equipment and engineering industry segment and financial services industry segment, today announced that it has entered into a definitive share purchase agreement (the "Agreement") with Nami Holding (Cayman) Co., Ltd. ("Nami") and Nami Holding (BVI) Co., Ltd (SPV), shareholder of Nami (the "Seller"), to acquire all of the outstanding ordinary shares of Nami. Nami is the parent company of a financial advisory services group comprising subsidiaries and a contractually controlled operating company in China.

Pursuant to the Agreement, the Seller will receive aggregate consideration of RMB 180 million (approximately $25.38 million) valued as of the date the Agreement was executed, consisting of RMB 50 million (approximately $7.05 million) in cash and 1,562,726 shares of the Company's Class A common shares, par value $0.001 per share, based on the weighted average closing price for the five trading days immediately prior to the execution of the Agreement.

"We are pleased to announce that we have entered into a definitive share purchase agreement with Nami Holding (Cayman) Co., Ltd. and its owner for the strategic acquisition of Nami", said Mr. Anyuan Sun, the CEO of Hebron Technology Co. Ltd., "this acquisition, once completed, will greatly enhance our financial advisory services capacities and signify that we have reached a milestone in implementing our strategic transition from a traditional industrial technology-based product and service provider to an innovative technology-driven and industry-based financial

advisory services provider. We believe that Nami acquisition will further enhance our competitiveness in China's financial services marketplace."

20.    The above statements identified in ¶¶ 17-19 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that many of Hebron's acquisitions, including Beijing Hengpu and Nami Holding (Cayman) Co., Ltd., involved undisclosed related parties; (2) that the Company's disclosure controls regarding related party transactions was ineffective; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

21.    On June 3, 2020, Siegfried Eggert, CEO of Grizzly Research, presented a report alleging that Hebron is an "insider enrichment scheme without economic basis," citing questionable transactions including an undisclosed related party transaction for nearly $26 million. An article describing the presentation reported:

> Liu became the company's controlling shareholder in 2019 by paying $2 million for 7.78 million shares at a 70% discount to market price. The company also acquired Shanghai Fintech by acquiring NiSun International Enterprise Management Group from Liu for $7 million at the same time. Eggert describes the business as "sketchy" and "too good to be true."

> He also found multiple pieces of evidence pointing to undisclosed related parties selling companies to Hebron Technology. For example, he describes the acquisition of undisclosed related party Beijing Hengpu as a "sham." The deal was valued at more than $11 million. Now six months after the acquisition, ownership still hasn't even transferred. Eggert also said Beijing Hengpu is a related party of Liu and Hebron.



He also called attention to an undisclosed related party transaction involving Nami Holding Company for about $25.8 million in cash and stock last month. He describes Shanghai Nami as "an alter ego of Benefactum Beijing," which is 99.99% owned by Liu. He also believes the company isn't even viable.

"At the end of the day, investors are left with a boring business and a bunch of worthless toxic companies, while Bodang Liu and insiders walk away with over $200M in value," Eggert said.

22.    On this news, the Company's share price fell $8.26, or nearly 37%, to close at $14.29 per share on June 3, 2020, on unusually heavy trading volume. The stock continued to decline the next trading session by $2.51, or nearly 18%, to close at $11.78 per share on June 4, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

or otherwise acquired Hebron securities between April 24, 2020 and June 3, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Hebron's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Hebron common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Hebron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Hebron; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

29.     The market for Hebron's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Hebron's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Hebron's securities relying upon the integrity of the market price of the Company's securities and market information relating to Hebron, and have been damaged thereby.

30.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hebron's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Hebron's business, operations, and prospects as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hebron's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the

Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants'
materially false and/or misleading statements during the Class Period resulted in Plaintiff and other
members of the Class purchasing the Company's securities at artificially inflated prices, thus
causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

32.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused
the economic loss suffered by Plaintiff and the Class.

33.   During the Class Period, Plaintiff and the Class purchased Hebron's securities at
artificially inflated prices and were damaged thereby.  The price of the Company's securities
significantly declined when the misrepresentations made to the market, and/or the information
alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,
causing investors' losses.

## SCIENTER ALLEGATIONS

34.   As alleged herein, Defendants acted with scienter since Defendants knew that the
public documents and statements issued or disseminated in the name of the Company were
materially false and/or misleading; knew that such statements or documents would be issued or
disseminated to the investing public; and knowingly and substantially participated or acquiesced
in the issuance or dissemination of such statements or documents as primary violations of the
federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue
of their receipt of information reflecting the true facts regarding Hebron, their control over, and/or
receipt and/or modification of Hebron's allegedly materially misleading misstatements and/or their
associations with the Company which made them privy to confidential proprietary information
concerning Hebron, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

35.   The market for Hebron's securities was open, well-developed and efficient at all
relevant times.  As a result of the materially false and/or misleading statements and/or failures to

disclose, Hebron's securities traded at artificially inflated prices during the Class Period.  On June 1, 2020, the Company's share price closed at a Class Period high of $23.33 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Hebron's securities and market information relating to Hebron and have been damaged thereby.

36.      During the Class Period, the artificial inflation of Hebron's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hebron's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Hebron and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.      At all relevant times, the market for Hebron's securities was an efficient market for the following reasons, among others:

(a)      Hebron shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, Hebron filed periodic public reports with the SEC and/or the NASDAQ;

(c)      Hebron regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Hebron was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for Hebron's securities promptly digested current information regarding Hebron from all publicly available sources and reflected such information in Hebron's share price.  Under these circumstances, all purchasers of Hebron's securities during the Class Period suffered similar injury through their purchase of Hebron's securities at artificially inflated prices and a presumption of reliance applies.

39.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Hebron who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

41.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Hebron's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hebron's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hebron's financial

well-being and prospects, as specified herein.

45.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Hebron's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hebron and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Hebron's financial well-being and prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Hebron's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Hebron's securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Hebron was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Hebron securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     Individual Defendants acted as controlling persons of Hebron within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, Hebron and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 9, 2020

By: *s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

-and-

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Michael Clynes*

**SWORN CERTIFICATION OF PLAINTIFF**

**HEBRON TECHNOLOGY CO., LTD. SECURITIES LITIGATION**

I, Michael Clynes, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Hebron Technology Co., Ltd. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Hebron Technology Co., Ltd. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:


6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


6/8/2020

_____
Date

DocuSigned by:

DD13E1B5C0F242F...

_____
Michael Clynes

**Michael Clynes's Transactions in Hebron Technology Co., Ltd.**
**(HEBT)**
**Account 1**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|------------|
| 6/3/2020 | Bought | 1,500 | $19.8900 |

**Account 2**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|------------|
| 6/3/2020 | Bought | 500 | $17.7500 |
| 6/3/2020 | Bought | 3 | $17.7500 |
| 6/3/2020 | Bought | 100 | $16.2500 |
| 6/3/2020 | Bought | 20 | $16.2500 |
| 6/3/2020 | Bought | 100 | $16.2500 |
| 6/3/2020 | Bought | 110 | $16.2500 |
| 6/3/2020 | Bought | 247 | $16.0000 |
| 6/3/2020 | Bought | 169 | $16.0000 |
| 6/3/2020 | Bought | 26 | $16.0000 |
| 6/3/2020 | Bought | 3 | $16.0000 |
| 6/3/2020 | Bought | 10 | $16.0000 |
| 6/3/2020 | Bought | 2 | $16.0000 |
| 6/3/2020 | Bought | 12 | $16.0000 |