**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL CLYNES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEBRON TECHNOLOGY CO., LTD., ANYUAN SUN, and CHANGJUAN LIANG,<br><br>Defendants. | Case No. 1:20-cv-04420-PAE |
| EDWARD A. DAHLKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEBRON TECHNOLOGY CO., LTD., ANYUAN SUN, and CHANGJUAN LIANG,<br><br>Defendants. | Case No. 1:20-cv-04746-PAE |

**MICHAEL CLYNES' REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

Plaintiff Michael Clynes ("Clynes") respectfully submits this memorandum of law in further support of his motion for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 9), and in reply to Edward A. Dahlke's ("Dahlke") opposition to Clynes' motion (Dkt. No. 15, "Dahlke Opp.").

## I.  ARGUMENT

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") mandates that the Court appoint the "most adequate plaintiff" to serve as lead plaintiff, and provides a presumption that the most adequate plaintiff is the movant that "has the largest financial interest in the relief sought by the class" that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B).

As demonstrated in Clynes' opening memorandum of law, and opposition to Dahlke's lead plaintiff motion (Dkt. Nos. 10, 13), Clynes satisfies all of the requirements to be the "presumptively most adequate plaintiff" under the PSLRA, including having the largest financial interest in the relief sought by the class.

Dahlke, however, attempts to rebut the presumption that Clynes is the most adequate plaintiff on the basis that Clynes purchased certain of his shares on June 3, 2020 at 10:26 a.m.,[1] rather than one minute earlier, at 10:25 a.m. *See* Dahlke Opp. at 6-17. As explained *infra*, Dahlke's baseless attack is insufficient to rebut the presumption that Clynes is the most adequate plaintiff. As such, Clynes should be appointed as lead plaintiff, and his selection of counsel should be approved.

---

[1] All times herein are Eastern Daylight Time (EDT).

**A.      Clynes Should Be Appointed as Lead Plaintiff Because Dahlke Failed to Rebut the Presumption that Clynes Is the Most Adequate Plaintiff**

The presumption that Clynes is the most adequate plaintiff may be rebutted only upon "proof" that Clynes "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *see also Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of interest or a defense." *KPMG*, 223 F.R.D. at 324-25; *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same).

Dahlke argues in his opposition memorandum that Clynes is "atypical" and subject to a unique defense. Dahlke Opp. at 6-17. Dahlke's entire attack hinges on the claim that Clynes "purchased Hebron stock ***after*** the truth of the Company's malfeasance had already reached the market." Dahlke Opp. at 8, 13.[2] As Clynes demonstrated, he entered a purchase order for 1,500 shares of HEBT at 06:38:30 a.m. on June 3, 2020. *See* Dkt. No. 14-1. The trade was executed on the open market at 10:26 a.m. *See id*. Dahlke claims, however, that "Hebron's malfeasance immediately permeated the market after 10:25 a.m." at the start of the Grizzly Research

---

[2] Dahlke also theorizes that Clynes may have "purchased Hebron stock ***before*** the disclosure of the Company's fraud, but at prices unavailable to other investors." Dahlke Opp. at 8, 14. However, this attack can be set aside because Clynes provided proof that he purchased shares at 10:26 a.m. (Dkt. No 14-1), and Dahlke admits that this purchase could have occurred at that time. Dahlke Opp. at 13. Since Clynes purchased the shares at issue on the open market through his broker (Dkt. No. 14-1), Dahlke's claim that these transactions are comparable to private transactions that were not executed on public exchanges is meritless. *See* Dahlke Opp. at 4, 17. As such, Dahlke's citations to cases that involve private transactions are irrelevant. *Id.*

2

presentation. *See* Dahlke Opp. at 10. On this basis, Dahlke claims that Clyne purchased all of his shares "*after* the truth was revealed" and that Clynes is ineligible to be appointed as the lead plaintiff on this basis. *See* Dahlke Opp. at 15-16. Dahlke's attack fails for multiple reasons.

As an initial matter, Dahlke misleads the Court by failing to mention that the Grizzly Research presentation was a private event, not a public event. *See* Dahlke Opp. at 9-10. The presentation was made at the Contrarian Investor Virtual Conference No. 2 ("Contrarian Conference"), which was closed to the general public, but open to paying attendees.[3] Moreover, as seen and explained in the video of the Contrarian Conference, which was later released to the public, "[t]o ensure attendees receive[d] full value from this event, there [was] a strict embargo on media coverage until after 1130 EDT."[4] As such, Grizzly Research's presentation on Hebron was not *publicly* available at 10:25 a.m. In fact, Dahlke concedes that "Grizzly Research published on its website the negative report it had earlier presented regarding Hebron, announcing the report's publication via Twitter at 11:31 a.m." Dahlke Opp. at 11. As such, Dahlke cannot claim that the content of the Grizzly Research presentation was *publicly* disclosed until approximately 11:31 a.m. This alone eviscerates Dahlke's argument.

Moreover, any price movement due to selling that occurred at 10:25 a.m. by Contrarian Conference attendees, or others with access to information about the private conference would be considered "leakage"—downward price movement based on sales by persons with advanced knowledge of a pending public disclosure. *See, e.g.*, *Maliarov v. Eros Int'l PLC*, No. 15-cv-8956,

---

[3] *See* ContrarianPod.com, Contrarian Investor Virtual Conference No. 2 Set For June 3, With Special Discount For Listeners, *available at* https://contrarianpod.com/events/contrarian-investor-virtual-conference-set-for-june-3/ (last visited August 27, 2020).

[4] *See* YouTube.com, Contrarian Investor Virtual Conference No. 2 -- Full Recording, *available at* https://www.youtube.com/watch?v=cmcrLg0YeSw (last visited August 27, 2020) ("Conference Recording") (quotation available at approximately 2:18 of the video).

2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) ("[The] Complaint . . . alleges that Eros's stock began to decline as early as October 13, 2015 as a result of 'leakage' from 'those behind, affiliated with, or those who had early access to the Alpha Exposure Report.'"); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 501 (D. Conn. 2017) ("Proceeding under what is known as a 'leakage theory,' a plaintiff may allege facts showing that evidence of the existence of a false statement 'began to leak' prior to the date the statement's falsity was fully disclosed."); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 271 (D. Mass. 2005) (an example of leakage is "information from an analyst report that reaches the market and impacts prices prior to its official release"). Leakage is sometimes invoked by a movant "to prove that [he] was harmed notwithstanding the fact [he] sold [his] shares prior to the complete disclosure of the alleged fraud." *Galmi*, 302 F. Supp. 3d at 501. However, Dahlke cites to no instance in which "leakage" was invoked to argue that a movant that purchased shares before a public corrective disclosure, and held those shares through the corrective disclosure, was ineligible to be lead plaintiff. Such an argument would be completely meritless.

Additionally, it appears that Clynes did not even purchased during a period of "leakage." Dahlke points to the triggering of SEC Rule 201, the "short-sale rule," at 10:26 a.m. to prove that information from Grizzly Research's presentation was entering the market at that time. *See* Dahlke Opp. at 9.[5] However, this claim is belied by Dahlke's own pricing chart submitted with his

---

[5] Dahlke does not claim and has not provided any authority for the proposition that the triggering of Rule 201 is itself is a corrective disclosure. Rule 201 imposes restrictions on short selling whenever a company's share price declines by 10% compared to the prior day's closing price. The rule is designed to preserve investor confidence and promote market efficiency. *See* SEC Approves Short Selling Restrictions (February 10, 2010), https://www.sec.gov/news/press/2010/2010-26.htm. Such declines are not uncommon for Hebron—occurring the day before the start of the class period, April 23, 2020, and twice during the class period, May 11, 2020, and June 3, 2020. Pricing information for Hebron is available at Yahoo Finance, Hebron Technology Co., Ltd. (HEBT), *available at* https://finance.yahoo.com/quote/HEBT (last visited August 29, 2020).

opposition brief. *See* Dahlke Opp. at 8. Hebron's stock price plummeted in the minutes following the opening of the market on June 3, 2020, long before the Grizzly Research presentation began, and then stabilized. *See id.* At 10:26 a.m., there was a sudden dip in Hebron's stock price, which triggered Rule 201, but then an immediate recovery. *See id.* Then, at 10:28 a.m., after Clynes had purchased shares, Hebron's share price began to steadily decline. This decline coincides with the first bit of cryptic public information identified by Dahlke that potentially revealed to the market only that Hebron was the target of the Grizzly Research presentation. *See* Dahlke Opp. at 10 (TradeSquawk post at 10:28 a.m. that "$HEBT gRIZZLY rESEARCH NEG REPORT OUT"). As such, it does not even appear there was measurable "leakage" occurring when Clynes purchased his shares at 10:26 a.m.

As demonstrated above, no part of the Grizzly Research presentation was publicly disclosed when Clynes purchased his shares at 10:26 a.m. However, assuming for the sake of argument that it were public, the Grizzly Research presentation was not a single corrective disclosure—it was a series of corrective disclosures that occurred throughout the presentation. Clynes entered an order to purchase 1,500 shares long before 10:25 a.m., and the trade was executed at 10:26 a.m., before the vast majority of the disclosures in the Grizzly Research presentation. The Grizzly Research presentation began at 10:25:17 a.m.[6] and it lasted just over 26 minutes—from 54:41 to 1:20:45 of the Conference Recording. At the beginning of the presentation

---

[6] Dahlke claims the Grizzly Research presentation began at 10:24:41 a.m. *See* Dahlke Opp. at 9. This is incorrect. Dahlke appears to incorrectly assume that the Contrarian Conference began at exactly 9:30 a.m. In reality, it began at 9:30:36 a.m. The correct time is deduced by noticing that at 1:21:24 of the Conference Recording, the Grizzly Research presenter's computer screen clock is visible, and the clock switches from 10:25 a.m. to 10:26 a.m. Subtracting 1:21:24 from 10:26 a.m. yields 9:30:36 a.m. Since the Grizzly Research presentation begins at 54:41 of the Conference Recording, adding 54:41 to 9:30:36 a.m. yields a Grizzly Research presentation start time of 10:25:17 a.m.

(54:41 of the Conference Recording) the Grizzly Research presenter revealed that Hebron was the subject of his presentation. From 55:03 to 55:45 of the Conference Recording, the Grizzly Research presenter introduced Grizzly Research and provided a legal disclaimer. At 55:45 of the Conference Recording the presenter revealed the name of the presentation: "We Believe Hebron Technology Co., Ltd. (HEBT) is an Insider Enrichment Scheme without Economic Bases." From 56:06 to 57:13 of the Conference Recording, the presenter provided general, publicly available background information about Hebron, and presented a slide that simply stated "All major transactions of the last year were announced and portrayed as arms-length, but we could link them all back to company insiders." At the conclusion of this portion of the presentation, it was 10:27:30 a.m. and Clynes' purchase of 1,500 shares had already been executed at 10:26 a.m. The presentation continued for another 23 minutes and 32 seconds, during which Grizzly Research presented more than a dozen additional slides, full of details and disclosures regarding Grizzly Research's investigation and view of Hebron.

Clynes placed his 1,500 share purchase order long before every corrective disclosure in the presentation, and it was executed long before every corrective disclosure in the presentation, except for possibly two statements (identified above) that Grizzly Research had not yet provided any evidence for. As such, even if this Court considers the then-*private* Contrarian Conference to be a source of public disclosures regarding Hebron, Clynes clearly purchased shares before nearly all of them. As such, Clynes is not atypical or subject to the unique defense that he purchased all his shares after the final corrective disclosure.

Moreover, even if Clynes purchased shares after one or more partial corrective disclosures, that would not render him atypical or subject to unique defenses. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 354-55 (S.D.N.Y. 2011) (holding that stock purchases following an article

reporting a company's fraud did not render a lead plaintiff movant atypical since "the article was merely a third-party report that remained unconfirmed by [the company] itself"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345-46 (S.D.N.Y. 2009) (holding that stock purchases following a partial corrective disclosure did not render a lead plaintiff movant atypical since the "true extent" of the fraud had not yet been revealed). As such, Dahlke has failed to rebut the presumption that Clynes is the most adequate plaintiff.

Since Clynes is the presumptively most adequate plaintiff, and Dahlke has failed to rebut the presumption, Clynes should be appointed as lead plaintiff, and his selection of counsel should be approved. *See Tronox*, 262 F.R.D. at 344 (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

**B.      Dahlke Should Not Be Appointed as Lead Plaintiff Because He Demonstrated His Willingness to Put His Own Interests Above Those of the Class**

Dahlke's lead plaintiff motion is not entitled to consideration since he has a smaller financial interest than Clynes and failed to rebut the presumption that Clynes is the most adequate plaintiff. *See Tronox*, 262 F.R.D. at 344. However, if this Court were to determine that Dahlke has rebutted the presumption, the Court should still reject Dahlke's lead plaintiff motion because he is an inadequate class representative. Dahlke put his own interests above those of the class. The trading volume for HEBT on June 3, 2020 was 1,028,900 shares.[7] Clynes is only one of many investors that purchased shares on that day. In a bid to be appointed lead plaintiff, however, Dahlke forwarded arguments in his opposition that undermine those class members' legal claims— potentially cutting them out of the class. He even did this after filing a motion specifically seeking

---

[7] For information regarding volume, *see* Yahoo Finance, Hebron Technology Co., Ltd. (HEBT), *available at* https://finance.yahoo.com/quote/HEBT (last visited August 29, 2020).

to represent these same June 3, 2020 purchasers. *See* Dkt. No. 5 (seeking to represent a class that includes June 3, 2020 purchasers). The Court should not appoint Dahlke to be a fiduciary for class members and investors that he is currently throwing under the bus in a bid to be appointed lead plaintiff. Clynes is the only movant that has not taken a position against fellow class members and should therefore be appointed as lead plaintiff.

## C.    Clynes' Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 11-3. Accordingly, Movants' selection of lead counsel for the class should be approved. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) (approving Glancy Prongay & Murray LLP as lead counsel and finding the firm "competent and experienced").

Respectfully submitted,

DATED: September 2, 2020   **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff and Lead Plaintiff Movant Michael Clynes, and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On September 2, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 2, 2020.


*s/ Gregory B. Linkh*
Gregory B. Linkh