UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CLYNES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEBRON TECHNOLOGY CO., LTD., ANYUAN SUN, and CHANGJUAN LIANG,<br><br>Defendants. | Case No.  1:20-cv-04420-PAE<br><br>SUR-REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF EDWARD A. DAHLKE FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION OF MICHAEL CLYNES |
| EDWARD A. DAHLKE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEBRON TECHNOLOGY CO., LTD., ANYUAN SUN, and CHANGJUAN LIANG,<br><br>Defendants. | Case No.  1:20-cv-04746-PAE |

Movant Dahlke[1] respectfully submits this Sur-Reply Memorandum of Law in further support of his motion for consolidation of the Related Actions, appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 5); and in opposition to the competing motion of Clynes (Dkt. No. 9).

**PRELIMINARY STATEMENT**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* who satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, of the two competing movants before the Court, only Dahlke satisfies all of the statutory criteria.  While Clynes has alleged a larger loss than Dahlke in connection with his Class Period purchases of Hebron securities, as discussed at length in Dahlke's opposition brief (*see generally* Dkt. No. 15), Clynes is atypical and subject to unique defenses, and therefore disqualified from consideration.  Nor do any of the arguments adduced in Clynes' reply brief (Dkt. No. 20) change the analysis.

**ARGUMENT**

**Clynes Is Atypical And Subject To Unique Defenses Because He Has Conceded That He Purchased Hebron Securities <u>After</u> The Company's Malfeasance Was Disclosed To The Market**

Clynes's reply concedes the fundamental point that renders Clynes atypical within the meaning of Fed. R. Civ. P. 23, and thus subject to unique defenses—namely, the fact that Clynes acquired Hebron stock *after* Hebron's malfeasance was disclosed.  Accordingly, Clynes plainly

---

[1] All capitalized terms herein are defined in Dahlke's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 7, 15.

1

cannot be entitled to rely on the presumption of reliance, established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), premised upon "fraud-on-the-market, which is rebuttable if if a defendant "can make 'any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at fair market price[.]'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 292 (S.D.N.Y. 2003) (quoting *Basic*, 485 U.S. at 248). Clynes acknowledges the accuracy of Dahlke's contention that Clynes' purchase of 1,500 Hebron shares occurred either at 10:26 a.m. or thereafter. Dkt. No. 20 at 2. Clynes has not disputed the fact that investors began to learn of Hebron's malfeasance at 10:25 a.m.—*i.e.*, **before** Clynes acquired his shares. In ostensible support of his motion, Clynes has submitted a letter from the Help Desk of Fidelity Investments (the "Fidelity Letter"), stating that Clynes placed an order for 1,500 shares of Hebron stock at 6:38:30 a.m. on June 3, 2020, and that said order was executed at 10:26 a.m. Dkt. No. 14-1 at *2. Dahlke respectfully submits, however, that the putative Class in this litigation has too much at stake for the selection of a Lead Plaintiff to turn on unsworn *pro forma* clerical correspondence from a brokerage's help desk, and that the Court accordingly should not credit the Fidelity Letter as somehow dispositive, as Clynes urges. Should this litigation ultimately proceed to discovery with Clynes as Lead Plaintiff, the disclosure of additional documents contradicting the unsworn Fidelity Letter would provide Defendants with ample ammunition to disqualify Clynes. In short, appointing Clynes on the purported strength of the Fidelity Letter is to subject the Class to the lingering specter of the dismissal of this entire class action, solely because of debilitating issues that are unique to Clynes. There is simply no reason to so burden the Class when Dahlke stands ready to serve as Lead Plaintiff.

In any event, even ***assuming*** the accuracy of the representations made in the Fidelity Letter, it nevertheless bolsters the case that Clynes is inadequate because he purchased his all of his

Hebron shares either at or after 10:26 a.m., *after* the market began to learn of the alleged fraud. Clynes inaccurately asserts that because the Contrarian Investor Virtual Conference No. 2 (the "Contrarian Conference") "was closed to the general public, but open to paying attendees", the Grizzly Research presentation at the Contrarian Conference could not have constituted a corrective disclosure of Hebron's malfeasance, and claims that this fact "alone eviscerates Dahlke's argument." Dkt. No. 20 at 3. Not so. The Contrarian Conference may have been open only to paying attendees, but those attendees were members of the investing public, and it is evident—as set forth at length in Dahlke's opposition brief—that many members of the investing public quickly began dumping their Hebron shares after the Grizzly Research presentation commenced, and that word of Grizzly Research's findings regarding Hebron was rapidly disseminated throughout the market, well before its public posting on the Grizzly Research website at 11:31 a.m. Within approximately one minute after Grizzly Research began presenting its negative thesis regarding Hebron, Hebron's stock price had plummeted sharply enough to trigger the "circuit breaker" implemented by U.S. Securities and Exchange Commission Rule 201 to curtail further short sales of Hebron stock, and social media posts by market observers clearly indicated that the substance of the Grizzly Research presentation had reached the market. *See* Dkt. No. 15 at 9-11. Indeed, a mere three minutes after the Grizzly Research presentation, the Stocktwits message board user TradeSquawk issued a post regarding the negative short seller report. *See* Dkt. No. 16-4. Less than one hour after the 10:25 a.m. presentation, at 11:20 a.m., the Contrarian Investor Podcast (the conference's host) published a tweet stating: "$HEBT shares down 24% after @ResearchGrizzly's presentation at our virtual investor conference", reflecting that the Grizzly Research report began hammering Hebron's share price well before 11:31 a.m. *See* Dkt. No. 16-5. Significantly, Clynes even admits (as he must) that by the time that he made his purchase of

3

Hebron securities, at least one slide and "two statements" discussing the related party transactions at issue in this Action was presented at the Contrarian Investor conference, conceding that at least some of the content of the short seller report had begin to made public prior to his purchase of Hebron's shares. *See* Dkt. No. 20 at 2-3.

Contrary to Clynes's argument, whether ***all*** of the details of the Grizzly Research report had reached the market prior to Clynes's purchases is of no consequence. In *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court was clear that for claims arising under Section 10(b) of the Securities Exchange Act of 1934, loss causation turns upon when "the relevant truth ***begins to leak out***." *Id.* at 342 (emphasis added). *See also Basic*, 485 U.S. at 248 (in order to trigger fraud on the market presumption, plaintiff must allege that he "traded the stock between when the misrepresentations were made and when the truth was revealed"). Here, Clynes has already conceded that purchased his shares after the truth began to be revealed, cementing is inadequacy to serve as Lead Plaintiff.

## CONCLUSION

For the foregoing reasons and the reasons set forth in his motion and opposition briefs (Dkt. Nos. 7, 15), Dahlke respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Dahlke as Lead Plaintiff; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  September 4, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor

4

New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Edward A. Dahlke and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Edward A. Dahlke*

5