UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE HEBRON TECHNOLOGY CO., LTD. SECURITIES LITIGATION | Case No. 20 Civ. 4420 (PAE)<br><br>CLASS ACTION<br><br>CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br>JURY TRIAL DEMANDED |

Lead Plaintiff Edward A. Dahlke ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation, review and analysis of: (a) regulatory filings made by Hebron Technology Co., Ltd. ("Hebron" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued and disseminated by Hebron; (c) People's Republic of China ("PRC") corporate, legal, and regulatory filings, as well as Chinese-language media coverage of the Company; and (d) review of other publicly available information concerning Hebron.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION AND OVERVIEW**

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Hebron securities between April 24, 2020 and June 3, 2020, both dates inclusive (the

"Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Hebron, which recently changed its name to NiSun International Enterprise Development Group Co., Ltd., is a holding company and conducts its business through its subsidiaries, variable interest entities ("VIEs") and subsidiaries of VIEs in the PRC.  The Company purportedly conducts equipment and engineering service operations focusing on the research, development and manufacture of fluid equipment including valves, pipe fittings and others.  Since July 2019, the Company began providing financial advisory service operations.

3.      Throughout the Class Period, Defendants misled investors by misrepresenting and omitting material information in their public statements regarding material related party transactions, the disclosure of which would have altered the risk profile of their capital.

4.      Specifically, Defendants failed to disclose to investors that at least three of Hebron's recent transactions in a six-month period between December 2019 and May 2020 were material related party transactions.  Additionally, Defendants made affirmative misrepresentations in SEC filings about these transactions.  For example, the Company referred to one undisclosed related party as merely a "private investor," and another as simply an "original shareholder."

5.      As a result of Defendants' failure to disclose the material related party transactions, Hebron was not in compliance with the applicable U.S. GAAP[1] standard regarding related party transactions and the required disclosures, which aims to provide transparency to financial statements readers regarding related party relationships and activity.

6.      Moreover, the Company's disclosure controls regarding related party transactions were ineffective.  Although the Company disclosed in its Annual Report on Form 20-F for the

---

[1] "GAAP" refers to Generally Accepted Accounting Principles.

fiscal year ended December 31, 2019 (the "2019 Annual Report") that, as of December 31, 2019, its disclosure controls were ineffective, and as a result, the Company did not maintain effective internal control over financial reporting due the existence of certain material weaknesses, the material weaknesses described in the 2019 Annual Report failed to discuss anything about the lack of disclosure of the material, related party transactions discussed herein.

7.      On June 3, 2020, Grizzly Research published a scathing research report, which was also presented at an investor conference that same day, alleging that Hebron is an "insider enrichment scheme without economic basis," citing questionable Hebron transactions, including a series of material undisclosed related party transactions (the "Grizzly Report").  Specifically, the Grizzly Report disclosed, among other things, that Hebron's Loong Fang PIPE Transaction, Beijing Hengpu Acquisition, and Nami Holding (Cayman) Acquisition, were material undisclosed related party transactions.

8.      On this news, the Company' s share price fell $8.26, or nearly 37%, to close at $14.29 per share on June 3, 2020, on unusually heavy trading volume.  The stock continued to decline the next trading session by $2.51, or nearly 18%, to close at $11.78 per share on June 4, 2020, on unusually heavy trading volume.

9.      Lead Counsel conducted its own investigation to independently confirm certain facts set forth in the Grizzly Report, and also conducted its own related party analysis to arrive at the conclusion that Hebron's Loong Fang PIPE Transaction, Beijing Hengpu Acquisition, and Nami Holding (Cayman) Acquisition, were material undisclosed related party transactions.

● the Loong Fang PIPE Transaction – First announced by the Company in December 2019, this transaction involves a share purchase agreement between Hebron and two investors for the private placement of approximately 1.05 million of the Company's common shares at $6.21 per share resulting in expected gross proceeds of approximately $6.5 million;

● the Beijing Hengpu Acquisition – On December 31, 2019, the Group, through VIE agreements, started to effectively control Beijing Hengtai Puhui Information Service Co. Ltd. ("Beijing Hengpu") by issuing 1,440,894 shares of Hebron's common stock to Beijing Hengpu's shareholders; and

● the Nami Holding (Cayman) Acquisition – On May 22, 2020, Hebron announced that the Company had entered into a definitive share purchase agreement with Nami Holding (Cayman) Co., Ltd. ("Nami Holding (Cayman)"), and Nami Holding (BVI) Co., Ltd. (SPV) ("Nami Holding (BVI)"), shareholder of Nami Holding (Cayman), to acquire all of the outstanding shares of Nami Holding (Cayman).   The agreement provides that Nami Holding (BVI) will receive aggregate consideration of RMB 180 million (approximately $25.38 million) valued as of the date the agreement was executed, consisting of RMB 50 million (approximately $7.05 million) in cash and 1,562,726 shares of Hebron's Class A common shares, par value $0.001 per share, based on the weighted average closing price for the five trading days immediately prior to the execution of the agreement (or ~$11.73 per share).  .

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>JURISDICTION AND VENUE</u>

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.    As set forth in his previously filed Certification,[2] Plaintiff purchased Hebron securities during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

16.    Defendant Hebron is incorporated under the laws of the British Virgin Islands with its principal executive offices located in Wenzhou City, Zhejiang Province, People's Republic of China.  Hebron's Class A common stock trades on the NASDAQ exchange under the symbol "HEBT."

17.    Defendant Anyuan Sun ("Sun") was Hebron's Chief Executive Officer ("CEO") and Chairman of the Board of Directors at all relevant times.

18.    Defendant Changjuan Liang ("Liang") was the Company's Chief Financial Officer ("CFO") since August 2019 and at all relevant times.

19.    Defendants Sun and Liang (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance

---

[2] *Dahlke v Hebron Technology Co., Ltd., et al.*, No. 1:20-cv-04746, Dkt. No. 1-1.

or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false or misleading statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20. In 2012, Hebron was incorporated under the laws of the British Virgin Islands. Hebron is a holding company and conducts its business mainly through its subsidiaries, VIEs, and subsidiaries of the VIEs, in China.

21. The Company is organized into two core business segments – (i) the equipment and engineering segment; and (ii) the financial services segment. The Company conducts equipment and engineering service operations focusing on the research, development and manufacture of fluid equipment including valves, pipe fittings and others. Beginning in July 2019, the Company began providing financial advisory service operations.

**A.    Bodang Liu Becomes the "Ultimate Controlling Shareholder" of the Group**

22. The Company's initial public offering was in 2016, and until June 2019, Hebron was a disappointing story with a falling stock price. By December 2018, Hebron's share price fell below $1 as compared to its IPO price of $4.00 per share. Because of NASDAQ minimum share price requirements, the Company was in danger of being delisted.

23. In June 2019, Bodang Liu became the largest and controlling shareholder of the Company, and remained so at all relevant times. Hebron's 2019 Annual Report states that Bodang Liu holds 7,778,400 shares of Hebron, which accounts for 46.94% of Hebron's total outstanding shares.

24.     The 2019 Annual Report also describes Bodang Liu as the "ultimate controlling shareholder of the Group." Group is defined as Hebron, its subsidiaries, VIEs, and subsidiaries of the VIEs. In China, this means that Bodang Liu has the most control rights in the Group. Having such a large majority of shareholder control rights means he had the right to exert the most influence over management (over other shareholders) through the election of the board of directors, and as a result, Liu had significant influence over who holds key management positions.

25.     For example, it appears that Liu used his influence to have Defendant Liang appointed as Hebron's CFO. Shortly after Liu took control of the Company, the Company filed a Form 6-K with the SEC on August 13, 2019 announcing that Defendant Liang had been appointed as Hebron's CFO. The August 13, 2019 Form 6-K stated that from August 2018 through April 2019, Defendant Liang had been a senior financial manager for Shanghai NiSun Enterprise Management Group Co., Ltd., *a PRC company controlled by Bodang Liu*, now known as Shanghai NiSun Supply Chain Group Co. Ltd. Since May 2019, Defendant Liang also served as CFO of Fintech (Shanghai) Investment Holding Co., Ltd. which is a subsidiary of NiSun International Enterprise Management Group (British Virgin Islands) Co., Ltd., *a company owned by Bodang Liu* (until it was acquired by Hebron on July 12, 2019).

**B.     Hebron Engaged in a Series of Material Undisclosed Related Party Transactions**

26.     Not long after Bodang Lui took control of the Company, Hebron entered into a series of at least three material undisclosed related party transactions in a six-month period between December 2019 and May 2020 which artificially inflated the price of Hebron's stock. The transactions, which are discussed herein, were the Loong Fang PIPE Transaction, the Beijing Hengpu Acquisition and the Nami Holding (Cayman) Acquisition (collectively, the "Related Party Transactions"). Because the transactions involve a highly-intricate web of relationships, a

relationship map is included for the sake of keeping track of the relationships. Defendants made a number of false or misleading statements about each of these transactions to investors.

27.    Additionally, Hebron was not in compliance with FASB ASC 850,[3] the applicable U.S. GAAP standard regarding related party transactions and the required disclosures, which aims to provide transparency to financial statements readers regarding related party relationships and activity. The Company filed its financial statements on Form 20-F with the SEC in accordance with U.S. GAAP, but failed to make the required disclosures regarding the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition in its financial statements included in Hebron's 2019 Annual Report.

28.    ASC 850-10-50-1 requires that the financial statements include disclosures of material related party transactions. These disclosures must include:

a.    The nature of the relationship(s) involved.

b.    A description of the transactions, including to which no amounts are ascribed, or each period for which income statements are presented, and other information deemed necessary to an understanding of the effects of the transactions on the financial statements.

c.    The dollar amounts of the transactions for each of the periods for which income statements are presented and the effects of any change in the method of establishing the terms for that used in the preceding period….

29.    ASC 850-10-20 provides examples of "related parties" including (emphasis added):

a.    ***Affiliates of the entity.***

b.    Entities for which investments in their equity securities would be required, absent the election of the fair value option under the fair value Option subsection of Section 825-10-15, to be accounted for by the equity method by the investing entity.

---

[3] "FASB" refers to the Financial Accounting Standards Board. "ASC" refers to Accounting Standard Codification.

c.  Trusts for the benefit of employees, such as pension and profit-sharing trusts that are managed by or under the trusteeship of management.

d.  Principal owners of the entity and members of their immediate families.

e.  Management of the entity and member of their immediate families.

f.  Other parties with which the entity may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests.

g.  Other parties that can significantly influence the management or operating policies of the transacting parties or that have an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursing its own separate interests.

30.  ASC 850-10-20 further defines the term "affiliate" as a party that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an entity."  Subsidiaries of an entity are affiliates.

31.  ASC 850-10-20 further defines the term "control" as "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity through ownership, by contract, or otherwise."

32.  Furthermore, the Company was not in compliance with SEC regulations and the 2013 COSO Framework (defined below) due to the Company's failure to disclose in Hebron's 2019 Annual Report that the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition were material, related party transactions.  The Company disclosed in its 2019 Annual Report that, as of December 31, 2019, its disclosure controls were ineffective, and as a result, the Company did not maintain effective internal control over financial reporting due to the existence of certain material weaknesses.  (Specifically, the Company disclosed that it did "not have adequate internal accounting personnel with sufficient knowledge of US GAAP and SEC reporting standards.")

9

*However, the material weaknesses described in the 2019 Annual Report failed to discuss anything about the lack of disclosure of the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition discussed herein.*  Both of these material undisclosed related party transactions are another reason why the Company failed to maintain adequate disclosure controls.

33.    SEC regulations require issuers that file under section 15(d)-15(e) of the Exchange Act, such as Hebron, to maintain disclosure controls and procedures.  Disclosure controls are defined by the SEC as follows:

> *disclosure controls and procedures* means controls and other procedures of an issuer that are designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the Act (15 U.S.C.78a *et seq.*) is recorded, processed, summarized and reported, within the time frame specified in the Commission's rules and forms….

17 CFR § 240.15d-15(e).

34.    By not disclosing that the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition were material related party transactions, the Company also violated the *Reporting Objectives* as described in the Committee of Sponsoring Organizations of the Treadway Commission Report ("COSO"), *Internal Control – Integrated Framework –* 2013 ("Framework"). Guidance from the Framework defines internal control as follows (emphasis added):

> Internal control is a process effected by an entity's board of directors, management, and other personnel, designed to provide reasonable assurance regarding the achievement of objectives relating to operations, ***reporting***, and compliance.

35.    The *Reporting Objectives* set forth in the 2013 COSO Framework state (emphasis added): "These pertain to internal and external financial and non-financial reporting and may encompass reliability, timeliness, ***transparency***, or other terms as set forth by ***regulators***, ***standard setters***, or the entity's policies."

10

1.    **Hebron's Loong Fang PIPE Transaction Was an Undisclosed Related Party Transaction**



36.    On December 9, 2019, prior to the Class Period, the Company filed a Form 6-K and an accompanying press release with the SEC announcing that it had entered into a share purchase agreement with two institutional investors, Jupiter Trading Co., Ltd (BVI) and the Loong Fang Trading Co., Ltd (BVI) ("Loong Fang Trading Co."), for the private placement of 1,048,932 of Hebron's common shares at $6.21 per share, resulting in expected gross proceeds of approximately $6.5 million (the "Loong Fang PIPE Transaction").

37.    The press release included comments from Defendant Sun, the Company's CEO, including the statement that the transaction means "that investors have great interest to our business expansion from industrial technology service to financial technology service." But as explained below, the Loong Fang Trading Co. is actually an undisclosed related party to Hebron. The Loong Fang Trading PIPE Transaction appears to be nothing more than a scheme designed to show interest in the stock by institutional investors in an effort to push the stock price artificially higher.

38.    The 2019 Annual Report stated that "on December 9, 2019, the Group entered into a definitive share purchase agreement *with certain investors* for a private placement of approximately 1.05 million Class A common shares at $6.21 per share."  A copy of the share purchase agreement between Hebron and the two buyers was filed with the 2019 Annual Report as Exhibit ("Ex.") 4.12.  Mr. Shan Jiang was a signing director on behalf of the Loong Fang Trading Co. and the Individual Defendants signed on behalf of Hebron.

39.    On May 1, 2020, Hebron filed a Form 6-K with the SEC, signed by Defendant Sun, along with a press release (Ex. 99.1), announcing that the Loong Fang PIPE Transaction, in which the Company sold shares *to two private investors*, had closed.  The press release stated that the "Company received $6,513,870 in net proceeds for the private placement transaction."

40.    Bodang Liu is a disclosed related party to Hebron.  He has a 46.94% interest in the Company and is the largest shareholder.

41.    SAMR[4] filings show that Bodang Liu is also a 99.99% owner of Benefactum Alliance Business Consultant (Beijing) Co., Ltd. ("Benefactum").  Therefore, Benefactum is an undisclosed related party to Hebron because it is an affiliated entity controlled by Bodang Liu. Because Bodang Liu controls Benefactum and he is a disclosed related party to Hebron, Hebron and Benefactum are related party affiliates.

42.    SAMR records confirm that Benefactum is also the 100% owner of both Puhui Equity Investment Co., Ltd. ("Puhui Investment") and Qianhai Zhonghui Business Information Consulting Co., Ltd. ("Zhonghui").  SAMR records also confirm that Mr. Shan Jiang, who as stated above was signing director of the Loong Fang Trading Co. in connection with the transaction, is also a Supervisor at Puhui Investment since April 14, 2020 and Zhonghui since

---

[4] "SAMR" refers to China's State Administration for Market Regulation.

March 25, 2020.  He held both of these positions prior to the April 24, 2020 filing of the 2019 Annual Report, and the May 1, 2020 filing of the Company's Form 6-K announcing the closing of the Loong Fang PIPE Transaction.

43.    Bodang Liu indirectly controls the Loong Fang Trading Co. through Benefactum's 100% ownership over Puhui Investment and Zhonghui.  Therefore, Hebron and Loong Fang Trading Co. are affiliated entities under common control.

44.    Consequently, ***Benefactum and the Loong Fang Trading Co. are both affiliated entities of Hebron and thus undisclosed related parties.***

45.    The Loong Fang PIPE Transaction was a material transaction for Hebron, both quantitively and qualitatively.

46.    The Loong Fang PIPE Transaction was a quantitatively material transaction as the Company received $6.5 million in net proceeds. This amount represents approximately 310% and 147% of the Company's total cash and restricted cash as of June 30, 2019 and December 31, 2019, respectively.[5]   According to SAB 99, *Materiality*, "one rule of thumb…suggests that the misstatement or omission of an item that falls under a 5% threshold is not material in the absence of especially egregious circumstances."  Since this transaction resulted in net proceeds above 5% of the Company's cash and restricted cash as of June 30 and December 31, 2019, it was a quantitatively material transaction.

47.    Hebron's Loong Fang PIPE Transaction was a qualitatively material transaction because the nature of the transaction would be considered significant to users of the Company's

---

[5] Hebron furnished a Form 6-K on December 17, 2019. This filing included the Company's Unaudited Condensed Consolidated Statements of Consolidated Balance Sheets and Unaudited Condensed Consolidated Statements of Operations for the six-month period ended June 30, 2019.  Hebron reported cash of $23,972 and restricted cash of $2,069,753 in its Consolidated Balance Sheets as of June 30, 2019.  The Company reported cash of $3,452,647 and restricted cash of $959,672 in its Consolidated Balance Sheets as of December 31, 2019.

financial statements.  Furthermore, the transaction had an undisclosed characteristic that would also be considered significant to users of Hebron's financial statements.

48.    Statement of Financial Accounting Concepts No. 8 ("CON 8"), Chapter 3, *Qualitative Characteristics of Useful Financial Information*, defines materiality as follows:

> Materiality is entity specific.  The omission or misstatement of an item in a financial report is material if, in light of surrounding circumstances, the magnitude of the item is such that it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced by the inclusion or correction of the item.

The Loong Fang PIPE Transaction was a related party transaction, in which the related party relationship was not disclosed by the Company in its 2019 Annual Report.  Because transactions with related parties are often not at arms-length and carry increased risk, it is probable that the judgment of a reasonable person relying on the 2019 Annual Report would have been changed or influenced by the disclosure of the related party relationship.

49.    Furthermore, the Loong Fang PIPE Transaction was a qualitatively material transaction due to the Company's significant change in stock price upon the announcement of the transaction.  After the announcement on December 9, 2019, the Company' s share price increased by $2.09, or nearly 34%, to close at $8.27 per share on December 9, 2019, on unusually heavy trading volume.  According to SEC Staff Accounting Bulletin 99 ("SAB 99"), *Materiality*, "a matter is 'material', if there is substantial likelihood that a reasonable person would consider it important." Furthermore, SAB 99 states that a qualitative factor of materiality includes "the demonstrated volatility of the price of a registrant's securities in response to certain types of disclosures."  The Company's significant increase in its stock price upon announcement of the Loong Fang PIPE Transaction makes it clear that the transaction was considered material.

**2.    The Company's Acquisition of Beijing Hengpu Was an Undisclosed Related Party Transaction**



50.    Hebron's 2019 Annual Report states that on December 31, 2019, the Group, through VIE agreements, started to effectively control Beijing Hengtai Puhui Information Service Co. Ltd. ("Beijing Hengpu") by issuing 1,440,894 shares of Hebron's common stock to Beijing Hengpu's shareholders (the "Beijing Hengpu Acquisition").  The Company did not file a Form 6-K or issue a press release announcing the acquisition.

51.    Beijing Hengpu, a PRC company, is purportedly a Fintech platform that focuses on companies in need of financing which are listed on China's NEEQ, nicknamed the New Third Board.[6]  The NEEQ is China's lower-tier stock exchange.  It sets the bar much lower for listing than other exchanges, such as the Shenzhen and Shanghai stock exchanges.  There are no

---

[6] "NEEQ" refers to China's National Equities Exchange and Quotations.

requirements that the companies be profitable or growing. Moreover, China's security regulator has little oversight of the exchange.[7] As such, the risk of encountering fraudulent companies on the NEEQ is much higher and this makes Beijing Hengpu's financing business for companies on the NEEQ subject to increased risk.

52.    The December 15, 2019 Share Exchange Agreement for the Beijing Hengpu Acquisition, filed with the SEC as Ex. 4.13 to Hebron's 2019 Annual Report, states that the sellers were Guoya Investment Holding Co. Ltd. (BVI) ("Guoya BVI") and HongKong D&L Technology Co., Limited ("HongKong D&L"). The agreement states that Guoya BVI had an 80% ownership interest, and HongKong D&L had a 20% ownership interest, in Beijing Hengpu. The purchase price for the exchange of shares was Chinese RMB 80 million, which was approximately $11.4 million.

53.    As explained herein, ***HongKong D&L, Benefactum and Beijing Hengpu are undisclosed related party affiliates of Hebron***.

54.    HKRC's[8] records confirm that HongKong D&L was incorporated in Hong Kong on June 24, 2019 and the company's founder is Xiaoyun Huang ("Huang"). Huang is also HongKong D&L's director and sole owner according to HKRC corporate records, and the Grizzly Report states that he is the company's legal representative. Huang executed the December 15, 2019 Share Exchange Agreement on behalf of HongKong D&L for the Beijing Hengpu Acquisition. The Individual Defendants signed on behalf of Hebron.

55.    According to Beijing Hengpu's SAMR records, Huang was also registered as Beijing Hengpu's Chairman since June 28, 2017, and, as of October 30, 2020, remains the

---

[7] https://www.china-briefing.com/news/neeq-chinas-new-stock-market-smes/
[8] "HKRC" refers to the Hong Kong Registrar of Companies.

Chairman and legal representative of Beijing Hengpu.  Although Hebron claims that "Huang left his position at Beijing Hengpu more than one year before" the Beijing Hengpu Acquisition, the Company admitted that as late as July 31, 2020, Huang was still listed as Beijing Hengpu's legal representative "due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information."

56.    SAMR records confirm that Bodang Liu, Hebron's largest shareholder, owns 99.99% of Benefactum, which operates online financial platform www.hyjf.com ("HuiYingJinFu").  HuiYingJinFu is a P2P platform designed to match companies with investors. Throughout 2019, Huang was also reported to be CEO of both Benefactum and HuiYingJinFu according to multiple media articles.

57.    Bodang Liu, in addition to being the 99.99% owner of Benefactum, is also the Chairman and CEO of Shanghai NiSun Enterprise Management Group Co., Ltd., ("NiSun Shanghai"), a PRC company and a disclosed related party to Hebron, according to NiSun Shanghai's website.[9]  SAMR filings confirm that until October 17, 2019, Bodang Liu was a 99% shareholder of NiSun Shanghai.  Huang is also reported to be NiSun Shanghai's Chief Fintech Officer according to media articles.

58.    SAMR filings confirm that Mr. Peng Jiang has been registered as Beijing Hengpu's director and manager since June 28, 2017.  SAMR filings also confirm that he is a legal representative and 99% shareholder of NiSun Shanghai since October 17, 2019, a disclosed related party of Hebron.  NiSun Shanghai's website also states that he is Vice President of NiSun Shanghai.  Therefore, through his control relationships over NiSun Shanghai and Beijing Hengpu, *Peng Jiang is an undisclosed related party of Hebron.  He is also is an undisclosed related party*

---

[9] On August 5, 2020, Shanghai NiSun Enterprise Management Group Co., Ltd. changed its name to Shanghai NiSun Supply Chain Group Co. Ltd.

*to the Beijing Hengpu Acquisition* (i) via his relationship with NiSun Shanghai; and (ii) because he is also the legal representative of Hebron's 100%-owned VIE company, Fintech (Shanghi) Digital Technology Co., Ltd. ("Shanghai Fintech"), as confirmed by SAMR filings.  (Hebron acquired Shanghai Fintech through acquiring NiSun International Enterprise Management Group (British Virgin Islands) Co., Ltd., ("NiSun BVI") from Bodang Liu on July 12, 2019).

59.    The December 31, 2019 Beijing Hengpu Acquisition was a material transaction for Hebron, both quantitatively and qualitatively.

60.    The Beijing Hengpu Acquisition was a quantitatively material transaction as the fair value of the purchase consideration was approximately $11.4 million.  This amount represents approximately 21% of the Company's book value of equity as of December 31, 2019.[10] Furthermore, included in the fair value of purchase consideration was goodwill of approximately $4.6 million.  This amount represents about 42% of the Company's goodwill as of December 31, 2019.[11]  According to SAB 99, *Materiality*, "one rule of thumb…suggests that the misstatement or omission of an item that falls under a 5% threshold is not material in the absence of especially egregious circumstances."   Since this transaction resulted in the acquisition of identifiable net assets above 5% of the Company's book value of equity, it was a quantitatively material transaction.

61.    The Beijing Hengpu Acquisition was also a qualitatively material transaction because the transaction contained matters that would be considered significant to users of the Company's financial statements.   CON 8, Chapter 3, *Qualitative Characteristics of Useful*

---

[10] Hebron's 2019 Annual Report (at F-3) states that the Company's book value of equity was approximately $53.9 million as of December 31, 2019.

[11] The Company's 2019 Annual Report (at F-3) states that Hebron's goodwill was approximately $11.1 million as of December 31, 2019.

*Financial Information*, states that "the omission or misstatement of an item in a financial report is material . . . if the magnitude of the item is such that it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced by the inclusion or correction of the item."   As stated above, the Beijing Hengpu Acquisition was a related party transaction, and Hebron failed to disclose the related parties in the Company's 2019 Annual Report.  Because transactions with related parties are often not at arms-length and carry increased risk, it is probable that a reasonable person's judgment would have been changed or influenced by the inclusion of this information in the Company's 2019 Annual Report.

62.     Furthermore, the Beijing Hengpu Acquisition was part of the Company's new financial services segment that was created in 2019.  On July 12, 2019, Hebron expanded its business into the financial services industry by acquiring NiSun BVI.  According to SAB 99, a qualitatively material consideration may "concern a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability."  Therefore, any acquisition that is a related party transaction within this new segment would be qualitatively material to users of Hebron's financial statements and should have been disclosed.

**3.    Hebron's Acquisition of Nami Holding (Cayman) Was an Undisclosed Related Party Transaction**



Undisclosed Related Party Transaction: Acquisition of Nami Holding (Cayman)

63.    On May 22, 2020, Hebron filed a Form 6-K with the SEC, signed by Defendant Sun, (the "May 22, 2020 6-K"), along with a press release (Ex. 99.1), announcing that the Company had entered into a definitive share purchase agreement with Nami Holding (Cayman), and Nami Holding (BVI), shareholder of Nami Holding (Cayman), to acquire all of the outstanding shares of Nami Holding (Cayman).

64.    According to the May 22, 2020 6-K, the agreement provides that Nami Holding (BVI) will receive aggregate consideration of RMB 180 million (approximately $25.38 million) valued as of the date the agreement was executed, consisting of RMB 50 million (approximately $7.05 million) in cash and 1,562,726 shares of the Hebron's Class A common shares, par value $0.001 per share, based on the weighted average closing price for the five trading days immediately

prior to the execution of the agreement (or ~$11.73 per share). The agreement was executed on May 12, 2020 and closed shortly thereafter (the "Nami Holding (Cayman) Acquisition"). After the acquisition, Nami Holding (BVI) holds 1,562,726 shares of Hebron, and Hebron holds all of the outstanding shares of Nami Holding (Cayman).

65.     The May 22, 2020 6-K states that Nami Holding (Cayman) is the parent company of a financial services group that is majority-owned and controlled by Mr. Jinbao Li. HKRC records confirm that Mr. Jinbao Li is the founder and owner of Nami Holding (Hong Kong) Co., Limited ("Nami Holding (Hong Kong)"). According SAMR's records, Nami Holding (Hong Kong) owns 100% of Shanghai Naqing Enterprise Management Co., Ltd. ("Shanghai Naqing"), which was established on August 23, 2019.

66.     SAMR records also confirm that on May 20, 2020, all of Shanghai Nami Financial Consulting Co., Ltd.'s ("Shanghai Nami") shares were pledged to Shanghai Naqing. The two Shanghai Nami shareholders who pledged 100% of their shares were Jinbao Li, pledging 85% of Shanghai Nami, and Xin Liu, pledging 15% of Shanghai Nami. According to Hebron's August 14, 2020 Form 6-K filed with the SEC, Jinbao Li has been the CEO of Shanghai Nami since April 2016 and Xin Liu has been the legal representative of Shanghai Nami since February 27, 2017

67.     Effectively, Shanghai Nami is under the control of Nami Holding (Hong Kong). *Jinbao Li is an undisclosed related party along with Nami Holding (Cayman)* due to Jinbao Li's 85% ownership of Shanghai Nami. Since Jinbao Li is an undisclosed related party, *Shanghai Nami is an undisclosed related party* as well (because Mr. Li owns 85% of Shanghai Nami).

68.     Confidential Witness ("CW") 1 was legal counsel at NiSun Shanghai from July 2017 through July 2018. CW 1 prepared legal documents and contracts, and provided legal and compliance opinions for NiSun's Shanghai's financial products and investment activities.

According to CW 1, Shanghai Nami, Benefactum and NiSun Shanghai (a disclosed related party to Hebron) *were really all the same company*, just in different locations.  CW 1 stated that Shanghai Nami sold HuiYingJinFu's financial products under NiSun Shanghai, and that Shanghai Nami was originally just a department within NiSun Shanghai, but was spun off due to compliance-related issues, since P2P corporations are not permitted to conduct sales for their own financial products.

69.    Bodang Liu controls Shanghai Nami through his active involvement as CEO and Chairman of NiSun Shanghai and as the Chairman and Controller of Huiying Financial Holdings ("Huiying Financial"), according to SEC filings.  CW 2 was Jinbao Li's Assistant at Shanghai Nami from February 2018 to February 2019.  During the course of CW 2's employment, CW 2 reported directly to Jinbao Li, who, according to CW 2, was also President of Shanghai Nami.  CW 2 stated that Shanghai Nami is a sales company selling financial products under the same corporate group as HuiYingJinfu.  CW 2 stated that Jinbao Li reported directly to Bodang Liu.  Even though Jinbao Li owned 85% of Shanghai Nami, CW 1 stated that the decision-making powers of Shanghai Nami were mostly controlled by Bodang Liu.  According to CW 1, Jinbao Li's role at Shanghai Nami was mostly that of a professional manager.

70.    NiSun Shanghai is a disclosed related party to Hebron that is controlled by its Chairman and CEO, Bodang Liu.  NiSun Shanghai manages an official WeChat account for the NiSun companies.  WeChat enables its corporate users to open an official account where companies can share press releases and any recent developments.  According to an April 2, 2018 article published by NiSun Shanghai on the WeChat account (the "April 2, 2018 Article"), Shanghai Nami is a subsidiary of Huiying Financial, whose Chairman and Controller is Bodang Liu.  The April 2, 2018 article also disclosed that Jinbao Li, who, as previously stated, is the majority owner of Nami Holding (Cayman), is also the CEO of a subsidiary that is under the

control of both Huiying Financial and NiSun Shanghai, both of which are controlled by Bodang Liu. That subsidiary is believed to be Shanghai Nami, where, as stated in Hebron's August 14, 2020 Form 6-K, Jinbao Li has been the CEO since April 2016.

71. The Grizzly Report states that Grizzly Research discovered that the April 2, 2018 Article on WeChat was altered after it was originally published by NiSun Shanghai. According to the Grizzly Report, NiSun Shanghai "tried to cover its tracks" by revising the words "*subsidiary* Shanghai Nami" to "*cooperation company* Shanghai Nami" (emphasis added).

72. In fact, Hebron admitted in its press release filed with the SEC on July 31, 2020 as Ex. 99.1 to the Company's July 31, 2020 Form 6-K, that the April 2, 2018 Article was in fact altered after it was published. According to the Company's press release, the Company "mistakenly stated that NiSun Shanghai and [Shanghai Nami] were subsidiary companies . . . and that error was quickly revised. . . ."

73. Notwithstanding Hebron's claims, Lead Counsel recently found a CV on Zhaopin.com, a popular job posting site, for Ms. Zhao, who, according to her resume, was employed by NiSun Shanghai as a Human Resources Manager since May 2018. Her resume, which is written in Chinese, also states that Shanghai Nami is a subsidiary of NiSun Shanghai.

74. Consequently, Bodang Liu controlled **Nami Holding (Cayman)** through its affiliates Nisun Shanghi**, Huiying Financial, and Shanghai Nami**.

75. The Nami Holding (Cayman) Acquisition was qualitatively material as the nature of the transaction would be considered significant to users of the Company's financial statements. Furthermore, the transaction had undisclosed characteristics that would be considered significant to users of the Company's financial statements.

76.     CON 8, Chapter 3, *Qualitative Characteristics of Useful Financial Information*, states that "the omission or misstatement of an item in a financial report is material . . . if the magnitude of the item is such that it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced by the inclusion or correction of the item." Hebron's Nami Holding (Cayman) Acquisition was a related party transaction which was not disclosed by the Company in its May 22, 2020 6-K.  Because transactions with related parties are often not at arms-length and carry increased risk, it is probable that the judgment of a reasonable person relying upon the Company's May 22, 2020 6-K would have been changed or influenced by the disclosure of this information in the Company's May 22, 2020 6-K.

77.     Furthermore, the Nami Holding (Cayman) Acquisition was part of the Company's new financial services segment that was created in 2019.  On July 12, 2019, Hebron expanded its business into the financial services industry by acquiring NiSun BVI.  According to SAB 99, *Materiality*, a qualitatively material consideration may "concern a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability."  Therefore, any acquisition that is a related party transaction within this new segment would be material to Hebron investors.

78.     Hebron's Nami Holding (Cayman) Acquisition was also qualitatively material due to the significant change in the Company's stock price upon announcement of the transaction. After the announcement of the acquisition on May 22, 2020, the Company's share price increased by $2.48, or nearly 18%, to close at $16.28 per share on May 22, 2020, on unusually heavy trading volume.  According to SAB 99, *Materiality*, "a matter is 'material', if there is substantial likelihood that a reasonable person would consider it important." Furthermore, SAB 99 states that a qualitative factor of materiality includes "the demonstrated volatility of the price of a registrant's

securities in response to certain types of disclosures." The Company's significant increase in its stock price upon announcement of the Nami Holding (Cayman) Acquisition makes it clear that the transaction was considered material.

79.    As described above, the Loong Fang Trading Co, Beijing Hengpu and Nami Holding (Cayman) are all entities that entered into a financial transaction with Hebron and should have been disclosed as related parties to Hebron. In addition to the three aforementioned entities, all of the additional undisclosed related parties described in the three related party transactions were affiliated entities or individuals that controlled, were controlled by, or were under common control with Hebron.

### MATERIALLY FALSE AND MISLEADING
### STATEMENTS ISSUED DURING THE CLASS PERIOD

80.    During the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hebron's Related Party Transactions. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

81.    The Class Period begins on April 24, 2020 when Hebron filed its 2019 Annual Report, which was signed by Defendant Sun. Therein, the Company stated, "Except as set forth in our discussion below in 'Related Party Transactions,' our directors and officers have not been involved in any transactions with us or any of our affiliates or associates which are required to be

25

disclosed pursuant to the rules and regulations of the SEC." Specifically, as to related party

transactions, the 2019 Annual Report stated, in relevant part:

> There are no other related party transactions for the year ended December 31, 2019, 2018 and 2017, except the transactions mentioned below.

> Starting on July 12, 2019, we rented office from NiSun Shanghai and incurred $63,749 rent expense for the year ended December 31, 2019. The annual rent from NiSun Shanghai is approximately $113,200.

> As of December 31, 2019, we had due to related party balance of $7,345,399 due to Mr. Bodang Liu, our largest shareholder, of which, $7 million was related to purchase price payable for acquisition of NiSun BVI. The due to related party balance was non-interest bearing and due on demand. There was nil balance due to related party as of December 31, 2018 and 2017.

> From time to time, our chief executive office and his immediate family members jointly provided guarantees or personal assets as collateral to our loan agreements, trade financing agreements, letters of guarantee, funding agreements and other credit agreements with commercial banks. For the years ended December 31, 2019, 2018 and 2017, the outstanding bank loan balance amounted to $861,846, $1,698,058 and $872,852, respectively, were guaranteed by the Group's chief executive officer and his immediate family members.

82.    The statements set forth in ¶ 81 were materially false and/or misleading because

the Loon Fang PIPE Transaction was, in fact, a material, undisclosed related party transaction. As

explained above, the Loong Fang Trading Co. and Benefactum are related parties to Hebron.

Additionally, the Beijing Hengpu Acquisition was, in fact, a material, undisclosed related party

transaction. As explained above, Beijing Hengpu, HongKong D&L, Benefactum and Peng Jiang

are all related parties to Hebron. Because Defendants failed to make the required disclosures in

the 2019 Annual Report's financial statements, Hebron was not in compliance with ASC 850, SEC

regulations and the 2013 COSO Framework.

83.    With respect to the Loong Fang PIPE Transaction, the 2019 Annual Report stated

that "on December 9, 2019, the Group entered into a definitive share purchase agreement **_with_**

**_certain investors_** for a private placement of approximately 1.05 million Class A common shares

at $6.21 per share." The notes to the financial statements in the 2019 Annual Report state the same

thing.

84.    The statements set forth in ¶ 83 were materially false and/or misleading because

the Loon Fang PIPE Transaction was, in fact, a material, undisclosed related party transaction. As

explained above, the Loong Fang Trading Co. and Benefactum are related parties to Hebron.

Because Defendants failed to make the required disclosures in the 2019 Annual Report's financial

statements, Hebron was not in compliance with ASC 850, SEC regulations and the 2013 COSO

Framework.

85.    The 2019 Annual Report also stated:

December 15, 2019, Hebron Technology entered into a share exchange agreement
with Beijing Hengtain Puhui Information Service Co. Ltd. ("Hengpu") and
shareholders of Hengpu to acquire a controlling interest via VIE arrangements in
Hengpu in exchange for issuance of 1,440,894 Class A Common Share of the
Company to Hengpu's shareholders.    The Company, through its subsidiary
NingChen, obtained effective control of Hengpu upon the entry into a series of VIE
agreements with Hengpu.

86.    The notes to the financial statements in the Company's 2019 Annual Report stated:

**Acquisition of Hengpu**

On December 31, 2019, *the Group acquired Hengpu from its original
shareholders through VIE agreements*. Hengpu owns a 92% equity interest in
Fengtai and 100% equity interest of Midtown. Upon completion of the acquisition,
Hengpu, together with its subsidiaries, became a VIE of the Group. Hengpu and its
subsidiaries provide financial advisory services for financial institutions and
corporate clients in the PRC. The Group expects to achieve significant synergies
from such acquisition which it plans will complement its financial services
business.

The Group's acquisition of Hengpu was accounted for as [a] business combination
in accordance with ASC 805. The Group is required to issue 1,440,894 Class A
common shares *to the original shareholders of Hengpu* as purchase consideration.
The fair value of purchase consideration was approximately $11.4 million based on
the weighted average of the closing share price of the Group for five trading days
up to the date immediately prior to the signing date of purchase agreement.

\*\*\*

Shares to be issued for acquisition of Hengpu

In connection of the acquisition of Hengpu on December 31, 2019, the Group issued 1,440,894 Class A common shares **to the original shareholders of Hengpu** as purchase consideration. The fair value of the purchase consideration was $11,426,289 based on the weighted average of the closing share price of the Group for five trading days up to the date immediately prior to the signing date of purchase agreement.

87.    The statements set forth in ¶¶ 85-86 were materially false and/or misleading because the Beijing Hengpu Acquisition was, in fact, a material, undisclosed related party transaction. As explained above, Beijing Hengpu, HongKong D&L, Benefactum and Peng Jiang are all related parties to Hebron. Because Defendants failed to make the required disclosures in the 2019 Annual Report's financial statements, Hebron was not in compliance with ASC 850, SEC regulations and the 2013 COSO Framework.

88.    Regarding the Company's disclosure controls, the 2019 Annual Report stated:

As of December 31, 2019, the end of the fiscal year covered by this report, our management, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, performed an evaluation of the effectiveness of our disclosure controls and procedures. Based on the evaluation, our Chief Executive Officer and Chief Financial Officer concluded that, as of December 31, 2019, our disclosure controls and procedures were ineffective. Such conclusion is due to the presence of material weakness in internal control over financial reporting as described below.

\* \* \*

Based on the assessment, management determined that, as of December 31, 2019, we did not maintain effective internal control over financial reporting due to the existence of the following material weaknesses:

- The Company does not have adequate internal accounting personnel with sufficient knowledge of the US GAAP and SEC reporting standards, which could lead to material misstatements being undetected in a timely manner.

\* \* \*

The following changes in our internal controls over financial reporting occurred during the twelve months ended December 31, 2019 and have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting:

- We have begun to maintain written policies and procedures, and prepare Board minutes and resolutions for significant transactions on a timely basis. We believe these efforts will improve our internal controls.

89.    The statements set forth in ¶ 88 were materially false and/or misleading because the material weaknesses described in the 2019 Annual Report failed to address the lack of disclosure of the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition, both of which were related party transactions, as described above.  These two material undisclosed related party transactions are a second reason why the Company failed to maintain adequate disclosure controls. Because Defendants failed to make this disclosure in the 2019 Annual Report's financial statements, Hebron was not in compliance with SEC regulations and the 2013 COSO Framework.

90.    Exhibits 12.1 and 12.2 to the 2019 Annual Report were signed certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 (the "SOX certifications"), wherein the Individual Defendants certified that they reviewed the 2019 Annual Report, and based on their knowledge, the 2019 Annual Report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading…;" and "the financial statements, and other financial information included in [the 2019 Annual Report], fairly present in all material respects the financial condition, results of operations and cash flows of the company…."  The SOX certifications also stated that the Individual Defendants

are responsible for establishing and maintaining disclosure controls and procedures . . . and internal control over financial reporting . . .  for the [C]ompany and have :

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under [their] supervision, to ensure that

material information relating to the company, including its consolidated subsidiaries, is made known to [them] by others within those entities . . . ;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under [their] supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in [the 2019 Annual Report their] conclusions about the effectiveness of the disclosure controls and procedures. . . ; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report. . . ; and

(5) . . . have disclosed . . . to the company's auditors and the audit committee of the company's board of directors . . . : (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

91.     The statements in ¶ 90 were materially false and misleading because Defendants failed to disclose that the Loong Fang PIPE Transaction and the Beijing Hengpu Acquisition were material undisclosed related party transactions.  Because Defendants failed to make the required disclosures in the 2019 Annual Report's financial statements, Hebron was not in compliance with ASC 850, SEC regulations and the 2013 COSO Framework.

92.     On May 1, 2020, Hebron filed a Form 6-K with the SEC, signed by Defendant Sun, along with a press release (Ex. 99.1), announcing that it had closed the Loong Fang Trading PIPE Transaction.  The press release stated that Hebron:

today announced it has closed a previously announced private placement, in which the Company **sold to two private investors** an aggregate of 1,048,932 Class A common shares, par value $0.001 per share, at a price of $6.21 per share for total aggregate gross proceeds of approximately $6.5 million.

> ***On December 6, 2019, the Company entered into a share purchase agreement ("SPA") with the two private investors*** for the aforementioned placement offering….
>
> The Company received $6,513,870 in net proceeds from the private placement. The Company intends to use the net proceeds from this offering for working capital and general corporate purposes.

(Emphasis added.)

93.    The statements set forth in ¶ 92 were materially false and/or misleading because Defendants failed to disclose that the Loong Fang PIPE Transaction was a material undisclosed related party transaction.

94.    On May 22, 2020, the Company filed a Form 6-K with the SEC, signed by Defendant Sun, along with a press release (Ex. 99.1), announcing the Nami Holding (Cayman) Acquisition.  The press release stated, in relevant part, that the Company:

> today announced that it has entered into a definitive share purchase agreement (the "Agreement") with Nami Holding (Cayman) Co., Ltd. ("Nami") and Nami Holding (BVI) Co., Ltd (SPV), shareholder of Nami (the "Seller"), to acquire all of the outstanding ordinary shares of Nami. Nami is the parent company of a financial advisory services group comprising subsidiaries and a contractually controlled operating company in China.
>
> Pursuant to the Agreement, the Seller will receive aggregate consideration of RMB 180 million (approximately $25.38 million) valued as of the date the Agreement was executed, consisting of RMB 50 million (approximately $7.05 million) in cash and 1,562,726 shares of the Company's Class A common shares, par value $0.001 per share, based on the weighted average closing price for the five trading days immediately prior to the execution of the Agreement.
>
> "We are pleased to announce that we have entered into a definitive share purchase agreement with Nami Holding (Cayman) Co., Ltd. and its owner for the strategic acquisition of Nami", said Mr. Anyuan Sun, the CEO of Hebron Technology Co. Ltd., "***this acquisition, once completed, will greatly enhance our financial advisory services capacities and signify that we have reached a milestone in implementing our strategic transition from a traditional industrial technology-based product and service provider to an innovative technology-driven and industry-based financial advisory services provider***. We believe that Nami acquisition will further enhance our competitiveness in China's financial services marketplace."

95.     The statements set forth in ¶ 94 were materially false and/or misleading because Nami Holding (Cayman) Transaction was, in fact, a material undisclosed related party transaction. As explained above, Nami Holding (Cayman), Jinbao Li, Shanghai Nami and Huiying Financial are related parties to Hebron.

## THE TRUTH EMERGES

96.     On the morning of June 3, 2020, Siegfried Eggert, CEO of Grizzly Research, presented excerpts from the Grizzly Report at a Virtual Investor Conference (via streaming internet video on the Contrarian Investor podcast), and also published the entire Grizzly Report on Grizzly Research's website, alleging that Hebron is an "insider enrichment scheme without economic basis," citing questionable transactions, including material undisclosed related party transactions.

97.     A June 3, 2020 ValueWalk article describing the presentation reported (emphasis added):

> Liu became the company's controlling shareholder in 2019 by paying $ 2 million for 7.78 million shares at a 70% discount to market price. The company also acquired Shanghai Fintech by acquiring NiSun International Enterprise Management Group [NiSun BVI] from Liu for $7 million at the same time. Eggert describes the business as "sketchy" and "too good to be true."
>
> *[Eggert] found multiple pieces of evidence pointing to undisclosed related parties selling companies to Hebron Technology. For example, he describes the acquisition of undisclosed related party Beijing Hengpu as a "sham." The deal was valued at more than $11 million.* Now six months after the acquisition, ownership still hasn't even transferred. *Eggert also said Beijing Hengpu is a related party of Liu and Hebron.*
>
> *[Eggert] also called attention to an undisclosed related party transaction involving Nami Holding Company for about $25.8 million in cash and stock last month.* He describes Shanghai Nami as "an alter ego of Benefactum Beijing," which is 99.99% owned by Liu. He also believes the company isn't even viable.
>
> "At the end of the day, investors are left with a boring business and a bunch of worthless toxic companies, while Bodang Liu and insiders walk away with over $200M in value," Eggert said.

98.     The June 3, 2020 Grizzly Report and presentation also disclosed that *the Loong Fang PIPE Transaction was yet another undisclosed related party transaction*.

99.     On this news, the Company's share price fell $8.26, or nearly 37%, to close at $14.29 per share on June 3, 2020, on unusually heavy trading volume.  The stock continued to decline the next trading session by $2.51, or nearly 18%, to close at $11.78 per share on June 4, 2020, on unusually heavy trading volume.

## ADDITIONAL ALLEGATIONS DEMONSTRATING FALSITY AND SCIENTER

100.     The positions held by the Individual Defendants, in conjunction with the number of related party transactions in a six-month period, provide strong circumstantial evidence that the Individual Defendants, and by extension Hebron, knowingly or recklessly made the misrepresentations and omissions concerning the transactions.

101.     The fact that two of the three Related Party Transactions – the Beijing Hengpu and Nami Holding (Cayman) Acquisitions – relate to Hebron's financial services segment, one of its two core business segments during the time period in which the Individual Defendants were at Hebron's helm, provides further evidence of scienter.

102.     Moreover, on February 26, 2019, shortly before the Company's Annual Report for the fiscal year ended December 31, 2018 was due ("2018 Annual Report"), Hebron fired its highly-regarded independent auditor, Friedman LLP, which had been the Company's auditor from 2013 to February 2019, and hired Wei, Wei & Co., LLP as its new independent auditor.  Thereafter, the Company missed the deadline for filing its 2018 Annual Report and filed a Notification of Late Filing of its Form 20-F on April 30, 2019.  The firing of its independent auditor prior to the Related Party Transactions helped set the stage for Defendants' egregious wrongdoings described herein.

103.    Additionally, the 2019 Annual Report disclosed that Hebron owed almost $2 million in bank loans and bank acceptance notes to multiple banks, and that all of the debt was guaranteed by members of management and their immediate families.  In fact, Defendant Sun and his brother guaranteed the debt "***with recourse to their respective homes***."  The 2019 Annual Report stated:

> We have approximately $0.9 million and $1.7 million in bank loans outstanding as of December 31, 2019 and 2018, respectively. In addition, we have approximately $0.9 million and $2.1 million bank acceptance notes payable outstanding as of December 31, 2019 and 2018, respectively. The loans and bank acceptance notes payable are held at multiple banks, and ***all of the debt is guaranteed by members of our management, their immediate family members and unrelated third parties. In particular, our Chief Executive Officer and his brother have guaranteed this debt with recourse to their respective residences….***

As such, Defendant Sun was under tremendous financial pressures to get Hebron's debt repaid.

104.    Moreover, Defendant Liang is beholden to Bodang Lang.  She appears to have been appointed CFO because Bodang Liu had significant influence over who holds key management positions at the Company.  As previously stated, prior to her position as Hebron's CFO, Defendant Liang had been a senior financial manager for Shanghai NiSun Enterprise Management Group Co., Ltd., *a PRC company controlled by Bodang Liu*.  Defendant Liang also served as CFO of Fintech (Shanghai) Investment Holding Co., Ltd. since May 2019, which is a subsidiary of NiSun BVI, *a company owned by Bodang Liu* (until it was acquired by Hebron on July 12, 2019). Defendant Liang's appointment as CFO also helped set the stage for Defendants' egregious wrongdoings described herein.

105.    Furthermore, two months after the allegations in the Grizzly Report were disclosed, the Company filed a Form 6-K with the SEC, along with a Proxy Statement (as Ex. 99.1), on August 14, 2020, stating that Defendant Sun had resigned from the Company as CEO and Chairman, effective immediately following the election of a successor Chairman and CEO.  On

September 4, 2020, Hebron issued a press release announcing that Defendant Sun had been replaced by Huang as CEO and Chairman of the Company.

## **CLASS ACTION ALLEGATIONS**

106.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Hebron securities between April 24, 2020 and June 3, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

107.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hebron securities actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Hebron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

108.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

109.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

110.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and management of Hebron;

(c)    whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

(d)    whether the prices of Hebron securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(e)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

111.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

112.    The market for Hebron's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Hebron's securities traded at artificially inflated prices during the Class Period. On June

1, 2020, the Company's share price closed at a Class Period high of $23.33 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Hebron's securities and market information relating to Hebron and have been damaged thereby.

113.    During the Class Period, the artificial inflation of Hebron's shares was caused by the material misrepresentations and/or omissions particularized in this Amended Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hebron's business and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Hebron and its business and operations, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

114.    At all relevant times, the market for Hebron's securities was an efficient market for the following reasons, among others:

(a)    Hebron shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Hebron filed periodic public reports with the SEC and/or the NASDAQ; and/or

(c)    Hebron regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

115.    As a result of the foregoing, the market for Hebron's securities promptly digested current information regarding Hebron from all publicly available sources and reflected such information in Hebron's share price.   Under these circumstances, all purchasers of Hebron's securities during the Class Period suffered similar injury through their purchase of Hebron's securities at artificially inflated prices and a presumption of reliance applies.

116.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## FIRST CLAIM
### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

117.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

118.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Hebron's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

119.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hebron's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

120.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hebron's financial well-being and prospects, as specified herein.

121.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Hebron's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hebron and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

122.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

123.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Hebron's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

124.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Hebron's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Hebron's securities during the Class Period at artificially high prices and were damaged thereby.

125.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Hebron was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Hebron securities, or, if they had acquired such securities during the C lass Period, they would not have done so at the artificially inflated prices which they paid.

126.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

127.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

128.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

129.    The Individual Defendants acted as controlling persons of Hebron within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

130.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

131.    As set forth above, Hebron and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Amended Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct,

Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  November 20, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Brenda Szydlo*
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Email: jalieberman@pomlaw.com
        bszydlo@pomlaw.com

*Lead Counsel for Lead Plaintiff Edward A. Dahlke and the proposed Class*

THE SCHALL FIRM
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Tel: 310-301-3335
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*
*Edward A. Dahlke*