**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **IN RE HEBRON TECHNOLOGY CO., LTD. SECURITIES LITIGATION**<br><br><br>. | Case No. 20 Civ. 4420 (PAE) |

## HEBRON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Matthew Solum, P.C.
Matthew A. Tharp
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
matthew.solum@kirkland.com
matt.tharp@kirkland.com

*Counsel for Hebron Technology Co., Ltd.*

Dated: December 21, 2020

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

      A.     The Parties to This Litigation ................................................................. 2

      B.     Alleged Related-Party Transactions and the Independent Investigation ............... 3

              1.     Private Placement Sale ................................................................ 5

              2.     Acquisition of Beijing Hengpu ................................................... 6

              3.     Nami Transaction ....................................................................... 7

LEGAL STANDARD ............................................................................................................ 9

ARGUMENT ........................................................................................................................ 10

I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B)
     AND RULE 10B-5. .................................................................................................. 10

      A.     The Complaint Fails to Plead Any Actionable Misstatement or Omission. ......... 11

              1.     Relevant Related Party Standard ............................................... 11

              2.     Plaintiff Fails to Plead Any Actionable Misstatement or Omission
                     Related to the Private Placement Sale. ...................................... 13

              3.     Plaintiff Fails to Plead Any Actionable Misstatement or Omission
                     Related to the Beijing Hengpu Transaction. .............................. 15

              4.     Plaintiff Fails to Plead Any Actionable Misstatement or Omission
                     Related to the Nami Transaction. ............................................... 18

      B.     Plaintiff Fails to Plead Facts Giving Rise to a Strong Inference of Scienter. ....... 20

               1.     Plaintiff Fails to Plead Facts to Support Motive to Commit Fraud. ......... 21

               2.     Plaintiff Fails to Allege Deliberate, Illegal Behavior, or
                     Recklessness. ............................................................................ 22

      C.     Plaintiff Fails to Plead Loss Causation. ................................................ 25

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A). ................... 25

CONCLUSION .................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  No. 19 Civ. 10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020) .................14, 17, 20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).................................................................................................9, 25

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019).....................................................................................12

*Bd. of Trs. of the City of Ft. Lauderdale v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011).......................................................................................2

*Berrian v. Pataki*,
  510 F. Supp. 2d 348 (S.D.N.Y. 2007).......................................................................................2

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014).......................................................................................................1

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147, 152 (2d Cir. 2002)..............................................................................................4

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ...............................................................................................25

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ...............................17

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008).....................................................................................24

*Dobina v. Weatherford Int'l Ltd.*,
  909 F. Supp. 2d 228 (S.D.N.Y. 2012).....................................................................................22

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)......................................................................................9, 10, 14, 20

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016)......................................................................................23

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................................24

*Harris v. AmTrust Fin. Servs., Inc.*,
　135 F. Supp. 3d 155 (S.D.N.Y. 2015)..................................................................................4

*Hutchinson v. Perez*,
　No. 12 Civ. 1073 (HB), 2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd*,
　550 F. App'x 24 (2d Cir. 2013) ........................................................................................23

*In re Aratana Therapeutics Inc. Secs. Litig.*,
　315 F. Supp. 3d 737 (S.D.N.Y. 2018)..................................................................................9

*In re Bank of Am. AIG Disclosure Secs. Litig.*,
　980 F. Supp. 2d 564, 585 (S.D.N.Y. 2013)........................................................................22

*In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.*,
　No. 14 Civ. 4471 (KMW), 2016 WL 922711 (S.D.N.Y. Mar. 7, 2016)................14, 16, 17, 21

*In re Dynagas LNG Partners LP Secs. Litig.*,
　No. 19 Civ. 4512 (AJN), 2020 WL 6947521 (S.D.N.Y. Nov. 25, 2020) .............................12

*In re eSpeed, Inc. Secs. Litig.*,
　457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006)........................................................................22

*In re I.P.O. Secs. Litig.*,
　241 F. Supp. 2d 281 (S.D.N.Y. 2003)................................................................................15

*In re JP Morgan Chase Secs. Litig.*,
　No. 02 Civ. 1282 (SHS), 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) ................................11

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
　910 F. Supp. 2d 561 (S.D.N.Y. 2012)................................................................................10

*In re Lululemon Secs. Litig.*,
　14 F. Supp. 3d 553 (S.D.N.Y. 2014)..............................................................................2, 20

*In re Omnicom Grp. Inc., Secs. Litig.*,
　541 F. Supp. 2d 546 (S.D.N.Y. 2008)............................................................................2, 25

*In re Rockwell Med., Inc. Secs. Litig.*,
　No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ..............................23

*In re Sanofi Secs. Litig.*,
　87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd*, 816 F.3d 199 (2d Cir. 2016) ...........................10

*In re Sec. Capital Assur. Ltd. Secs. Litig.*,
　729 F. Supp. 2d 569, 594 (S.D.N.Y. 2010)........................................................................22

*In re Turquoise Hill Res. Ltd. Secs. Litig.*,
　No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ..............................25

*In re Wachovia Equity Secs. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................23

*Janel World Trade, Ltd. v. World Logistics Servs., Inc.*,
    No. 08 Civ. 1327 (RJS), 2009 WL 735072 (S.D.N.Y. Mar. 20, 2009) ...................................22

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..........................................................................19, 21, 23

*Lewy v. SkyPeople Fruit Juice, Inc.*,
    No. 11 Civ. 2700 (PKC), 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ........................15, 17

*Loc. No. 38 Int'l Brotherhood of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).......................20

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)..........................................................9, 10, 20

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)..................................................................10

*Marcu v. Cheetah Mobile Inc.*,
    No. 18 Civ. 11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) ...............................23

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)......................................................................................9

*McCauley v. City of Chi.*,
    671 F.3d 611 (7th Cir. 2011) ..........................................................................9

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..........................................................................9, 21

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..........................................................................1, 10

*S.E.C v. Sason*,
    433 F. Supp. 3d 496 (S.D.N.Y. 2020)..................................................................19

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)..........................................................................10

*Tabor v. Bodison Biotech, Inc.*,
    579 F. Supp. 2d 438 (S.D.N.Y. 2008)..................................................................16, 17

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008)..........................................................................21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)............................................................................................9, 10

*Woolgar v. Kingstone Companies, Inc.*,
    No. 19-CV-5500 (RA), 2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020)...................................24

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998).................................................................................................2

**Statutes**

15 U.S.C. § 78u-4(b)(1) .......................................................................................................9

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 10

Rule 10b-5.................................................................................................................1, 10, 21

**Other Authorities**

17 C.F.R. § 240.3b-4.............................................................................................................12

17 C.F.R. § 249.220f.............................................................................................................12

Defendant Hebron Technology Co., Ltd. ("Hebron" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]  The Complaint, filed by Edward Dahlke ("Plaintiff"), asserts claims under Section 10(b) and Rule 10b-5 against all defendants, and claims under Section 20(a) against Anyuan Sun and Changjuan Liang (collectively the "Individual Defendants," and collectively with Hebron, "Defendants").[2]

## PRELIMINARY STATEMENT

In lieu of well-pleaded facts, Plaintiff's Complaint repackages unsupported allegations recycled from a single short-seller report that itself regurgitates publicly available information. Plaintiff offers no basis or specific factual allegations to support his theory that Hebron's public filings are somehow materially false or misleading with respect to three purportedly undisclosed related-party transactions.  There are three independent reasons to dismiss the Complaint:

***First***, Plaintiff fails to plead any actionable misstatement or omission, much less with the specificity required to survive a motion to dismiss under the heightened pleading standards of Rule 9(b).  *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).  Plaintiff's conclusory assertions of related-party transactions, based on unnamed "media articles" and anonymous witnesses, do not come close to the specificity required to plead a securities fraud claim.  The Complaint should therefore be dismissed.  *See Rombach v. Chang*,

---

[1]    References to "AC ¶ __" refer to the corresponding paragraph in the Complaint (Dkt. 33).  References to "Ex. __" refer to exhibits annexed to the Declaration of Matthew Tharp, filed contemporaneously with this Memorandum. Unless otherwise indicated, internal quotations and citations are omitted and emphasis is added.

[2]    Defendants Anyuan Sun and Changjuan Liang have not been served and are not yet appearing in this action.

355 F.3d 164, 174 (2d Cir. 2004) ("plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so.").

*Second*, Plaintiff does not allege any factual allegations supporting a motive to defraud and makes scant allegations in support of scienter. Plaintiff's allegations fail to establish *any* inference of scienter, much less the "strong inference" of scienter that is required to withstand a motion to dismiss. *In re Lululemon Secs. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014).

*Third*, because Plaintiff has not identified any false or misleading statement requiring correction, he fails to plead loss causation. *See In re Omnicom Grp. Inc., Secs. Litig.*, 541 F. Supp. 2d 546, 551–52 (S.D.N.Y. 2008). For each and all of these reasons, the Court should dismiss the Complaint in its entirety, with prejudice.

## BACKGROUND[3]

### A.    The Parties to This Litigation

Hebron, which recently changed its name to NiSun International Enterprise Development Group Co., Ltd., is a technology company dedicated to promoting the integration between industry and finance through innovative technologies. (AC ¶ 2; Ex. 1, December 9, 2019 6-K at Ex. 99.1.) The Company is a developer, manufacturer, and installer of valves and pipe fittings used in the pharmaceutical, food, and beverage industries. (Ex. 2, April 24, 2020 20-F ("2019 20-F") at 32.) In July 2019, Hebron began to provide financial advisory services, including underwriting-related advisory services, banking product distribution, and management services. (AC ¶ 21; Ex. 2, 2019

---

[3] References to the allegations of the Complaint are solely for purposes of this motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 173 (2d Cir. 1998). Plaintiff's unsupported conclusions, unwarranted inferences, and legal conclusions ought to be disregarded in deciding this motion to dismiss. *Berrian v. Pataki*, 510 F. Supp. 2d 348, 354 (S.D.N.Y. 2007). In addition to the Complaint, the Court may consider "(1) documents attached to or incorporated by reference in the complaint, (2) documents integral to and relied upon in the complaint, even if not attached or incorporated by reference, (3) public disclosure documents required by law to be, and that have been, filed with the SEC, and (4) facts of which judicial notice properly may be taken." *Bd. of Trs. of the City of Ft. Lauderdale v. Mechel OAO*, 811 F. Supp. 2d 853, 865 (S.D.N.Y. 2011).

20-F at 29-30.)  The Company's shares have been listed and traded on the Nasdaq Exchange since December 27, 2016 under the symbol "HEBT."  (AC ¶ 22; Ex. 2, 2019 20-F at 96.)

Defendant Anyuan Sun ("Sun") co-founded one of Hebron's subsidiaries in China, and has previously served as the Company's Chief Executive Officer ("CEO") and Chairman.  (AC ¶ 17; Ex. 2, 2019 20-F at 86.)  Sun resigned from both positions in August 2020.  (AC ¶ 105; Ex. 3, August 14, 2020 6-K at Ex. 99.1.)  Sun was the controlling shareholder of Hebron until NiSun International Enterprise Management Group Co. Ltd., an entity owned solely by Bodang Liu ("Liu"), acquired 46.94% of Hebron's shares in July 2019.  (AC ¶ 23; Ex. 2, 2019 20-F at 93 n.3.)

Defendant Changjuan Liang ("Liang") was appointed by the Hebron board of directors as the Chief Financial Officer ("CFO") in August 2019 following the resignation of the Company's former CFO.  (AC ¶ 25; Ex. 4, August 13, 2019 6-K.)  Liang has also served as the CFO of Fintech (Shanghai) Investment Holding Co., Ltd. since May 2019.  (AC ¶ 25.)

Plaintiff, an individual shareholder, bought 500 shares of Hebron's stock on June 1, 2020 and sold all his shares three days later on June 4, 2020, at a loss of $5,332.[4]  (Dkt. 8, Ex. A.)  He purports to assert claims against Defendants on his own behalf and on behalf of putative purchasers of Hebron securities between April 24, 2020 and June 3, 2020 ("Class Period").  (AC ¶ 1.)

### B.    Alleged Related-Party Transactions and the Independent Investigation

Plaintiff alleges that Hebron made false or misleading statements because it failed to disclose three purported related-party transactions involving Liu, the largest shareholder of the Company: (1) a private placement sale of the Company's common shares to institutional investors

---

[4]    Another plaintiff, Michael Clynes, who purchased 2,800 shares of Hebron stock on June 3, 2020 — the same day the alleged corrective disclosure was released — and sold all of his shares on June 4, 2020, filed the first action against Defendants on June 9, 2020.  (Dkts. 1, 23.)  The Court consolidated the actions and denied Clynes's lead plaintiff motion, given the timing of his purchases of Hebron stock.  (Dkt. 23.)

(the "Private Placement Sale"); (2) acquisition of Beijing Hengtai Puhui Information Service Co., Ltd. ("Beijing Hengpu"); and (3) acquisition of Nami Holding (Cayman) Co., Ltd. ("Nami"). (*Id.* ¶ 26.) The statements alleged to be false or misleading include the Company's 2019 20-F issued on April 24, 2020; the SOX Certification accompanying the 2019 20-F; and two subsequent public filings, a May 1, 2020 6-K and a May 22, 2020 6-K. (*Id.* ¶¶ 81, 83, 85, 86, 88, 90, 92, 94.)

In support of his allegations, Plaintiff almost exclusively relies on a June 3, 2020 report published by a short seller, Grizzly Research LLC (the "Grizzly Report").[5] Grizzly Research LLC is a supposed investment advisor—but has disclosed no information about when it was founded, who is involved in its operations, or who prepared the short-seller reports it published. The Grizzly Report disclosed that it had a "***short position***" in Hebron and "stands to realize significant gains in the event that the price of HEBT's stock declines." (Ex. 5, Grizzly Report at 2.) In fact, Grizzly Research LLC released 11 short-seller reports within 18 months, primarily targeting Chinese companies and companies with operations in China. (*See* Ex. 5, Grizzly Report (https://grizzlyreports.com/, last accessed December 21, 2020), cited in AC ¶¶ 7, 54, 71, 96.)

On July 31, 2020, the Company announced the findings of its independent investigation (the "Independent Investigation"), which concluded that "none of the three transactions specified in the short-seller's report qualified as related party transactions." (Ex. 6, July 31, 2020 6-K at Ex. 99.1.)[6] Those findings were the product of a thorough investigation with the assistance of White & Case LLP and included review of documents, as well as interviews of relevant personnel. (*Id.*)

---

[5]    "A 'short seller' speculates that a particular stock will go down in price and seeks to profit from that drop." *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159 n.1 (S.D.N.Y. 2015).

[6]    The press release summarizing the conclusions of the Independent Investigation is incorporated into the Complaint by reference, and thus may be considered by the Court. (*See* AC ¶ 72 ("In fact, Hebron admitted in its press release filed with the SEC on July 31, 2020 as Ex. 99.1 to the Company's July 31, 2020 Form 6-K, that the April 2, 2018 Article was in fact altered after it was published. According to the Company's press release, the Company 'mistakenly stated that NiSun Shanghai and [Shanghai Nami] were subsidiary companies . . . and that error was quickly revised. . . .'") (quoting Ex. 6, July 31, 2020 6-K at Ex. 99.1); *see also Chambers v. Time*

Plaintiff nonetheless parrots the so-called findings of the Grizzly Report (*see, e.g.*, AC ¶¶ 7, 71), and relies on unnamed "media articles" (*id*. ¶¶ 56, 57), and two anonymous individuals (*id*. ¶¶ 68, 69) to attempt to support its allegations regarding the three transactions.

### 1.    Private Placement Sale

On December 9, 2019, prior to the Class Period, the Company filed a Form 6-K announcing that it had entered into an approximately $6.5 million Private Placement Sale of the Company's common shares to two institutional investors, Jupiter Trading Co., Ltd (BVI) and Loong Fang Trading Co., Ltd (BVI) ("Loong Fang").  (*Id*. ¶ 36.)  In its 2019 20-F and in a May 1, 2020 6-K, the Company disclosed the status of the Private Placement Sale:

> On December 9, 2019, the Group entered into a definitive share purchase agreement [("SPA")] with certain investors for a private placement of approximately 1.05 million Class A common shares at $6.21 per share.  The private placement was previously expected to be closed about December 23, 2019.  Due to the business disruptions related to COVID-19 and other matters, the close of the transaction was deferred . . . .
>
> [Hebron today] announced it has closed a previously announced private placement, in which the Company sold to two private investors . . . .

(*Id*. ¶¶ 83, 92; Ex. 2, 2019 20-F at F-30.)

Plaintiff alleges that the statements were false or misleading because Hebron failed to disclose that the Private Placement Sale to Loong Fang was a related-party transaction.  (AC ¶¶ 84, 93.)  In support of his conclusory allegations, Plaintiff asserts that "Hebron and Loong Fang [] are affiliated entities under common control [of Liu]" because Shan Jiang, the signing director for Loong Fang in connection with the Private Placement Sale, has served as "a Supervisor at [Puhui Equity Investment Co., Ltd. ('Puhui Investment')] since April 14, 2020, and [Qianhai Zhonghui

*Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference.").

Business Information Consulting Co., Ltd. ('Zhonghui')] since March 25, 2020" — the two entities owned by Liu according to the Complaint. (*Id*. ¶¶ 42, 43.) As the Complaint concedes, Shan Jiang did not begin the purported roles at Puhui and Zhonghui until four or five months *after* the Private Placement Sale SPA was entered into. Neither the Complaint nor the Grizzly Report elaborates on Shan Jiang's alleged role as a "Supervisor" at these two entities, let alone explains how Liu controlled Shan Jiang through the two entities.

### 2.    Acquisition of Beijing Hengpu

In its 2019 20-F, the Company disclosed that it acquired Beijing Hengpu on December 31, 2019 from "its original shareholders" (the "Beijing Hengpu transaction"). (*Id*. ¶¶ 85, 86.) The acquisition agreement, which was attached to the 2019 20-F, states that Guoya Investment Holding Co., Ltd. (BVI) was the 80% shareholder of Beijing Hengpu and HongKong D&L Technology Co., Limited ("HongKong D&L") was the 20% shareholder. (*Id*. ¶ 52.) Plaintiff alleges that the disclosures were false or misleading because Hebron failed to disclose that the Beijing Hengpu transaction was a related-party transaction due to the alleged connections of Xiaoyun Huang ("Huang") and Peng Jiang to Liu. (*See id*. ¶¶ 54–58, 87.)

In support of his allegations, Plaintiff alleges that Huang, who executed the Beijing Hengpu transaction agreement on behalf of HongKong D&L, "remains the Chairman and legal representative of Beijing Hengpu." (*Id*. ¶¶ 54, 55.) Plaintiff also alleges that, according to unnamed "media articles," Huang was reported to be the CEO of Alliance Business Consultant (Beijing) Co., Ltd. ("Benefactum") and the CFO of Shanghai NiSun Enterprise Management Group Co., Ltd. ("Nisun Shanghai"), two entities purportedly controlled by Liu. (*Id*. ¶¶ 56, 57.)

With respect to Huang's role at Beijing Hengpu, the Complaint does not provide any details about Huang's duties and responsibilities at Beijing Hengpu. As Plaintiff concedes, the Independent Investigation found that "Huang left his position at Beijing Hengpu *more than one*

6

*year before*" the Beijing Hengpu transaction and was only listed as Beijing Hengpu's nominal legal representative "due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information."  (*Id*. ¶ 55.)  Nor does the Complaint provide any details about the "media articles" discussing Huang's alleged involvement in Benefactum and NiSun Shanghai, including when and where the articles were published, who authored the articles, and what details were discussed about Huang's purported positions.

With respect to Peng Jiang, a director and manager of Beijing Hengpu, Plaintiff alleges that he serves as the Vice President at NiSun Shanghai and as a legal representative at Fintech (Shanghai) Digital Technology Co., Ltd. ("Shanghai Fintech").  (*Id*. ¶ 58.)  Plaintiff offers no concrete factual allegations about Peng Jiang's purported involvement in the Beijing Hengpu transaction, let alone factual allegations sufficient to establish that Liu controlled Peng Jiang.

### 3.  Nami Transaction

In a press release attached to its May 22, 2020 6-K, Hebron disclosed that it entered into a definitive share purchase agreement to acquire Nami (the "Nami transaction"):

> [Hebron] has entered into a definitive share purchase agreement (the "Agreement") with Nami Holding (Cayman) Co., Ltd. ("Nami"), a Cayman Islands exempted company, and Nami Holding (BVI) Co., Ltd (SPV), shareholder of Nami (the "Seller"), to acquire all of the outstanding ordinary shares of Nami. Nami is the parent company of a financial advisory services group comprising subsidiaries and a contractually controlled operating company in China.

(*Id.* ¶ 94.)

Plaintiff alleges that the statement was false or misleading because it failed to disclose that Liu "controlled Nami[] through its affiliates NiSun Shanghai, Huiying Financial [Holding, 'Huiying Financial'], and Shanghai Nami [Financial Consulting Co., Ltd. ('Shanghai Nami')]." (*Id.* ¶ 74.)  Plaintiff also alleges that Jinbao Li, the majority owner of Nami, is an "undisclosed

related party . . . due to [his] 85% ownership of Shanghai Nami." (*Id*. ¶ 67.) In support of his allegations, Plaintiff cites vague statements purportedly made by two anonymous individuals:

- CW 1: a former "legal counsel at NiSun Shanghai" from July 2017 through July 2018, who prepared contracts and provided legal advice, purportedly stated that "Shanghai Nami sold HuiYingJinFu's financial products under NiSun Shanghai" (*id*. ¶ 68), and that "the decision-making powers of Shanghai Nami were mostly controlled by Bodang Liu" (*id*. ¶ 69);

- CW 2: a former "Assistant at Shanghai Nami" from February 2018 through February 2019, purportedly stated that "Shanghai Nami is a sales company selling financial products under the same corporate group as HuiYingJinfu" and that "Li Jinbao . . . reported directly to Bodang Liu." (*Id*.)

The Complaint does not provide any details concerning (1) the identities of these individuals; (2) the duties and responsibilities of the individuals in connection with the entities involved in the Nami transaction; (3) the individuals' connections with, or knowledge of, the Nami transaction; (4) who interviewed the individuals; and (5) any contact Plaintiff's counsel had with the individuals. Moreover, the Complaint fails to explain how either CW could verify the truth of their allegations at the time of the Nami transaction, given that CW 1 was purportedly last employed by NiSun Shanghai almost two years before the Nami transaction and CW 2 was purportedly last employed by Shanghai Nami more than one year before the Nami transaction.

Plaintiff also cites an April 2, 2018 article published by NiSun Shanghai on its WeChat account, which purportedly stated that "Shanghai Nami is a subsidiary of Huiying Financial." (*Id*. ¶ 70.) The Complaint concedes that the Grizzly Report noted that NiSun Shanghai quickly corrected the article by explaining that Shanghai Nami was a cooperation company, not a subsidiary. (*Id*. ¶ 71.) The Independent Investigation also found that the statement "was [an] inadvertent [error] and . . . was quickly revised a mere six days after." (*Id*. ¶ 72; Ex. 6, July 31, 2020 6-K at Ex. 99.1.)

8

## LEGAL STANDARD

The standard to survive a motion to dismiss faced by a securities fraud plaintiff is the "most stringent pleading requirement in American civil law." *McCauley v. City of Chi.*, 671 F.3d 611, 625 (7th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)). With the passage of the PSLRA, Congress raised this standard even higher for private securities fraud actions by requiring a plaintiff "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter" as "a check against abusive litigation practices by private parties." *Tellabs*, 551 U.S. at 321. "To state a claim under § 10(b) of the Exchange Act, a plaintiff must adequately plead '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 790 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). A plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); *see also Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Plaintiff also "must meet the requirements of Federal Rule of Civil Procedure 9(b)," which requires a plaintiff to "'state with particularity the circumstances constituting fraud.'" *In re Aratana Therapeutics Inc. Secs. Litig.*, 315 F. Supp. 3d 737, 753 (S.D.N.Y. 2018) (Engelmayer, J.) (quoting Fed. R. Civ. P. 9(b) and citing *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.* ("*ECA*"), 553 F.3d 187, 196 (2d Cir. 2009)). A complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Plaintiff must also allege an inference of scienter that is "more than merely 'reasonable' or

9

'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324. In this Circuit, a plaintiff may satisfy the scienter requirement by pleading "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198; *see also In re Sanofi Secs. Litig.*, 87 F. Supp. 3d 510, 529 (S.D.N.Y. 2015) (Engelmayer, J.), *aff'd*, 816 F.3d 199 (2d Cir. 2016). Dismissal is appropriate where a plaintiff employs "a pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent," as such pleading "is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent." *Rombach*, 355 F.3d at 176. Likewise, Rule 9(b) requires a plaintiff to "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiff has not and cannot satisfy these pleading requirements.

## ARGUMENT

### I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10B-5.

Plaintiff fails to state a claim under Section 10(b) and Rule 10b-5 for three independent reasons: *first,* Plaintiff fails to plead any actionable misstatement or omission; *second*, Plaintiff fails adequately to plead scienter; and *third*, Plaintiff does not plead loss causation.[7]

---

[7]    The Complaint should also be dismissed *ab initio* because it relies solely on a single short-seller report. (*See* Ex. 5, Grizzly Report, cited in AC ¶¶ 7, 54, 71, 96.) Short-seller reports are made with "obvious motive to exaggerate the infirmities of the securities in which [they] speculate." *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012) (dismissing 10b-5 claims relying on short-seller reports). Where, as is the case here, a complaint relies on "a secondhand short-seller report which contains demonstrable errors and is uncorroborated by an independent investigation by counsel," the Court should dismiss the complaint for failure "to plead an actionable misstatement or omission" under Rule 12(b)(6) and Rule 9(b). *Fanhua*, 442 F. Supp. 3d at 804 (Engelmayer, J.); *see also Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (Engelmayer, J.). With respect to an "independent investigation by counsel," in a single conclusory sentence, the Complaint alleges it is based on counsel's investigation of publically available information including Hebron's SEC filings and People's Republic of China regulatory filings. (AC at 1.) In reality, the Complaint is nothing but a re-airing of the allegations contained in the Grizzly Report. The three alleged related-party transactions discussed in the Grizzly report are the same transactions contained in the Complaint. *Compare* AC *with* Ex. 5, Grizzly Report. The Complaint merely rehashes the assertions and rationale of the Grizzly Report, with the *post*

10

### A.    The Complaint Fails to Plead Any Actionable Misstatement or Omission.

Plaintiff fails to identify any actionable misstatement or omission concerning any of the three allegedly undisclosed related-party transactions.  Specifically, Plaintiff fails to allege with the requisite specificity how any of the alleged related party transactions actually involved related parties—as that term is defined in Hebron's 2019 20-F.  This failure dooms each of Plaintiff's claims.

### 1.    Relevant Related Party Standard

The Complaint cites to irrelevant standards that it summarily alleges Hebron's SEC filings breached, without bothering to explain how these purported violations are actionable under the Exchange Act.  Specifically, the Complaint alleges that Hebron violated FASB ASC 850, which the Complaint alleges is the relevant U.S. GAAP standard.  (AC ¶ 27.)  Standing alone, this allegation does not sufficiently plead a material misstatement or omission.  *See, e.g.*, *In re JP Morgan Chase Secs. Litig.*, No. 02 Civ. 1282 (SHS), 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) (dismissing claims and noting that "[s]ignificantly, the SAC does not plead that the Securities and Exchange Commission has alleged that [defendant's] SEC filings improperly omitted related party disclosures . . . .  These omissions suggest that reasonable accountants could differ as to whether [GAAP standard] applied to the" alleged related party transactions).  Similarly, the Complaint alleges Hebron violated the "Committee of Sponsoring Organizations of the Treadway Commission Report, Internal Control—Integrated Framework—2013" but does not explain why, or how, that standard applies to Hebron's SEC filings.  (AC ¶¶ 34,  35.)  The Complaint also recites SEC regulations applicable to issuers that file under section 15(d)-15(e) of

*hoc* addendum that the Complaint is based on an "investigation" by counsel.  For this reason, the Complaint should be dismissed.

11

the Exchange Act, but does not bother to allege at all—yet alone with the specificity required by Rule 9(b)—how Hebron violated these regulations.  (*Id.* ¶ 33.)[8]  These allegations all fail.

The relevant related-party standard is explicitly stated in the filings themselves.  Hebron is considered a "foreign private issuer" by the U.S. Securities and Exchange Commission and must annually file SEC Form 20-F.[9]  *See* AC ¶ 6 (Hebron filed its Annual Report using Form 20-F); 17 C.F.R. § 240.3b-4 (defining "foreign private issuer"); 17 C.F.R. § 249.220f (2004).  In its 2019 SEC Form 20-F filing, Hebron adopted the following definition of "related party" from the Item 7.B Instructions for SEC Form 20-F:

> (a) enterprises that directly or indirectly through one or more intermediaries, control or are controlled by, or are under common control with, our Company;
>
> (b) associates;[10]
>
> (c) individuals owning, directly or indirectly, an interest in the voting power of our Company that gives them significant influence[11] over our Company, and close members of any such individual's family;
>
> (d) key management personnel, that is, those persons having authority and responsibility for planning, directing and controlling the activities of our Company, including directors and senior management of companies and close members of such individuals' families;

---

[8]   To the extent that Plaintiff argues that Hebron violated SEC regulations requiring it to maintain disclosure controls and procedures because those controls and procedures were purportedly ineffective, that argument fails.  *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 265 (S.D.N.Y. 2019) (dismissing securities fraud claims predicated on statement that defendant would adhere to "internal control process to evaluate and approve related-party transactions" because plaintiffs "failed to allege sufficient facts to demonstrate that representations that the transaction would be subjected to the related-party transaction approval process were false").

[9]   Because it is a foreign private issuer, Hebron is exempt from certain SEC rules and regulations.  *See In re Dynagas LNG Partners LP Secs. Litig.*, No. 19 Civ. 4512 (AJN), 2020 WL 6947521, at *9 (S.D.N.Y. Nov. 25, 2020) ("[A]s multiple courts in this Circuit have found, foreign private issuers are not subject to SEC Regulation S–K.").  Specifically, Hebron is not required to comply with Item 404 of Regulation S-K, which defines the scope of "related party transactions" that registered companies are required to disclose.

[10]  The Item 7.B Instructions for SEC Form 20-F define an associate as "an unconsolidated enterprise in which the company has a significant influence or which has significant influence over the company."  Int'l Disclosure Standards, S.E.C. Release No. 7745 (Sept. 28, 1999).

[11]  The Item 7.B Instructions for SEC Form 20-F define significant influence as "the power to participate in the financial and operating policy decisions of the enterprise but is less than control over those policies."  Int'l Disclosure Standards, S.E.C. Release No. 7745 (Sept. 28, 1999).

(e) enterprises in which a substantial interest in the voting power is owned, directly or indirectly, by any person described in (c) or (d) or over which such a person is able to exercise significant influence.

(Ex. 2, 2019 20-F at 94; Int'l Disclosure Standards, S.E.C. Release No. 7745 (Sept. 28, 1999).)  As explained below, Hebron disclosed the transactions within this definition of a "related party," and thus none of the alleged misstatements or omissions is actionable.  Indeed, the Independent Investigation confirmed as much.  That Investigation examined each of the allegations, and concluded "based on the evidence collected and the information provided by interviewees that none of the three transactions specified in the short seller's report qualified as related party transactions requiring disclosure under the applicable standard."  (Ex. 6, July 31, 2020 6-K at Ex. 99.1).

### 2.    Plaintiff Fails to Plead Any Actionable Misstatement or Omission Related to the Private Placement Sale.

Hebron's 2019 20-F statement that the Company had not been involved in any related-party transactions other than those disclosed is not actionable because it was not false.[12]  With respect to the Private Placement Sale, Plaintiff fails to allege sufficiently that, under the related-party definition in Hebron's 2019 20-F, Shan Jiang or Loong Fang were parties related to Hebron.

With respect to Shan Jiang, the Complaint alleges that he was the signing director on behalf of Loong Fang for the Private Placement Sale, has been a supervisor at Puhui Investment since April 14, 2020, and has been a supervisor at Zhonghui since March 25, 2020.  (AC ¶ 42.)  The Complaint also alleges that Benefactum is the 100% owner of Puhui Investment and Zhonghui (id. ¶ 42), and that Liu is the 99.99% owner of Benefactum (id. ¶ 41).  Notably, however, the Complaint

---

[12]    Plaintiff's other alleged misstatements regarding the Private Placement Sale are similarly not actionable because of lack of falsity.  (See AC ¶¶ 84, 89, 91, 93.)

13

does not contain a single allegation regarding what Shan Jiang's purported role as a "supervisor" at Puhui Investment or Zhonghui entailed. This omission forecloses Plaintiff from successfully pleading that Shan Jiang was a related party to Hebron, either on the basis he owned a voting power of Hebron that gave him significant influence over Hebron or because he was a key management personnel of Hebron who had authority and responsibility for planning, directing, and controlling the activities of Hebron. Thus, Plaintiff fails to allege Shan Jiang was a related-party to Hebron. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067 (PAE), 2020 WL 4734989, at *14 (S.D.N.Y. Aug. 14, 2020) (dismissing claims where allegations "far from being particular," were instead "uncommonly hazy") (Engelmayer, J.).

Additionally, the Complaint fails to allege Loong Fang is a related party to Hebron. Plaintiff fails to identify how, even if Liu controlled either Puhui Investment or Zhonghui, control of an alleged related party of Hebron at which Shan Jiang is a supervisor establishes Loong Fang as a related party under a theory of common control of Loong Fang and Hebron. The Complaint alleges that "Bodang Liu indirectly controls the Loong Fang Trading Co. through Benefactum's 100% ownership over Puhui Investment and Zhonghui" but does not explain how Liu purportedly controlled Loong Fang simply because Shan Jiang was a supervisor at Puhui Investment and Zhonghui. (*Id.* ¶ 43.) This failure forecloses Plaintiff's argument that Loong Fang was a related-party entity to Hebron. *See ECA*, 553 F.3d at 200 (to adequately allege control of a related party, securities fraud plaintiff must allege controlling entity "created, controlled, and made decisions on behalf of" the related party); *In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.* ("*CMGE*"), No. 14 Civ. 4471 (KMW), 2016 WL 922711, at *5 (S.D.N.Y. Mar. 7, 2016) (dismissing complaint because it did not "describes any facts showing that [defendant] continued to hold decision-making power over [alleged related party]"). Because Plaintiff fails to articulate how either Shan Jiang or

14

Loong Fang was a related party, as that term is defined in Hebron's 2019 20-F, Plaintiff fails to plead any actionable misstatement or omission concerning the Private Placement Sale, and his claims regarding the Private Placement Sale should be dismissed.[13]  *See In re I.P.O. Secs. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) (dismissing securities claim and stating "particularity means the who, what, when, where and how").

### 3. Plaintiff Fails to Plead Any Actionable Misstatement or Omission Related to the Beijing Hengpu Transaction.

Hebron's 2019 20-F statement that the Company had not been involved in any related-party transactions other than those disclosed is not actionable because it was not false with respect to the Beijing Hengpu transaction.[14]  Plaintiff fails to allege that Xiaoyun Huang, Peng Jiang, or Beijing Hengpu were related parties to Hebron, as that term is defined in Hebron's 2019 20-F.

With respect to Huang, the Complaint alleges that "[a]ccording to Beijing Hengpu's SAMR records, Huang was . . . registered as Beijing Hengpu's Chairman since June 28, 2017, and, as of October 30, 2020, remains the Chairman and legal representative of Beijing Hengpu."  (AC ¶ 55.) However, as the Complaint explicitly references, Hebron has explained that Huang had no role at Beijing Hengpu at the time of the Beijing Hengpu transaction but was merely nominally listed as Beijing Hengpu's legal representative on a technicality given "certain government regulatory

---

[13]  Plaintiff's claims related to the Private Placement Sale should be dismissed for the additional and independent reason that the Complaint fails to allege Shan Jiang had any role at either Puhui Investment or Zhonghui at the time the Private Placement Sale was announced or entered into.  The share purchase agreement was announced and entered into on December 9, 2019.  (AC ¶ 36.)  The Complaint alleges Shan Jiang has only been a supervisor at Puhui Investment since April 14, 2020, and a supervisor at Zhonghui since March 25, 2020.  (*Id.* ¶ 42.)  Because Shan Jiang had **no role whatsoever** at either of the purported related parties when the Private Placement Sale was entered into and announced, Plaintiff's allegations are utterly meritless and should be dismissed.  *See Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), 2012 WL 3957916, at *19 (S.D.N.Y. Sept. 10, 2012) ("It is unclear whether the requirement that companies disclose 'proposed' transactions in which 'any related person . . . will have a direct or indirect material interest,' 17 C.F.R. § 229.404(a), applies to a situation in which a company agrees to purchase a target . . . and corporate officers then take an interest in the target.").

[14]  Plaintiff's other alleged misstatements regarding the Beijing Hengpu transaction are similarly not actionable because of lack of falsity.  (*See* AC ¶¶ 87, 89, 91.)

15

policies that" temporarily prevented Beijing Hengpu from changing its registration information. (*Id.*)  Case law makes clear that Plaintiff may not rely on technicalities, but must instead adequately allege the "vital link" of actual control over an entity in order to plead an undisclosed related-party transaction and survive a motion to dismiss.  *See CMGE*, 2016 WL 922711, at *5; *see also Tabor v. Bodison Biotech, Inc.*, 579 F. Supp. 2d 438, 450–51 (S.D.N.Y. 2008) (dismissing complaint for failure to allege facts sufficient to show "that [alleged related party] controlled or significantly influenced the management or operating procedures of" defendant).  Because the Complaint fails to allege Huang had any control over Beijing Hengpu at the time of Beijing Hengpu's acquisition by Hebron, any allegation that Huang was a related party to Hebron is irrelevant.

And even assuming Huang had a role at Beijing Hengpu at the time of the acquisition (he did not), the Complaint contains no allegations that could conceivably establish Huang as a related party to Hebron.  Indeed, the Complaint does not allege Huang was employed by Hebron in any capacity, let alone as key management personnel, and there is no non-conclusory allegation that Huang had any influence over Hebron whatsoever.  The only allegations with respect to Huang's status as a related party to Hebron are that unnamed "media articles" reported Huang was the CEO of Benefactum (an alleged undisclosed Hebron related party) and HuiYingJinFu (an alleged online financial platform operated by Benefactum) "[t]hroughout 2019," and was the Chief Fintech Officer of NiSun Shanghai (a disclosed Hebron related party).  (AC ¶¶ 56, 57.)  But beyond the vague statement that these media reports occurred "throughout 2019," the Complaint fails to identify any other details about the articles that would establish with the requisite particularity how Huang is an undisclosed related party to Hebron.  Indeed, with respect to the allegation that Huang was reported to be the Chief Fintech Officer of NiSun Shanghai, the Complaint does not even bother to state a year in which the purported media article was published.  (AC ¶ 57.)

16

These insufficient allegations, which say nothing about Huang's position on December 15, 2019, when the Beijing Hengpu transaction occurred, are unmoored in time and deficient in details. The allegations do not even begin to approach the level of specificity required to satisfy Rule 9(b). *See Altimeo Asset Mgmt.*, 2020 WL 4734989 at *13 ("[W]here a complaint's allegations of a false or misleading statement rely on a news article, the relevant statements in the article must be properly attributed to meet Rule 9(b)'s particularity requirement."); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) ("Because the article does not reveal the identity or position of the person who provided the information, it is impossible to evaluate its reliability."). Accordingly, the Complaint fails to allege that Huang was a related party to Hebron.

Plaintiff's allegations regarding Peng Jiang as a related party to Hebron do not fare any better. The Complaint alleges that Peng Jiang has been Beijing Hengpu's director and manager since June 2017; has been a legal representative, Vice President, and 99% shareholder of NiSun Shanghai since October 2019; and is the legal representative of Shanghai Fintech, an alleged subsidiary of Hebron. (AC ¶ 58.) But despite reciting Peng Jiang's title as a "director and manager" at Beijing Hengpu, the Complaint does not allege at all, let alone with specificity, how Peng Jiang exerted any control over Beijing Hengpu. (*Id.*) Given this glaring failure, Peng Jiang's roles at NiSun Shanghai and Shanghai Fintech are irrelevant, and Plaintiff's claims regarding Peng Jiang should be dismissed. *See CMGE*, 2016 WL 922711, at *5 (dismissing claims because no control allegations); *Tabor*, 579 F. Supp. 2d at 450–51 (same); *SkyPeople Fruit Juice*, 2012 WL 3957916 at *18 (same). And even if the Complaint adequately described Peng Jian's purported role at Beijing Hengpu (it does not), Plaintiff fails to explain how allegations that Peng Jiang had roles at a related party to Hebron, as well as a subsidiary of Hebron, establish that he either owned

17

a voting power of Hebron that gave him significant influence over Hebron, or was a key management personnel of Hebron—as required to establish that Peng Jiang was a related party to Hebron.[15]  Plaintiff's claims predicated on the Beijing Hengpu transaction should be dismissed.

### 4. Plaintiff Fails to Plead Any Actionable Misstatement or Omission Related to the Nami Transaction.

The press release attached to Hebron's May 22, 2020 6-K announcing the Nami transaction is not actionable because it was not false.  Specifically, Jinbao Li ("Li"), Nami, and Shanghai Nami were not parties related to Hebron under the definition of the term in Hebron's 2019 20-F.

The Complaint alleges Nami is an undisclosed related party to Hebron because it is controlled by Li and because Li is an 85% shareholder of Shanghai Nami—which the Complaint contradictorily alleges was a subsidiary of two purported Hebron related parties: NiSun Shanghai and Huiying Financial.  (*See* AC ¶¶ 67–73.)  But the Complaint's bare-bones and inconsistent allegations fail to adequately allege that Shanghai Nami was a related party to Hebron. Specifically, the allegation that the April 2, 2018 article posted in NiSun Shanghai's WeChat initially erroneously stated Shanghai Nami was a subsidiary of Huiying Financial does not make the Nami transaction statements actionable.  (*See* AC ¶¶ 70, 71.)  The April 2, 2018 article was quickly corrected to note Shanghai Nami was a cooperation company, not a subsidiary — which the Complaint explicitly admits.  (*See id.* ¶¶ 71,72.)  Similarly, the allegation that a CV was located online indicating that Shanghai Nami was a subsidiary of NiSun Shanghai does not provide any support for the allegation that Nami was an undisclosed related party to Hebron.  (*Id.* ¶ 73.)  In fact, this allegation contradicts the allegation that Shanghai Nami was a subsidiary of Huiying

---

[15]  The allegation that Beijing Hengpu itself is a related party is derivative of Plaintiff's allegations regarding Huang and Peng Jiang.  Because Plaintiff has failed to adequately allege either of those individuals is a related party to Hebron, he also fails to allege Beijing Hengpu is a related party to Hebron.

Financial.  (*Id.* ¶ 70.)   Together, these two allegations amount to nothing more than pure speculation, which is utterly insufficient to survive any motion to dismiss—let alone a motion brought under Rule 9(b)'s stringent standard.  *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) ("A plaintiff cannot base securities fraud claims on speculation and conclusory allegations."); *S.E.C v. Sason*, 433 F. Supp. 3d 496, 511 (S.D.N.Y. 2020) ("vague and factually unsubstantiated allegations fall short of establishing fraud under Rule 9(b)").

The allegations that Li and Nami are related parties to Hebron are each derivative of the allegation that Shanghai Nami was a related party to Hebron: The Complaint's failure to adequately allege Shanghai Nami was a related party to Hebron is fatal to its remaining claims regarding the transaction.[16]

Plaintiff's meager confidential witness allegations as to the Nami transaction cannot be credited.  ***First***, the Complaint alleges CW 1 was employed by NiSun Shanghai from July 2017 through July 2018 and that CW 2 was employed by Shanghai Nami from February 2018 to February 2019.  (AC ¶¶ 68, 69.)  But the Nami transaction did not occur until May 12, 2020 — over a year after the last date of CW 2's alleged employment at Shanghai Nami and nearly two years after the last date of CW 1's alleged employment at NiSun Shanghai.  (*See id.* ¶¶ 63, 64.) Thus, even if the allegations of the CWs were true during their employment (they were not), there is no basis to assume the truth of the CWs allegations at the time of the Nami transaction, which occurred years after their alleged employment ended.  For this reason alone the allegations of the

---

[16]   Specifically, as already discussed, the Complaint does not adequately plead that Shanghai Nami is the subsidiary of any related party to Hebron, such that Li's 85% ownership of Shanghai Nami would establish him as a related party.  Because the Complaint only alleges Nami is a related party to Hebron based on its ownership by Li, the Complaint also fails to adequately allege that Nami is a related party to Hebron.

CWs should be discarded. *See Lululemon*, 14 F. Supp. 3d at 580 ("No CW sets forth facts that suggest that any of the alleged statements were false when they were made.").

**Second**, there is no allegation that CW interacted with either of the Individual Defendants, and there is no allegation as to how either of the rank-and-file positions of the CWs ("assistant" and "legal counsel") would allow them to become aware of the purported fraudulent (and secret) activities. *See Loc. No. 38 Int'l Brotherhood of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discounting allegations of "low-level, rank-and-file employees" who the complaint did not indicate had any access to the alleged information or contact with the individual defendants), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).

**Third**, the Complaint does not allege Plaintiff's counsel spoke with the CWs. The absence of any effort by counsel to corroborate the allegations by the CWs, or any additional context on how Plaintiff's counsel came to learn of the CWs allegations, provides an additional basis on which to discount the CWs' statements. *See Altimeo Asset Mgmt.*, 2020 WL 4734989 at *15 (disregarding allegations of CW where "Counsel [did] not explicitly state that they have personally interviewed [the CW] or even tried to locate this source on which the FAC so heavily relies").

Plaintiff's conclusory CW allegations are not sufficient to meet the pleading standards in any case, much less the heightened pleading requirements imposed by the PSLRA. *See Fanhua*, 442 F. Supp. 3d at 799–800; *Altimeo Asset Mgmt.*, 2020 WL 4734989 at *11-12. The claims related to the Nami transaction should be dismissed.

**B.    Plaintiff Fails to Plead Facts Giving Rise to a Strong Inference of Scienter.**

Plaintiff's Section 10(b) and Rule 10b-5 claims separately fail because Plaintiff has not adequately pleaded scienter. A plaintiff must plead scienter in one of two ways: (1) by alleging that Defendants had the motive and opportunity to commit fraud; or (2) by producing "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. Here,

the Complaint does not adequately plead scienter as to Sun and Liang under either theory. And the Complaint fails to attach scienter to Hebron "by extension" due to its failure to establish scienter as to the Individual Defendants. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

### 1.    Plaintiff Fails to Plead Facts to Support Motive to Commit Fraud.

To adequately allege that Defendants had motive and opportunity to commit fraud, Plaintiff must "allege that defendants benefited in some concrete and personal way from the purported fraud." *Novak*, 216 F.3d at 307–08; *see also Kalnit*, 264 F.3d at 139 (Motives "generally possessed by most corporate directors and officers do not suffice."). The Complaint's allegations are, individually and collectively, entirely insufficient to establish the requisite motive.

Plaintiff makes no attempt to plead that the Individual Defendants received any improper personal benefits, financial or otherwise, related to the three purported related-party transactions. *See CMGE*, 2016 WL 922711 at *7 (rejecting the attempt to establish scienter based on motive that failed to "describe, as it must, how [d]efendants 'benefited in some concrete and personal way' from the alleged related-party transactions"). Plaintiff further contends, without offering any non-conclusory allegations, that Liang's past employment at two companies owned or controlled by Liu made Liang beholden to Liu at her current job. (AC ¶ 104.) But this is an ineffective argument absent any allegations that Liu continued to exert material influence. *See Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 254 (S.D.N.Y. 2012) (holding that a prior working relationship is insufficient to establish scienter).

There is also no allegation that either individual defendant sold Hebron stock during the Class Period. Sun has not owned Hebron stock since July 2019. (Ex. 2, 2019 20-F at 93 n.3.) Liang owned 100,000 shares of Hebron stock on April 24, 2020 (*Id.* at 93), and held the same number of shares on August 10, 2020 (Ex. 3, August 14, 2020 6-K at 19). That the defendants

21

did not sell stock during the Class Period cuts against any inference of scienter.  *See, e.g., In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 585 (S.D.N.Y. 2013) (failure to allege scienter where "no allegation that the defendants . . . sold a single share of BoA stock during the Class Period."), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *In re Sec. Capital Assur. Ltd. Secs. Litig.*, 729 F. Supp. 2d 569, 594 (S.D.N.Y. 2010) (dismissing on scienter grounds where "no SCA officer or director sold a single share of SCA stock during the entire class period"); *In re eSpeed, Inc. Secs. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) ("that neither [individual defendant] sold stock during the putative class period undermines plaintiffs' motive allegations").

Lastly, the fact that Sun and his family guaranteed corporate debts is not a sufficient motive.[17]  The Complaint speculates, without asserting any supporting facts, that Sun "was under tremendous financial pressure to get Hebron's debt repaid."  (AC ¶ 103.)  This is insufficient because the rest of the Complaint is devoid of allegations to support the propositions (1) that Hebron was at risk of a default; and (2) that even if extreme financial difficulties did arise, misleading investors about the three transactions would effectively shield Sun from personal liabilities. *Janel World Trade, Ltd. v. World Logistics Servs., Inc.*, No. 08 Civ. 1327 (RJS), 2009 WL 735072, at *6 (S.D.N.Y. Mar. 20, 2009) ("[S]peculative allegations regarding personal liability that may potentially attach to an individual defendant are insufficient to give rise to a strong inference of scienter under the PSLRA.").

### 2.    Plaintiff Fails to Allege Deliberate, Illegal Behavior, or Recklessness.

Where, as here, Plaintiff has not established motive, he must plead particularized facts showing an even "stronger inference" that Defendants made the alleged misstatements with

---

[17]    Sun founded Hebron's oldest subsidiary in China, and was Hebron's controlling shareholder until July 2019. (Ex. 2, 2019 20-F at 86; Ex. 7, September 4, 2020 6-K.)  Sun's controlling interest in (and long-term association with) Hebron explains his guaranteeing of corporate debt.

conscious misbehavior or recklessness. *Kalnit*, 264 F.3d at 143. Conscious misbehavior generally consists of "deliberate, illegal behavior," while recklessness encompasses conduct that is "at the least . . . *highly unreasonable* and which represents an *extreme departure* from the standards of ordinary care." *Id.* at 142 (emphasis added). The Complaint makes several conclusory assertions that, individually and collectively, fail to establish the required state of mind. *See, e.g.*, *Hutchinson v. Perez*, No. 12 Civ. 1073 (HB), 2013 WL 1775374, at *4 (S.D.N.Y. Apr. 25, 2013) (Courts cannot "combine several insufficient allegations of scienter and, taken together, construct 'strong inference' of recklessness."), *aff'd*, 550 F. App'x 24 (2d Cir. 2013).

*First*, Plaintiff offers no evidence that Defendants knowingly withheld or misrepresented information in their possession concerning the three transactions. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 579 (S.D.N.Y. 2016) (requiring "factual allegations to indicate that defendants understood that their public statements were inaccurate, or were highly unreasonable in failing to appreciate that possibility").

*Second*, the mere fact that the Individual Defendants held executive positions is insufficient to show scienter. *See In re Rockwell Med., Inc. Secs. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) ("[I]t is practically hornbook law that 'accusations' founded on nothing more than a defendant's corporate position[,] are entitled to no weight.").[18]

*Third*, the Complaint appears to imply, again without offering any particularized allegations, that Sun's resignation as CEO and Chairman of Hebron, which was disclosed in Hebron's August 14, 2020 6-K, was triggered by the release of the Grizzly Report on June 3, 2020.

---

[18]   Plaintiff also cannot establish scienter by making the tenuous argument that, while Sun and Liang were at Hebron's helm, two of the three purported related-party transactions were related to one of Hebron's core business areas. *See Marcu v. Cheetah Mobile Inc.*, No. 18 Civ. 11184 (JMF), 2020 WL 4016645, at *8 (S.D.N.Y. July 16, 2020) ("At best, core-operations allegations are 'supplementary' — they are not 'independently sufficient means to plead scienter.'") (quoting *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011)).

23

(AC ¶ 105.)  The period of time between these two events, over 70 days, calls into question any alleged causal relationship.  Further, Sun, who was previously Hebron's controlling shareholder, sold all his Hebron shares in July 2019.  (Ex. 2, 2019 20-F at 93 n.3.)  In addition, the August 14, 2020 6-K disclosed that several of Hebron's existing directors, Sun included, either resigned or did not seek reelection.  (Ex. 3, August 14, 2020 6-K at 5.)[19]  These facts strongly suggest that Sun's professional decision had benign reasons, rather than fraudulent ones.  *See Woolgar v. Kingstone Companies, Inc.*, No. 19-CV-5500 (RA), 2020 WL 4586792, at *26 (S.D.N.Y. Aug. 10, 2020) ("[T]here are any number of reasons that an executive might resign, most of which are not related to fraud."); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("[R]esignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter.").

*Fourth*, Plaintiff contends that Hebron's engagement of a new independent auditor "helped set the stage for Defendant's egregious wrongdoings" (AC ¶ 102), without offering any indicia that the new auditor facilitated or was involved in the alleged wrongdoing.[20]  But this baseless allegation falls short of showing a strong—or any—inference of scienter.  *See, e.g.*, *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 474, 475 (S.D.N.Y. 2008) (The resignation of a company's outside auditor is insufficient to support a strong inference of scienter where, as happened here, auditor files a letter stating "there were no disagreements between the Company and [auditor] on any matter of accounting principles or practices.").

---

[19]    Sun's resignation was one of several scheduled leadership changes, and he remained as CEO until a successor was elected by the board. (Ex. 3, August 14, 2020 6-K at 7; Ex. 7, September 4, 2020 6-K at Ex. 99.2.)

[20]    Contrary to what Plaintiff attempts to imply, Hebron disclosed that the dismissal of the previous auditor, Friedman LLP, was not due to any accounting disagreement. (Ex. 8, February 26, 2019 6-K.)  Further, Friedman LLP issued a letter, which was attached to the February 2019 6-K, confirming that Friedman agreed with Hebron's statement. (*Id.* at Ex. 99.1.)

24

In the end, this Court should reject Plaintiff's scattershot scienter argument "that zero plus zero plus zero plus zero plus zero adds up to" a strong inference of scienter. *Id.* at 475 (dismissing claims because an "amalgam of suggestions" is insufficient to adequately plead scienter).[21]

### C.    Plaintiff Fails to Plead Loss Causation.

The Complaint's failure to plead loss causation also warrants dismissal. To plead loss causation, a plaintiff must allege that (1) "the market reacted negatively to a corrective disclosure;" or (2) "the materialization of the risks that were concealed by the alleged misrepresentations or omissions proximately caused plaintiff['s] loss." *Omnicom Grp.*, 541 F. Supp. 2d at 551. The Complaint fails under either theory.

*First*, there were no "misrepresentations or omissions" with regard to the three transactions and Plaintiff cannot argue that his loss was proximately caused by non-existent misrepresentations or omissions. *See In re Omnicom Grp. Inc., Secs. Litig.*, 541 F. Supp. 2d at 551–52.

*Second*, there was no allegedly corrective disclosure. The Grizzly Report cannot constitute a corrective measure. A corrective disclosure "must be new to the market . . . . A recharacterization of previously disclosed facts cannot qualify as a corrective disclosure." *Id.* at 551–52; *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013).

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(A).

Plaintiff's Section 20(a) claims fail because Plaintiff fails to state a claim for a primary violation of Section 10(b); both should also be dismissed. *See ATSI Commc'ns*, 493 F.3d at 108.

---

[21]    And Plaintiff cannot rely on Sarbanes-Oxley ("SOX") certifications as a substitute because he fails to allege specific contrary information held by Sun or Liang at the time that they signed the SOX certifications at issue here. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Secs. Litig.*, No. 13 Civ. 8846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (no inference of scienter in absence of "any particularized allegation of an inference that . . . [SOX] certifications" were not "reasonably believed to be true when made").

25

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.


Date:   December 21, 2020                          Respectfully submitted,

                                                   **KIRKLAND & ELLIS LLP**

                                                   /s/ *Matthew Solum*
                                                   Matthew Solum, P.C.
                                                   Matt Tharp
                                                   601 Lexington Avenue
                                                   New York, New York 10022
                                                   Telephone: (212) 446-4800
                                                   Facsimile:  (212) 446-4900
                                                   matthew.solum@kirkland.com
                                                   matt.tharp@kirkland.com

                                                   *Counsel for Hebron Technology Co., Ltd.*

26