# EXHIBIT 2

# (PART 4 of 4)

协议一

权授权乙方使用。

4. Party A agrees to be appointed as an exclusive management and consultancy services agent to provide such services to Party B, also agrees to authorize Party B to use trademarks, technologies and related intellectual property rights held by Beijing Hengtai Puhui Information Service Co., Ltd.

依据《中华人民共和国公司法》及有关法律规定，经双方在平等互利、友好协商的前提下，双方就保护达成如下协议：

NOW, THEREFORE, pursuant to the PRC Company Act and relevant laws and regulations, and with mutual respects and friendly negotiations of the Parties, the Parties reached the following terms and conditions:

第一条：声明、陈述与保证

## ARTICLE I

### REPRESENTATIONS AND WARRANTIES

甲乙双方互相向对方声明、陈述和保证如下：

Each Party respectively herein, states, represents and warrants as follows:

1. 其有能力从事本协议项下之合作，而该合作符合其经营范围之规

定;

1. Each party is qualified to engage in the performances contemplated in this Agreement and the performances hereof are in line with the provisions of their business scope.

2. 其授权代表已获得充分授权可代表其签署本协议;

2. Each of the designated authorized representatives has been fully authorized to sign this Agreement.

3. 其有能力履行其于本协议项下之义务;并且该等履行义务的行为不违反任何对其有约束力的适用法律的限制,也不会侵犯任何第三方之合法权益。

3. Each Party has the ability to perform the obligations pursuant to this Agreement and the performance of the obligations thereto does not violate any provisions of the laws or infringe any legal rights of a third party.

4. 任何一方违反了上述声明、陈述和保证即被视为违反了本协议的约定,应按本协议的规定承担违约责任。

4. Should a Party fail to perform above representations, warranties and statements, such Party shall bear the liability in accordance with this Agreement.


第二条:服务周期:

ARTICLE II

协议一

## TERM AND TERMINATION

本协议服务期限在甲方认为需要终止时或乙方公司不可再续存的情况下，方可终止。（但双方合同附件另有约定的除外。）

This Agreement shall be effective as of the date hereof and shall remain effective until the date when Party A intends and does terminate such Agreement or Party B ceases to exist and subsist. (Except terminated pursuant to any provisions of any attachment herein).

第三条：服务费用：

## ARTICLE III

## THE SERVICES FEE

考虑到甲方提供的以上服务，乙方应支付与北京恒泰普惠信息服务有限公司的税后所得利润等额的商标、技术及管理顾问服务费予甲方或甲方指定的第三方。

In consideration of the management, consulting and financial services to be rendered, Party B agrees to pay Party A or a designated party of Party A as management and consulting fees equivalent to all its net profits after tax of the Company.

管理及顾问服务费如下：

The management and consulting fees are as follows:

1. 本协议期间，商标、技术及管理顾问服务费应等额于北京恒泰普

协议一

惠信息服务有限公司的税后所得，也就是每月收入扣除运营成本、费用和税金的所得。

1. During the term of this Agreement, the management and consulting fees shall be equivalent to the after-tax income of the Company, meaning all the monthly incomes by deducting operational costs and expenses and taxes.

2. 如税前所得为零，北京恒泰普惠信息服务有限公司无须支付商标、技术及管理顾问服务费。如发生亏损，结转至次月，北京恒泰普惠信息服务有限公司应当将上月的连同本月的商标、技术及管理顾问服务费一起支付甲方。

2. If the pre-tax income is zero, there is no need for the Company to pay the trademarks and technologies & management and consulting fees to Party A. If any loss is recorded, the amount shall be brought forward to the following month and the amount of the trademarks and technologies & management and consulting fees to payable by the Company to Party A for the following month shall be that of the previous month(s) plus that of the following month.

3. 乙方应在次月 15 号前支付本月的管理及顾问服务费。

3. Party B agrees to pay the management and consulting fees on or before 15th of the following month.

4. 上述每月商标、技术及管理顾问服务费应在每季度末之后纳税申报

8 / 16

表之前调整一次（季度调整），使北京恒泰普惠信息服务有限公司该季度的税后利润为零。

4. The abovementioned monthly trademarks and technologies & management and consulting fees should be adjusted between each and every quarter end and before tax declaration (quarterly adjustment) to ensure the net profit of the Company to be zero.

5. 上述每月商标、技术及管理顾问服务费应在每个会计年度末后、年度纳税申报表之前进行调整（年度调整），使北京恒泰普惠信息服务有限公司的年度税后利润为零。

5. The abovementioned monthly trademarks and technologies & management and consulting fee should be adjusted between each and every accounting year end and before yearly tax declaration (annual adjustment) to ensure the net profit of the Company to be zero.

第四条：效力

本协议由双方授权代表签字盖章之日起生效。

ARTICLE IV

VALIDITY

This Agreement shall be effective from the date of signing by the Parties and stamping with the company seals of the Parties.

第五条：违约责任

协议期间，违反本协议的任一条款即视为违约，违约方需承担因违约而造成非违约方的损失。

## ARTICLE V

### DEFAULT

During the term of this Agreement, if any terms and conditions herein is breached, it amounts a breach of this Agreement and the breaching party shall be responsible for the loss and damage of the non-breaching party.

第六条：不可抗力

任何一方如因不可抗力而未能履行合同或合同的部分条款，不应认定为违约。受影响的一方，需第一时间收集不可抗力的证据，因不可抗力而未能履行合同导致的后果由双方协商解决。

## ARTICLE VI

### FORCE MAJEURE

If a Party fails to perform this Agreement or part of this Agreement due to a force majeure, such party shall not be considered as a breaching party. The affected party shall

collect all evidence on such force majeure and all consequences of non performance resulted from force majeure shall be negotiated by the Parties.

第七条：适用法律

本协议的执行、效力、解释、履行，及由本协议产生的争议的解决，均受争议发生时中华人民共和国现行有效的法律管辖。

## ARTICLE VII

### GOVERNING LAW

This Agreement is made and shall be governed in all respects, including validity, interpretation and effect and the dispute resolution thereof, by the current laws of People's Republic of China.

第八条：争议解决

因本协议而产生的任何争端应首先通过友好协商解决。如果通过协商没有解决，任何一方均有权将争议提交中国上海市金山区人民法院以诉讼方式解决。

## ARTICLE VIII

### DISPUTE RESOLUTION

协议一

The Parties may settle any disputes arising out of this Agreement through friendly consultation. If the parties fail to resort the dispute by means of friendly consultation, the Parties may apply to Jinshan District People's Court of Shanghai City for litigation.

第九条：保密条款

1.无司法当局或政府部门的法律要求或协议另一方同意，协议双方应使有权接触和了解本协议条款的雇员或代表严格保密，不得向第三方透露任何条款，否则该一方或人员应承担相应的法律责任。

2.第一条保密义务不因本协议终止而终止。

## ARTICLE IX

### CONFIDENTIALITY

The Parties agree that the terms and conditions of this Agreement shall be kept strictly confidential and unless with the consent of the other party, a Party, including their respective employees and or agents, shall not reveal or divulge to any third parties or entities other than pursuant to a court order.  Or otherwise the disclosing party shall bear the legal responsibilities therefrom.

第十条：可分性条款

协议一

1. 由于法律和条例而导致本协议的某一条款无效或无法执行，则该条款无效，但不影响剩余其他条款的效力。

2. 在前一段的情况下，当事人双方应通过友好协商，尽快准备补充协议以取代无效条款。

## ARTICLE X

## SEVERABILITY

If any term or conditions of this Agreement is determined to be invalid, illegal or incapable of being enforced by any law or regulation of PRC, all other terms and conditions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.

Upon such determination that any term or condition is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

协议一

第十一条：不可转移条款

　　除非本协议具体规定，无另一方的事先书面同意，任何一方均不得分派本协议中的任何权利和义务给第三方，也不得为第三方提供担保或类似行为。

## ARTICLE XI

## ASSIGNMENT

Unless as agreed by other provisions provided herein, neither party may assign, transfer or convey all or part of its rights, obligations or interest under this Agreement without the prior written consent of the other party and neither party may provide any form of security or otherwise to any third party.

第十二条：其他事项

## ARTICLE XII

## MISCELLANEOUS

1. 因执行本协议而产生的所有税费，应依照法律法规由缔约双方分别承担。

1. Each Party shall bear all their respective taxes and expenses arising from the execution of this Agreement.

2. 在本协议生效后由双方达成的任何修订应成为本协议的整体组成

14 / 16

协议一

部分，并具有同等的法律效力。在修订与本协议不一致的情况下，应以修订为准。 如有多次修正的情况下，以最新修订日期为准。

2. Any amendment and/or supplement to this Agreement by the parties will form integral parts of the Agreement and shall have same legal effect. In the event of inconsistency between the amendment or supplement and this Agreement, such amendment or supplement shall prevail. In the event that there are multiple amendments or supplements, the latest amendment or supplement shall prevail.

3. 本协议系中英文一体式版本，一式五份。协议方各执协议原件一份，其余文件以作完成相关程序之用。每份协议原件均有同等法律效力。当中英文的解释产生冲突时，应以中文为准。

3. The Agreement was made with English and Chinese original versions in five copies. Each party of this Agreement shall hold one of its original versions and the rest of its original versions shall be used for related procedure. Each of them shall have the same legal force. In case of discrepancy between Chinese and English version, original version in Chinese shall prevail.

4. 该协议自双方签订之日起执行。

4. This Agreement shall come into force from the date it is signed by the authorized representatives of both parties.

协议一

甲方：宁臣（上海）企业管理有限公司

Party A: ON BEHALF OF Ning Chen (Shanghai) Enterprise Management Group Co., Ltd.

法定代表人：江鹏

Legal Representative: JIANG Peng

乙方：北京恒泰普惠信息服务有限公司

Party B: ON BEHALF OF Beijing Hengtai Puhui Information Service Co., Ltd.

法定代表人：黄筱赟

Legal Representative: HUANG Xiaoyun

国亚资产管理（深圳）有限公司（盖章）：

Guoya Asset Management (Shenzhen) Co., Ltd.

法定代表人：赵传海

Legal Representative: ZHAO Chuanhai

日期:2019 年 12 月 31 日

Date: Dec. 31, 2019

16 / 16

协议二

## 股权质押协议
## The Equity Interest Pledge Agreement

本协议由以下三方于 2019 年 12 月 31 日在中国上海签署

This Equity Interest Pledge Agreement (this "Agreement") is executed on Dec. 31, 2019 (the "execution date") in Shanghai, the People's Republic of China.



*THIS AGREEMENT* is between

甲方（质押权人）：宁臣（上海）企业管理有限公司

PARTY A: PLEDGEE:   Ning Chen (Shanghai) Enterprise Management Group Co., Ltd.

住所：上海市金山区张堰镇花贤路 69 号 B4115 室

Address: Room B4115, No. 69 Huaxian Road, Jinshan District, Shanghai, China

统一社会信用代码：91310000MA1JBRWO3M

Unified Social Credit Code: 91310000MA1JBRWO3M

类型：有限责任公司（台港澳法人独资）

Type: Limited liability Company (Taiwan, Hong Kong and Macao's sole proprietorship of legal person)

法定代表人：江鹏

Legal Representative: JIANG Peng



1 / 13

协议二

乙方（质押人）:

PARTY B: PLEDGOR

**国亚资产管理（深圳）有限公司**，现持有北京恒泰普惠信息服务

有限公司 100%的股权，其中包括恒泰先锋投资有限公司协议转让的

30%股权。

**Guoya Asset Management (Shenzhen) Co., Ltd,** holds 100% of

the equity interest of Beijing Hengtai Puhui Information

Service Co., Ltd., including the 30% equity agreed to  transfer

by Hengtai Xianfeng Investment Co., Ltd.

类型：有限责任公司（自然人投资或控股）

Type: Limited Liability Company (invested by or

controlled by natural person)

住所：深圳市前海深港合作区前湾一路 1 号 A 栋 201 室

**Address**: Room 201, building A, No.1 Qianwan 1st road, Qianhai

Shenzhen-Hong Kong cooperation zone, Shenzhen, China

统一社会信用代码：91440300MA5D870355

**Unified Social Credit Code:** 91440300MA5D870355

法定代表人：赵传海

**Authorized Representative:** ZHAO Chuanhai


丙方：北京恒泰普惠信息服务有限公司

PARTY C:

协议二

**Beijing Hengtai Puhui Information Service Co., Ltd.**

类型：有限责任公司（自然人投资或控股）

Type: Limited Liability Company (invested by or controlled by natural person)

住所： 北京市西城区金融大街 33 号 B 座 6 层 605 单元

Address: Unit 605, 6th floor, Block B, n=No. 33 financial street, Xicheng District, Beijing, China

统一社会信用代码：9111010833968793X7

**Unified Social Credit Code:** 9111010833968793X7

法定代表人：黄筱赟

**Authorized Representative:** HUANG Xiaoyun

(Collectively the "Parties")

鉴于：

**WHEREAS:**

1. 甲方宁臣（上海）企业管理有限公司系一家依照中华人民共和国法律注册成立并有效存续的有限责任公司。

1. Party A is a limited liability company incorporated and validly existing under the laws of the People's Republic of China.

协议二

2. 乙方包括北京恒泰普惠信息服务有限公司的所有股东，这些股东合法持有北京恒泰普惠信息服务有限公司的所有股份；乙方共 1 个法人，为国亚资产管理（深圳）有限公司作为本协议中的一方。

2. Party B represents all the equity interest holders who hold all the equity interest and assets of Beijing Hengtai Puhui Information Service Co., Ltd. Party B herein consists of one equity interest holders, viz: Guoya Asset Management (Shenzhen) Co., Ltd.

3. 丙方北京恒泰普惠信息服务有限公司系一家依照中华人民共和国法律在中国境内注册成立并有效存续的企业，注册资本为人民币 1000 万元；法定代表人：黄筱赟；统一社会信用代码：9111010833968793X7。

3. Party C is Beijing Hengtai Puhui Information Service Co., Ltd. is a company incorporated and validly existing under the law of the People's Republic of China with a registered capital of RMB 10,000,000 (10 million), and its legal representative is HUANG Xiaoyun. The Unified Social Credit Code is 9111010833968793X7.

4. 甲方为希伯伦科技有限公司全资子公司，乙方拥有北京恒泰普惠信息服务有限公司 100%股权。现因为并购，乙方同意将其拥有的北京恒泰普惠信息服务有限公司 100%股权质押给甲方。

4. Party A is a wholly-owned subsidiary of Hebron Technology

4 / 13

协议二

Co., Ltd., while Party B owns 100% equity of Beijing Hengtai Puhui Information Service Co., Ltd. Now because of the merger, Party B herein agrees to pledge all of the equity interest of Beijing Hengtai Puhui Information Service Co., Ltd. which Party B holds to Party A as security.

5. 甲方同意接受乙方的股权质押。

5. Party A agrees to accept Party B's pledge.

依照中华人民共和国现行有效的法律和法规，协议各方本着平等互利原则，通过友好协商达成以下条款，以兹共同遵守：

In accordance with the laws and regulations in force in People's Republic of China, and under the principles of mutual benefits, the Parties have agreed to execute this Agreement with the following terms and conditions:

一：担保义务

质押的股权应保证由甲方和乙方参与的所有协议中赋予给乙方的权利和利益。

## ARTICLE I

## SECURITY OBLIGATIONS

协议二

The equity interest hereby pledged to Party A by Party B should ensure the rights, privileges and concessions of Party B in all the Agreements signed by Party A and Party B.

二：质押物

本协议所称的质押物为：现由乙方持有的北京恒泰普惠信息服务有限公司的 100%股权及由此产生的合法收益。

## ARTICLE II

## PLEDGED PROPERTY

The pledged property herein contains 100% of the equity interest of Beijing Hengtai Puhui Information Service Co., Ltd. held by Party B and legitimate interests generated during the term of Pledge.

三：担保义务的范围

担保义务的范围包括甲方和乙方参与签署的所有协议中赋予乙方的权利和利益。

## ARTICLE III

## SCOPE OF SECURITY OBLIGATIONS

The scope of the obligations of security is all the rights and

interests of Party B in all the agreements signed by Party A and Party B.

四：质押流程和质押登记

在本协议签署后 7 个工作日内，乙方应在北京市西城区工商行政管理局办理与质押股权有关的质押登记手续，或在甲方需要的情况下乙方需按甲方时间要求立即办理该股权质押登记。

## ARTICLE IV

## THE PLEDGE REGISTRATION

Within the 7 days from the date of signing this Agreement, or at the request of Party A, Party B agrees to complete the Pledge registration in Beijing Administration Bureau for Industry and Commerce as requested.

五：质押股权的转让

在本协议期间，未经甲方书面允许，乙方不得转让质押的股权

## ARTICLE V

## TRANSFER OF THE PLEDGED PROPERTY

During the term of the Pledge set forth in this Agreement, Party B shall not transfer the equity interest to any third party

协议二

without Party A's prior written consent.

六：协议效力、修改和终止

## ARTICLE VI

## TERMINATION AND MODIFICATION

1. 本协议自甲乙丙三方签字、盖章并经授权代表签署后生效；

The Agreement shall become to effect on execution date and continue in full force once signed by three parties' authorized representatives.

2. 一旦协议生效后，除非协议三方同意，任何一方不得修改或终止本协议。在三方协商后，任何修改或终止应以书面形式呈现。在三方书面同意修改或终止本协议前，本协议的条款仍对协议三方具有约束力。

2. No provision of this Agreement may be amended, modified, supplemented, discharged or terminated, unless all Parties consent thereto in writing. Prior to any modifications or termination as agreed by all Parties, all terms and conditions of this Agreement shall bind all the Parties herein.

七：适用法律

8 / 13

协议二

本协议的执行、效力、解释、履行，及由本协议产生的争议的解决，均受中华人民共和国人民法院管辖并适用争议发生时现行有效的中华人民共和国法律。

## ARTICLE VII

### GOVERNING LAW

This Agreement is made and shall be governed in all respects, including execution, validity, interpretation, effect and dispute resolution of this Agreement, by the court of People's Republic of China and be applied by the laws of People's Republic of China.

八：违约责任

任何违反本协议的条款、未能完全履行或错误履行本协议约定的义务、作出的任何不实承诺、对任何重大事项未作出重要披露或遗漏、或未能履行本协议条款的任何一方即构成违约。违约方应依照适用法律对其违约事项负责。

## ARTICLE VIII

### LIABILITY FOR BREACH OF CONTRACT

Any breach, failure in full performance, mistake in performance

协议二

any obligations, any misrepresentations made, non-disclosure of material facts or failure to disclose any material facts, or non performance of any provisions of this Agreement shall constitute a breach of this Agreement. The Defaulting Party shall be responsible for its default in accordance with law.

九：争议解决

因本协议理解或实施而产生的任何争端应首先通过友好协商解决。如果争议出现后 30 天内通过协商没有解决，任何一方均有权将争议提交中国上海市金山区人民法院以诉讼方式解决。

## ARTICLE IX

### DISPUTE RESOLUTION

The parties may settle any dispute regarding the interpretation or implementation arising out of this Agreement through consultation. If the Parties fail to resolve the dispute through consultation within 30 days, any parties may apply to People's Court of Jinshan for litigation.

十：可分性条款

1. 由于法律和法规而导致本协议的某一条款无效或无法执行，则本

协议二

条款无效，但不影响剩余其他条款的效力。

2.　在前述条款发生的情况下，协议三方应通过友好协商，尽快补充协议以取代无效条款。

## ARTICLE X

## SEVERABILITY

1. If any term or condition of this Agreement is determined to be invalid, illegal or incapable of being enforced by any law or regulation of PRC, all other terms and conditions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.

2 Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

第十一条：其他事项

协议二

## ARTICLE XI

### MISCELLANEOUS

1. 本协议中的标题仅作参考之便，不影响本协议的理解、解释或条款的意义。

1. **CAPTIONS AND HEADINGS.** The captions and headings throughout this Agreement are for convenience and reference only, and shall in no way be deemed to define, limit or add to the meaning of any provision of this Agreement.

2. 本协议系中英文一体式版本，一式五份。协议各方各执协议原件一份，其余文件以作完成相关程序之用。每份协议原件均有同等法律效力。当中英文的解释产生冲突时，应以中文为准。

2. The Agreement was made with English and Chinese original versions in five copies. Each party of this Agreement shall hold one of its original versions and the rest of its original versions shall be used for related procedure. Each of them shall have the same legal force. In case of discrepancy between Chinese and English version, original version in Chinese shall prevail.

3. 在签署后，协议双方开始执行本协议。

3. The Agreement is effective on execution date.

12 / 13

协议二

甲方: 宁臣 (上海) 企业管理有限公司

Party A: ON BEHALF OF Ning Chen (Shanghai) Enterprise
Management Group Co., Ltd.

法定代表人: 江鹏

Legal Representative: JIANG Peng

乙方: 国亚资产管理 (深圳) 有限公司

PARTY B: ON BEHALF OF Guoya Asset Management (Shenzhen) Co.,
Ltd.

法定代表人: 赵传海

Legal Representative: ZHAO Chuanhai

丙方: 北京恒泰普惠信息服务有限公司

Party C: ON BEHALF OF Beijing Hengtai Puhui Information Service
Co., Ltd.

法定代表人:黄筱赟

Legal Representative: HUANG Xiaoyun

日期:2019 年 12 月 31 日

Date: Dec. 31, 2019

Exhibit 4.16

协议三

## 股东委托投票代理协议

## Equity Interest Holders' Voting Rights Proxy Agreement

本协议由以下双方于 2019 年 12 月 31 日在中国上海签署

This Equity Interest Holders' Voting Rights Proxy Agreement (this "Agreement") is executed on Dec. 31, 2019 (the "execution date") in Shanghai, the People's Republic of China.

甲方（委托人）：

**PARTY A:**

**国亚资产管理（深圳）有限公司**，现持有北京恒泰普惠信息服务有限公司 100%的股权，其中包括恒泰先锋投资有限公司协议转让的 30%股权。

**Guoya Asset Management (Shenzhen) Co., Ltd,** holds 100% of the equity interest of Beijing Hengtai Puhui Information Service Co., Ltd.,including the 30% equity agreed to transfer by Hengtai Xianfeng Investment Co., Ltd.

类型：有限责任公司（自然人投资或控股）

Type: Limited Liability Company (invested by or controlled by natural person)

住所：深圳市前海深港合作区前湾一路 1 号 A 栋 201 室



1 / 8

协议三

Address: Room 201, Building A, No.1 Qianwan 1st road, Qianhai Shenzhen-Hong Kong cooperation zone, Shenzhen, China

统一社会信用代码：91440300MA5D870355

Unified Social Credit Code: 91440300MA5D870355

法定代表人：赵传海

Authorized Representative: ZHAO Chuanhai

乙方（受托人）：宁臣（上海）企业管理有限公司

PARTY B: Ning Chen (Shanghai) Enterprise Management Group Co., Ltd.;

住所：上海市金山区张堰镇花贤路 69 号 B4115 室

Address: Room B4115, No.69 Huaxian Road, Jinshan District, Shanghai, China

统一社会信用代码：91310000MA1JBRWO3M

Unified Social Credit Code: 91310000MA1JBRWO3M

类型：有限责任公司（台港澳法人独资）

Type: Limited liability Company (Taiwan, Hong Kong and Macao's sole proprietorship of legal person)

法定代表人：江鹏

Legal Representative: JIANG Peng

鉴于：

协议三

**WHEREAS:**

1. 乙方系一家依照中华人民共和国法律注册成立的有限责任公司；

1. Party B is a limited liability company incorporated and validly existing under the law of the People's Republic of China.

2. 国亚资产管理（深圳）有限公司系北京恒泰普惠信息服务有限公司的全部股东，并持有北京恒泰普惠信息服务有限公司 100%的股份。其中包括恒泰先锋投资有限公司协议转让的 30%股权。

2. Guoya Asset Management (Shenzhen) Co., Ltd is the legal equity interest holders of Beijing Hengtai Puhui Information Service Co., Ltd. (the "Company") and lawfully hold 100% of the equity interest and assets of the Company.

3. 截至本协议签订日，甲方为北京恒泰普惠信息服务有限公司股东，合法持有北京恒泰普惠信息服务有限公司所有股份。乙方同意指定由甲方委派的人员来行使其在北京恒泰普惠信息服务有限公司股东大会上的股东投票权，且甲方愿意委派这样的人员。

3. As of the execution date, Party A is the equity interest holders of Beijing Hengtai Puhui Information Service Co., Ltd.; and lawfully holds all the equity interest and assets of the Company. Party B intends to specify the representatives ("Representatives") appointed by Party A to exercise its voting right of equity interest holders in

the general meeting of equity interest holders of the Company

and Party A is willing to appoint such a Representative.

4、江鹏系中华人民共和国公民，在签订本协议时均具有完全民事行为能力。

4. JIANG Peng is the citizen of PRC with fully civil capacity

when signing this Agreement.

5、国亚资产管理（深圳）有限公司系依照中华人民共和国法律注册成立的有限责任公司。

5. Guoya Asset Management (Shenzhen) Co., Ltd is limited

liability companies incorporated and validly existing under

the law of the People's Republic of China.


因此，依照中华人民共和国法律和法规，协议双方本着平等互利原则，通过友好协商达成以下条款，以兹共同遵守：

The parties have agreed to execute this Agreement with

provisions upon the laws and regulations of PRC as follows:


第一条．甲方同意且不可撤销地指定由乙方委派的人员来独家代理行使其在北京恒泰普惠信息服务有限公司股东大会上由法律、公司章程规定、协议约定的股东投票权，委派和选举董事和董事长作为北京恒泰普惠信息服务有限公司法人代表。由乙方委派的人员应为甲方持股的北京恒泰普惠信息服务有限公司的董事。

协议三

1. Party A agrees to irrevocably specify Representatives appointed by Party B to exclusively exercise the equity interest holders' voting rights in the general meeting of equity interest holders of the Company in accordance with the provisions of laws and articles of the Company to appoint and elect the directors and Chairman of the Company to be the corporate representative. The Representatives appointed by Party B shall be directors of the Company held by Party A.

第二条. 乙方同意根据本协议第一条，委派代理人。这些代理人应代表甲方行使其股东投票权。

2. Party B agrees to appoint Representatives pursuant to the Article 1 of this Agreement to execute the voting rights on behalf of Party A.

第三条. 协议各方理解，不论北京恒泰普惠信息服务有限公司的股东权益发生任何变化，甲方应指定由乙方委派的人员来行使股东投票权。协议各方均同意，甲方不得将其在北京恒泰普惠信息服务有限公司的股东权益转让给除乙方或者乙方指定个人或企业以外的其他任何个人或公司。

3. The Parties herein understand that no matter what changes of equity interests of the Company, Party A shall specify the

协议三

Representatives appointed by Party B to exercise its equity interest holders' voting rights. All the parties agree that Party A cannot transfer the equity interests of the Company held by Party A to any third party except for to Party B and Representatives appointed by Party B.

第四条. 甲方各成员理解，即使其中之一的成员不再拥有北京恒泰普惠信息服务有限公司股权，其仍应继续执行本协议，

4. Each Party A understands that they should continue to enforce this Agreement even if one equity interest holder of the Company no longer holds the equity interest of the Company.

第五条. 本协议经过双方授权代表签字、盖章后生效。

5. The Agreement shall be effective on the execution date.

第六条. 本协议任何修改和终止均应经协议双方书面同意。

6. No provisions of this Agreement may be amended, modified, supplemented, discharged or terminated unless with the Parties consent thereto in writing.

第七条. 本协议订立、效力、解释、履行，及由本协议产生的争议的解决，均受争议发生时中华人民共和国现行有效的法律管辖。

6 / 8

协议三

7. This Agreement is made and shall be governed in all respects, including execution validity, interpretation, effect and performance and any dispute resolution, by the laws of People's Republic of China.

第八条. 本协议系中英文一体式版本，一式五份。协议各方各执协议原件一份，其余文件以作完成相关程序之用。每份协议原件均有同等法律效力。当中英文的解释产生冲突时，应以中文为准。

8. The Agreement was made with English and Chinese original versions in five copies. Each party of this Agreement shall hold one of its original versions and the rest of its original versions shall be used for related procedure. Each of them shall have the same legal force. In case of discrepancy between Chinese and English version, original version in Chinese shall prevail.

第九条. 本协议自双方签订之日起执行。

9. This Agreement shall be effective from date of this Agreement when the Parties signed this Agreement.

协议三

甲方：国亚资产管理（深圳）有限公司

Party A: ON BEHALF OF Guoya Asset Management (Shenzhen) Co.,

Ltd. :

法定代表人： 赵传海

Legal Representative: ZHAO Chuanhai

乙方：宁臣（上海）企业管理有限公司

Party B:ON BEHALF OF Ning Chen (Shanghai) Enterprise

Management Group Co., Ltd. :

法定代表人：江鹏

Legal Representative: JIANG Peng

日期:2019 年 12 月 31 日

Date: Dec. 31, 2019



协议四

## 独家选择权协议

### Exclusive Right and Option to Purchase Agreement

本协议由以下双方于 2019 年 12 月 31 日在中国上海签署

This Exclusive Right and Option to Purchase Agreement (this "Agreement") is executed on Dec. 31, 2019 (the "execution date") in Shanghai, People's Republic of China.

*THIS AGREEMENT* is between



甲方：宁臣（上海）企业管理有限公司

**PARTY A: Ning Chen (Shanghai) Enterprise Management Group Co., Ltd.**

住所：上海市金山区张堰镇花贤路 69 号 B4115 室

Address: Room B4115, No. 69 Huaxian Road, Jinshan District, Shanghai, China

统一社会信用代码：91310000MA1JBRWO3M

Unified Social Credit Code: 91310000MA1JBRWO3M

类型：有限责任公司（台港澳法人独资）

Type: Limited liability Company (Taiwan, Hong Kong and Macao's sole proprietorship of legal person)

法定代表人：江鹏

Legal Representative: JIANG Peng

1 / 17

乙方：

PARTY B:

**国亚资产管理（深圳）有限公司**，现持有北京恒泰普惠信息服务有限公司 100%的股权，其中包括恒泰先锋投资有限公司协议转让的 30%股权。

**Guoya Asset Management (Shenzhen) Co., Ltd,** holds 100% of the equity interest of Beijing Hengtai Puhui Information Service Co., Ltd., including the 30% equity agreed to transfer by Hengtai Xianfeng Investment Co., Ltd.

类型：有限责任公司（自然人投资或控股）

Type: Limited Liability Company (invested by or controlled by natural person)

住所：深圳市前海深港合作区前湾一路 1 号 A 栋 201 室

Address: Room 201, Building A, No.1 Qianwan 1st road, Qianhai Shenzhen-Hong Kong cooperation zone, Shenzhen, China

统一社会信用代码：91440300MA5D870355

Unified Social Credit Code: 91440300MA5D870355

法定代表人：赵传海

Authorized Representative: ZHAO Chuanhai

丙方：**北京恒泰普惠信息服务有限公司**

协议四

PARTY C: Beijing Hengtai Puhui Information Service Co., Ltd.

类型：有限责任公司（自然人投资或控股）

Type: Limited Liability Company (invested by or controlled by natural person)

住所：北京市西城区金融大街 33 号 B 座 6 层 605 单元

Address: Unit 605, 6th floor, Block B, No.33 financial street, Xicheng district, Beijing, China

统一社会信用代码：9111010833968793X7

Unified Social Credit Code: 9111010833968793X7

法定代表人：黄筱赟

Authorized Representative: HUANG Xiaoyun

鉴于：

WHEREAS:

1. 甲方、丙方两个公司系依照中华人民共和国法律注册设立且有效存续的有限责任公司。

1. Party A and Party C are the limited liability companies incorporated and validly existing under the laws of the PRC.

2. 截至本协议签订日，乙方为丙方的股东，合法持有丙方所有股权及权益。在本协议中，乙方，即，国亚资产管理（深圳）有限公司系依照中华人民共和国法律注册成立的有限责任公司。

协议四

2. As of the execution date of this Agreement, Party B lawfully holds 100% of the equity interests of Party C. Party C herein consists of one equity interest holders, is a limited liability company incorporated and validly existing under the laws of the People's Republic of China.

据此，协议各方经过友好协商，达成如下协议以兹共同遵守：

After friendly consultation, all the Parties have agreed to execute this Agreement with the following terms and conditions:

第一条：购买选择权和行权

## ARTICLE I

## OPTION TO PURCHASE AND EXCERCISE

1.承诺：乙方承诺甲方拥有不可撤销的独家购买选择权，甲方有权购买现由乙方持股的丙方所有股份，该购买选择权是不可撤销的且只能由甲方或甲方指定人员行使。（这里的"人员"包括企业实体、公司、合伙企业、合资公司和非公司组织机构。）

1. **WARRANTIES.** Party B jointly and irrevocably hereby grants to Party A the exclusive right and option to purchase all assets and equity interest of Party C held by Party B. This exclusive right and option to purchase cannot be withdrawn by Party B and shall only be exercised by Party A or a designated party from Party A ("a designated party"

协议四

herein means corporate entity, company, partnership firm and unincorporated organization).

2.行权流程：甲方在行使其购买选择权之前应书面通知乙方；在收到通知后的 7 天内，乙方和丙方协同甲方或甲方指定人员应立即编制准备一整套拟提交给政府机构批准的与行使选择权有关的转让股权文件，以便实现股权转让。一旦这些转让文件的编制准备工作完成并经甲方、乙方和丙方书面确认，则这些转让文件应即刻且无条件地获得授权批准，以便执行与行使选择权有关的丙方股权和资产的转让。

2. **EXERCISE OF OPTION.** By exercising its exclusive right to purchase the equity of Party C pursuant to this Agreement, Party A shall serve written notice to Party B. Within 7 days of receiving the written notice, Party B and Party C should provide necessary assistance to Party A or a designated party to prepare a full set of documents regarding the transfer of equity interest to be submitted to the governmental organizations. Once the documents complied and confirmed by all the parties, they will be effectively and immediately unconditionally approved for the transfer of the assets and equity interests of Party C.

协议四

3. 行权条件：当甲方认为收购丙方是必要的且依照中华人民共和国法律和法规是可行的，以及按美国证券会要求是必须时，甲方可立即行使其购买丙方股东股权权益或资产的选择权，乙丙方无条件的全部同意。

,

3. **CONDITONS FOR OPTION.** When Party A considers it is of necessity, feasible under the laws and regulations of the People's Republic of China and mandatory at the request of the US Securities and Exchange Commission, Party A shall exercise its exclusive right and option to purchase the aforesaid equity interest and or assets and Party B and Party C shall agree such transaction unconditionally.

,

第二条：收购价格

## ARTICLE II

## PURCHASE PRICE

根据行使选择权的条件，甲方和乙方应签署与收购价格有关的协议。在收购不违反中国相关法律或法规且实质有效的前提下实施，收购价格为中华人民共和国法律范围内允许的最低价格。

Pursuant to the terms and conditions of the option to purchase, Party A and Party B shall sign an agreement relating to the purchase price. Party A and Party B have agreed that the purchase price for the aforesaid equity interest and assets to

协议四

be acquired shall be the lowest price as allowed by the laws and regulations of the People's Republic of China.

第三条：承诺和保证

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES

1. 协议各方应向其它方保证：各协议签署方具有签署本协议并执行本协议中义务的必要权利、能力和授权，且经过合法程序。

1. **AUTHORIZATION.** All parties have full power, legal capacity and authority to enter into this Agreement, to execute all attendant documents and instruments necessary to consummate the transaction and are authorized by lawful procedure.

2. 乙方向甲方承诺：

2. **WARRANTIES OF PARTY B TO PARTY A.**

（1）乙方是合法登记的丙方股东，且已经对各自认缴的丙方注册资金全额出资。

A. Party B represents and warrants to Party A that Party B is the legally registered equity interest holder of Party C and has paid the registered capital as subscribed.

（2）除《股权质押协议》外，乙方未对其在丙方的股权做任何抵押或质押，也未以任何形式对其在丙方的股权实施担保物权或借款。

7 / 17

B. Apart from "The Equity Pledge Agreement" signed with Party A, Party B warrants that it has never pledged the equity of Party C to any third party.

（3）乙方没有或将来也不会将其在丙方的股东权益出售给任何第三方；

C. Party B warrants that it has not or shall not sell the equity of Party C to any third party.

3. 丙方向甲方承诺：

## WARRANTIES OF PARTY C TO PARTY A.

丙方是依照中华人民共和国法律注册登记且合法存在的有限责任公司，其业务经营均遵守了中华人民共和国现行法律。

Party C is a limited liability company registered and validly existing under the laws of the People's Republic of China. Party C's business and operations are in compliance with the current laws of the People's Republic of China.

第四条：协议约定

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF PARTY C

在甲方执行购买选择权，收购丙方所有股权之前，丙方：

协议四

Prior to Party A or a designated party executes the right and option to purchase all equity interest and assets of Party C, Party C represents and warrants to Party A as follows:

1. 不得出售、转让、抵押、或以其他方法处置丙方经营收益或与其收入有关的其他任何合法利益（除非这些出售、转让、抵押、处置已经告知甲方并经甲方书面同意）；

1. not to sell, transfer, pledge or otherwise dispose of any legal benefits of Party C to any third party (unless such sale, transfer, pledge or disposal are with written consent of Party A);

2. 不得涉入任何可能对其资产、负债、经营、股东权益、或其他合法权利产生重大影响的交易（除非这些交易已经告知甲方并经甲方书面同意）；

2. not to involve in any transaction which might influence the assets, debt, operation, equity interest of holders and other legal interests of Party C (unless such transaction are with written consent of Party A);

3. 不得以任何形式对其股东分配任何股利。

3. not to distribute dividends to shareholders in any form;

4. 未经甲方事先书面同意，乙方和丙方不得将其在本协议中的权利和义务转让给其他第三方或者变相转让；

4. not to transfer any rights and obligations pursuant to this Agreement to any third party without written consent of Party A;

5.乙方和丙方同意：只要甲方愿意，甲方有权将其在本协议中的权利和义务转让给其他第三方。该转让只需甲方书面通知乙方和丙方，不需获得乙方和丙方的同意。

5. Party B and Party C agree that so long as Party A agrees, Party A shall have the right to transfer the rights and obligations pursuant to the Agreement to any third party. Party A shall give the written notice to Party B and Party C only on such transfer but no need to have prior consent of Party B and Party C.

第五条：保密性

## ARTICLE V

## CONFIDENTIALITY

协议各方理解并确定与本协议有关的任何口头或书面的材料都具有机密性，都应对这些材料、内容、信息保密。未经其他方书面授权，任何一方都不得将任何材料泄露给第三方，但以下情形除外：

Parties understand and confirm that all materials whether in verbal form or in writing relating to this Agreement are of confidential and such materials, contents and information shall be kept confidential. Unless with authorization of the other

协议四

Party, no party shall disclose to any third party, with the following exceptions:

1. 这些材料是公众所知或将为公众所知。

1. Such materials are of public knowledge.

2. 根据现行法律或条例或证券交易所条例，这些材料应该向公众披露；

2. Such material shall be disclosed to public pursuant to current laws and regulations or rules of a securities exchange.

3. 协议一方向其法律或财务顾问披露的材料与本协议中的交易预期相关，且这些法律或财务顾问应遵守本协议提到的保密条款。协议一方的雇员泄露任何保密材料视为该协议方泄露材料，则该协议方应为违反合同约定负责。本协议第五条保密条款不因本协议无效、修改、撤消、终止或因某种原因不能履行而终止。

3 A Party may disclose the material and the transactions relating to this Agreement to its legal and financial advisors and such legal and financial advisor shall observe the confidentiality clause of this Agreement. Any disclosure by the employee of a Party shall be deemed as disclosed by such Party and shall be responsible for the breach. This Article V of Confidentiality shall survive in regardless of any void, amendment, rescission, termination, or non-performance of this Agreement.

协议四

第六条：违约

## ARTICLE VI

## LIABILITY FOR BREACH OF CONTRACT

任何违反本协议的条款、未能完全履行或错误履行本协议约定的义务、作出的任何不实承诺、对任何重大事项未作出重要披露或遗漏、或未能履行本协议条款的任何一方即构成违约。违约方应依照适用法律对其违约事项负责。

Any breach, failure in full performance, mistake in performance any obligations, any misrepresentations made, non-disclosure of material facts or failure to disclose any material facts, or non performance of any provisions of this Agreement shall constitute a breach of this Agreement. The Defaulting Party shall be responsible for its default in accordance with law.

第七条：适用法律和争议解决

## ARTICLE VII

## GOVERNING LAW AND DISPUTE RESOLUTION

1.适用法律：本协议的执行、效力、解释、履行，及由本协议产生的争议的解决，均受争议发生时中华人民共和国现行有效的法律管辖。

协议四

1. GOVERNING LAW. This Agreement is made and shall be governed in all respects, including validity, interpretation, effect and performance, by the laws of People's Republic of China.

2. 争议解决： 因本协议理解或实施而产生的任何争端应首先通过友好协商解决。如果争议出现后 30 天内通过协商没有解决，任何一方均有权将争议提交给中国上海市金山区人民法院，以诉讼方式解决。

2. DISPUTE RESOLUTION. The parties may settle any disputes regarding the interpretation or implementation arising out of this Agreement through consultation. If the Parties fail to resolve the dispute through consultation within 30 days, any parties may apply to Jinshan People's Court of Shanghai for litigation.

第八条：协议效力和协议终止

## ARTICLE VIII

### EFFECT AND TERMINATION

1. 本协议在协议各方签订、盖章后生效；

1. This Agreement shall take legal effect on the Execution Date after this Agreement is signed by and stamped by the Parties.

2. 除非甲方提前 30 天通知其他方终止本协议，否则无协议各方全体一致同意，本协议不得终止。

Unless or until terminated by 30 day notice by Party A in advance, this Agreement shall be in full force.

第九条：协议修改和完整性

## ARTICLE IV

### ENTIRE AGREEMENT AND MODIFICATION

1. 协议修正、修改和补充：本协议的修改和补充需协议各方书面同意。由协议方执行的修改和补充部分应视为本协议整体组成部分，并同本协议一样具有法律效力。

1. **MODIFICATION AND AMENDMENT.** No provisions of this Agreement may be amended, modified, supplemented, discharged or terminated, unless the parties consent thereto in writing. Any amendments and supplements made hereof by the Parties shall form an integral part of this Agreement and shall have the same legal effect.

2. 完整条款：协议各方确认，本协议构成与合同标的物有关的协议各方的完整协议，并取代所有以前或同期协定和口头或书面形式的理解；

2. **ENTIRE AGREEMENT.** This Agreement contains the entire agreement between the Parties and supersedes all prior agreements, understandings and writings between the Parties with respect to the subject matter hereof.

协议四

第十条：可分性条款

## ARTICLE X

## SEVERABILITY

如果根据中国法律或法规，本协议的任何条款被宣告无效或无法执行则该条款仅仅在中国范围内被视为无效，而剩余其他条款的有效性、合法性、和可执行性不应受任何影响。协议各方应本着诚实精神，通过友好协商，准备有效协议以取代无效或无法执行的条款，以便取代条款能带来该无效或无法执行的条款拟产生的相同经济影响。

If any term or condition of this Agreement is determined to be invalid, illegal or incapable of being enforced by any laws or regulations of PRC, all other terms and conditions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or condition is invalid, illegal or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

第十一条：其他事项

## ARTICLE XI

## MISCELLANEOUS

1. 本协议中的标题仅作参考之便，不影响本协议的理解、解释或条款的意义。

1. <u>CAPTIONS AND HEADINGS.</u> The captions and headings throughout this Agreement are for convenience and reference only, and shall in no way be deemed to define, limit or add to the meaning of any provision of this Agreement.

2. 本协议系中英文一体式版本,一式五份。协议方各执协议原件一份，其余文件以作完成相关程序之用。每份协议原件均有同等法律效力。当中英文的解释产生冲突时，应以中文为准。

2. The Agreement was made with English and Chinese original versions in five copies. Each party of this Agreement shall hold one of its original versions and the rest of its original versions shall be used for related procedure. Each of them shall have the same legal force. In case of discrepancy between Chinese and English version, original version in Chinese shall prevail.

3. 在签署后，协议双方执行本协议。

3. The Parties shall perform this Agreement after signing this Agreement..

协议四

甲方：宁臣（上海）企业管理有限公司

Party A: ON BEHALF OF Ning Chen (Shanghai) Enterprise

Management Group Co., Ltd.：

法定代表人：江鹏

Legal Representative: JIANG Peng

乙方：国亚资产管理（深圳）有限公司：

Party B: ON BEHALF OF Shanghai Nisun Enterprise Management

Group Co., Ltd.：

法定代表人：赵传海

Legal Representative: ZHAO Chuanhai

丙方：北京恒泰普惠信息服务有限公司

Party C: ON BEHALF OF Beijing Hengtai Puhui Information

Service Co., Ltd.：

法定代表人:黄筱赟

Legal Representative: HUANG Xiaoyun

日期:2019 年 12 月 31 日

Date: Dec. 31, 2019

## FIRST AMENDMENT TO SHARE EXCHANGE AGREEMENT

This First Amendment to Share Exchange Agreement (this "Amendment") is made and entered into as of April 8, 2020, by and among (i) Hebron Technology Co., Ltd., a British Virgin Islands company, (the "Purchaser"), (ii) Beijing Heng-Tai-Pu-Hui Information Service Co. Ltd, a company incorporated under the law of the People's Republic of China ("PRC") (the "Company") and (iii) each of the shareholders of the Company named on Exhibit A to the original Share Exchange Agreement (collectively, the "Sellers"). The Purchaser, the Company and the Sellers are sometimes referred to herein individually as a "Party" and collectively, as the "Parties". All capitalized terms used but not defined herein shall have the meaning ascribed thereto in the original Share Exchange Agreement.

### RECITALS:

WHEREAS, the Purchaser, the Company and the Sellers executed and delivered that certain Share Exchange Agreement, dated as of December 15, 2019 (the "Share Exchange Agreement"); capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Share Exchange Agreement; and

WHEREAS, the Parties now wish to amend the Share Exchange Agreement to provide, among other things, that 100% of the Purchase Price will be paid at the Closing of the Share Exchange Agreement, as set forth herein.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual promises, representations, warranties, covenants and agreements set forth herein, the Parties hereto agree as follows:

Section 1. **Amendment to Section 2.2 (Closing)**. The first paragraph of Section 2.2 of the Share Exchange Agreement is hereby amended by deleting such paragraph in its entirety and substituting in lieu thereof the following new first paragraph of Section 2.2:

"The closing of the transactions contemplated by this Agreement (the "Closing") shall take place at the offices of Kaufman & Canoles, P.C., Two James Center, 14th Floor, 1021 East Cary Street, Richmond, Virginia 23219, at 4:00 p.m., Eastern Time, on the second Business Day after all conditions to the Closing set forth in hereof have been satisfied or waived, or such other place, time or date as the Purchaser and the Sellers agree in writing. The date of the Closing shall be referred to herein as the "Closing Date." In addition to those obligations set forth elsewhere in the Agreement, at the Closing:"

Section 2. **Amendment to Section 2.3 (Purchase Price)**. Section 2.3(b) of the Share Exchange Agreement is hereby amended by deleting such subsection in its entirety and substituting in lieu thereof the following new Section 2.3(b):

"(b) Each Seller shall receive its pro rata share of the Purchaser Shares based on the percentage of the Exchange Shares owned by such Seller as compared to the total number of the Exchange Shares owned by all Sellers (such Seller's "Pro Rata Share"). The Parties agree that the payment of the Purchase Price and delivery of the Purchaser Shares to the Sellers shall be made as follows: all (100%) of the Purchase Price by way of delivery of the Purchaser Shares shall be made at the Closing Date."

**Section 3. Future References**. All future references to the Share Exchange Agreement shall be deemed to refer to the Share Exchange Agreement as amended hereby.

**Section 4. No Other Changes**. Except as expressly amended and modified herein, all terms, covenants and provisions of the Share Exchange Agreement shall remain unaltered and in full force and effect, and the Parties hereto expressly ratify and confirm the Share Exchange Agreement as modified herein.

**Section 5.  Entire Agreement**. This Amendment constitutes the full and entire understanding and agreement between the Parties with regard to the subjects hereof and thereof, and no Party shall be liable or bound to any other Party in any manner by any warranties, representations or covenants except as specifically set forth herein or therein.

**Section 6. Counterparts**. This Amendment may be executed in any number of counterparts, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or by PDF formatted page sent by electronic mail shall be effective as delivery of a manually executed counterpart of this Amendment.

*[SIGNATURE PAGE TO FOLLOW]*

2

IN WITNESS WHEREOF, each Party has caused this Amendment to be duly executed by their respective authorized officers as of the day first above written.

*The Purchaser:*

**Hebron Technology Co., Ltd.**

By:    /s/
       Name: Anyuan Sun
       Title: Chief Executive Officer

By:
       Name: Changjuan Liang
       Title: Chief Financial Officer

*The Company:*

**Beijing Heng-Tai Pu-Hui Information Service Co. Ltd**

By:
       Name:
       Title:

*The Sellers:*

**Guoya Asset Management Co. Ltd. (BVI)**

By:
       Name:
       Title:

**HongKong D&L Technology Co., Limited**

By:
       Name:
       Title:

3

**Exhibit 8.1**

**List of Subsidiaries, Variable Interest Entities and Subsidiaries of Variable Interest Entities**

| Subsidiary/VIE/VIE Subsidiary | Jurisdiction of incorporation or organization |
| --- | --- |
| Hong Kong Xibolun Technology Limited | Hong Kong |
| Zhejiang Xibolun Automation Project Technology Co., Ltd. | People's Republic of China |
| Wenzhou Xibolun Fluid Equipment Co., Limited | People's Republic of China |
| NiSun International Enterprise Management Group (British Virgin Islands) Co., Ltd. | British Virgin Islands |
| NiSun International Enterprise Management Group (Hong Kong) CO., Limited | Hong Kong |
| NingChen (Shanghai) Enterprise Management Co., Ltd | People's Republic of China |
| Shandong Taiding International Investment Co., Ltd | People's Republic of China |
| Fintech (Shanghai) Digital Technology Co., Ltd.* | People's Republic of China |
| Beijing Hengtai Puhui Information services Co., Ltd* | People's Republic of China |
| Khorgos Fintech Network Technology Co., Ltd** | People's Republic of China |
| Jilin Lingang Trade Co., Ltd** | People's Republic of China |
| NiSun family office (Guangzhou) Co., Ltd** | People's Republic of China |
| Hangzhou Fengtai Technology Co., Ltd** | People's Republic of China |
| Dunhua Midtown Asset Management Registration Center Co., Ltd** | People's Republic of China |

\*    Indicates consolidated variable interest entities ("VIEs").

\*\*   Indicates subsidiaries of consolidated VIEs.

**Exhibit 12.1**

**CERTIFICATION**

I, Anyuan Sun, certify that:

1.  I have reviewed this annual report on Form 20-F of Hebron Technology Co., Ltd.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4.  The company's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have

    (a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c)  Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d)  Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5.  The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

    (a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

    (b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Date: April 24, 2020

By:     /s/ Anyuan Sun
Name:   Anyuan Sun
Title:  Chief Executive Officer

Exhibit 12.2

**CERTIFICATION**

I, Changjuan Liang, certify that:

1.  I have reviewed this annual report on Form 20-F of Hebron Technology Co., Ltd.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4.  The company's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have

    (a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c)  Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d)  Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5.  The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

    (a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

    (b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Date: April 24, 2020

By:      /s/ Changjuan Liang
Name:   Changjuan Liang
Title:    Chief Financial Officer

**Exhibit 13.1**

## CERTIFICATION

In connection with the Annual Report of Hebron Technology Co., Ltd. (the "Company") on Form 20-F for the fiscal year ended December 31, 2019 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Anyuan Sun, Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date:  April 24, 2020

By:      /s/ Anyuan Sun
Name:   Anyuan Sun
Title:    Chief Executive Officer

Exhibit 13.2

## CERTIFICATION

In connection with the Annual Report of Hebron Technology Co., Ltd. (the "Company") on Form 20-F for the fiscal year ended December 31, 2019 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Changjuan Liang, Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: April 24, 2020

By:     /s/ Changjuan Liang
Name:  Changjuan Liang
Title:   Chief Financial Officer

# WEI WEI & CO., LLP
## CERTIFIED PUBLIC ACCOUNTANTS

- **MAIN OFFICE**
  133-10 39TH AVENUE
  FLUSHING, NY 11354
  TEL. (718) 445-6308
  FAX. (718) 445-6760

- **CALIFORNIA OFFICE**
  36 W BAY STATE STREET
  ALHAMBRA, CA 91801
  TEL. (626) 282-1630
  FAX. (626) 282-9726

## CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

We hereby consent to the incorporation by reference in the Registration Statements on Form F-3 (File No. 333-222995) and Form S-8 (File No. 333-236843) of Hebron Technology Co., Ltd. and subsidiaries of our report dated April 24, 2020 relating to the consolidated financial statements which appears in this Annual Report on Form 20-F. We also consent to the reference to us under the heading "Experts" in such Registration Statements.

/s/ Wei, Wei & Co., LLP

Flushing, New York
April 24, 2020

**Hebron Technology Co., Ltd. Reports Fiscal Year 2019 Financial Results**

WENZHOU, China, April 24, 2020 /PRNewswire/ — Hebron Technology Co., Ltd. ("Hebron" or the "Company") (Nasdaq: HEBT), a technology oriented enterprise group conducting business in the pharmaceutical equipment and engineering industry segment and financial service industry segment, today announced its financial results for the fiscal year ended December 31, 2019.

**Fiscal Year 2019 Financial Highlights**

| | | Year ended December 31, | | Changes | |
| --- | --- | --- | --- | --- | --- |
| | | 2019 | 2018 | ($) | (%) |
| Revenue | $ | 21,103,114 $ | 25,290,060 | (4,186,946) | (17)% |
| Installation service | | 10,490,191 | 17,297,212 | (6,807,021) | (39)% |
| Fluid equipment sales | | 8,087,399 | 7,992,848 | 94,551 | 1% |
| Financial service – underwriting related | | 2,522,143 | - | 2,522,143 | 100% |
| Financial service –recurring service | | 3,381 | - | 3,381 | 100% |
| | | | | | |
| Gross profit | | 8,056,621 | 7,577,952 | 478,669 | 6% |
| Income (loss) from operations | | 1,932,005 | (5,329,410) | 7,261,415 | 136% |
| Net income | | 2,739,990 | (5,144,715) | 7,884,705 | 153% |
| Basic and diluted EPS | $ | 0.17 $ | (0.33) | 0.50 | 151% |

- Total revenues decreased by 17.0% to $21.10 million for the twelve months ended December 31, 2019.

- Operating income increased by 136% to operation income of $1.93 million for the twelve months ended December 31, 2019 from operation loss of $5.33 million for the same period of the prior fiscal year, primarily due to a decrease of bad debt provision of $5.83 million for the twelve months ended December 31, 2019.

- Net income was $2.74 million for the twelve months ended December 31, 2019, compared to net loss of $5.14 million for the same period of the prior fiscal year.

| | Years ended December 31, | | | | Changes | Changes |
| --- | --- | --- | --- | --- | --- | --- |
| | 2019 | % | 2018 | % | ($) | (%) |
| Installation service | 3,851,460 | 37% | 6,356,004 | 37% | (2,504,544) | (39)% |
| Fluid equipment sales | 1,699,429 | 21% | 1,221,948 | 15% | 477,481 | 39% |
| Financial services | 2,506,032 | 99% | - | -% | 2,506,032 | 100% |
| Gross profit | 8,056,921 | 38% | 7,577,952 | 30% | 478,969 | 6% |

*Revenues*

Total revenues decreased by 17.0% to $21.10 million for the twelve months ended December 31, 2019 mainly due to a decrease in installation revenue. Revenue from installation service was $10.49 million for the year ended December 31, 2019, representing a 39% decrease from the prior fiscal year. Revenue from sales of our fluid equipment was $8.1 million, representing an 1% increase. Revenue from financial service was $2.5 million for year ended December 31, 2019, which was mainly generated from the underwriting related advisory service. The Company expects to continue to expand the revenue base in the financial service segment.

*Cost of revenues and gross profit*

Total cost of revenues decreased by $4.67 million to $13.05 million for the twelve months ended December 31, 2019, mainly due to a decrease in the cost of installation service in fiscal 2019. For fiscal 2019, cost of installation service was $6.64 million representing a decrease of $4.30 million from 2018 due to lower installation service revenue. Cost of our fluid equipment sales were $6.4 million representing a decrease of $0.4 million from 2018.

Overall gross profit increased by 6% or $0.48 million to $8.06 million for the twelve months ended December 31, 2019 from $7.58 million for the same period of the prior fiscal year. The increase was primarily a result of the high-margin financial services revenue in fiscal 2019.

Overall gross profit margin for fiscal 2019 was 38%, increased from 30% in fiscal 2018. The increase was primarily due to the high-margin financial service gross profit. The gross profit margin for the Company's equipment and engineering segment was 30%, approximately same as fiscal 2018.

*Operating expenses*

Total operating expenses decreased by $6.78 million, or 53%, to $6.12 million for the twelve months ended December 31, 2019. The significant decrease in operating expense was primarily due to a $5.83 million decrease in bad debt provision.

For fiscal 2019, the Company's general and administrative expenses were $2.57 million, representing an approximate decrease of $0.73 million compared to fiscal 2018. The decrease in general and administrative expenses was mainly due to the Company's lesser professional fees in fiscal 2019.

For fiscal 2019, the Company's research and development ("R&D") expenses were $0.49 million, representing an increase of $0.13 million from fiscal 2018. The increase in R&D expense was primarily due to R&D developments in our new segment - financial service segment.

For fiscal 2019, the Company's selling expenses were $0.99 million, representing a 26% decrease from fiscal 2018. The decrease was mainly due to the fact that the Company has established branding awareness in the market and therefore reduced marketing activities in fiscal 2019 and 2018.

*Operating (loss) income*

Operating income was $1.93 million for twelve months ended December 31, 2019, representing an increase of 136% from operating loss of $5.33 million in fiscal 2018, which was mainly due to significant decrease in bad debts provision during fiscal 2019.

*Net income*

Net income was $2.74 million for the twelve months ended December 31, 2019, compared to net loss of $5.14 million for fiscal 2018.

**Financial Condition**

As of December 31, 2019, the Company had cash and restricted cash balance of $4.41 million.

Net cash provided by operating activities was approximately $0.34 million for the twelve months ended December 31, 2019, compared to net cash used in operating activities of $0.73 million for the same period of the prior fiscal year.

2

Net cash used in investing activities was approximately $1.96 million for fiscal 2019, compared to approximately $0.12 million for fiscal 2018.

Net cash provided by financing activities was approximately $3.15 million for fiscal 2019, compared to approximately $0.73 million for fiscal 2018.

**About Hebron Technology Co., Ltd.**

Established in January 2005 and headquartered in Wenzhou City, Zhejiang Province, China, Hebron Technology Co., Ltd. engages in research, development, and manufacture of highly specialized valves and pipe fitting products for use in the pharmaceutical, biological, food and beverage, and other clean industries. The Company also offers its customers comprehensive pipeline design, installation, construction, and ongoing maintenance services as holistic solution services. Following the acquisition of NiSun International Enterprise Management Group (British Virgin Islands) Co., Ltd., and its subsidiaries in July 2019, the Company also engages in financial advisory services business through contractually controlled affiliates and subsidiaries of affiliates. For more information about the Company, please visit www.xibolun.com for equipment and engineering segment and https://www.fintaike.com for financial advisory service segment.

*Forward-Looking Statements*

*This press release contains information about Hebron's view of its future expectations, plans and prospects that constitute forward-looking statements. Actual results may differ materially from historical results or those indicated by these forward-looking statements as a result of a variety of factors including, but not limited to, risks and uncertainties associated with its ability to raise additional funding, its ability to maintain and grow its business, variability of operating results, its ability to maintain and enhance its brand, its development and introduction of new products and services, the successful integration of acquired companies, technologies and assets into its portfolio of products and services, marketing and other business development initiatives, competition in the industry, general government regulation, economic conditions, dependence on key personnel, the ability to attract, hire and retain personnel who possess the technical skills and experience necessary to meet the requirements of its clients, and its ability to protect its intellectual property. Hebron encourages you to review other factors that may affect its future results in Hebron's registration statement and in its other filings with the Securities and Exchange Commission.*

**For more information, please contact:**

**In China:**
Hebron Technology Co., Ltd.
Investor Relations
Shaokang (Ken) Lu
Phone: +86 (21) 2357-0055
Email: lushaokang@cnisun.com

3

**HEBRON TECHNOLOGY CO., LIMITED AND SUBSIDIARIES**
**CONSOLIDATED BALANCE SHEETS**
**(Stated In U.S. Dollars)**

| | December 31, 2019 | December 31, 2018 |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS:** | | |
| Cash and cash equivalents | $ 3,452,647 | $ 947,588 |
| Restricted cash | 959,672 | 2,124,655 |
| Contracts receivable, net | 30,120,533 | 24,669,365 |
| Accounts receivable, net | 3,024,531 | 2,655,845 |
| Bank acceptance notes receivable | 22,660 | 81,611 |
| Inventories | 635,989 | 365,480 |
| Prepayments and advances to suppliers, net | 2,526,056 | 3,568,003 |
| Other receivables, net | 516,607 | 767,681 |
| Loans to third parties-current portion | 2,434,715 | - |
| Prepaid expenses and other current assets | 18,348 | 94,539 |
| **TOTAL CURRENT ASSETS** | 43,711,758 | 35,274,767 |
| | | |
| **NON-CURRENT ASSETS:** | | |
| Property and equipment at cost, net | 11,889,373 | 12,515,894 |
| Intangible assets, net | 5,124,264 | 969,339 |
| Retainage receivables, net | 2,408,070 | 3,146,986 |
| Right of use assets | 1,915,577 | - |
| Rent and other deposits | 85,999 | 43,633 |
| Loans to third parties – long term portion | 2,872,820 | - |
| Long term investments | 3,708,359 | 3,054,090 |
| Goodwill | 11,074,864 | - |
| Deferred tax assets | 2,008,173 | 1,648,967 |
| **TOTAL ASSETS** | $ 84,799,257 | $ 56,653,676 |
| | | |
| **LIABILITIES** | | |
| **CURRENT LIABILITIES:** | | |
| Short-term loans | $ 861,846 | $ 1,698,058 |
| Bank acceptance notes Payable | 929,148 | 2,117,382 |
| Accounts payable | 2,386,061 | 1,361,687 |
| Accrued expenses and other current liabilities | 3,725,149 | 2,112,472 |
| Operating lease liabilities | 188,557 | - |
| Loan payable - current | 156,574 | 177,291 |
| Advances from customers | 1,311,004 | 3,131,338 |
| Tax payable | 10,915,483 | 9,085,746 |
| Due to related party | 7,759,443 | - |
| **TOTAL CURRENT LIABILITIES** | 28,233,265 | 19,683,974 |
| | | |
| Loan payable – long-term | 54,726 | 212,351 |
| Operating lease liabilities – long term | 1,769,927 | - |
| Deferred tax liabilities | 805,826 | - |
| **TOTAL LIABILITIES** | 30,863,744 | 19,896,325 |
| Commitments and contingencies | | |
| **EQUITY:** | | |
| Class A common stock, $0.001 par value, 40,000,000 shares authorized, 17,710,471 and 8,491,177 shares issued and outstanding as of December 31, 2019 and 2018 respectively. | 17,710 | 8,491 |
| Class B common stock, $0.001 par value, 10,000,000 shares authorized, nil and 7,778,400 shares issued and outstanding as of December 31, 2019 and 2018 respectively. | - | 7,778 |
| Additional paid-in capital | 28,369,076 | 13,361,447 |
| Retained earnings | 27,472,766 | 24,732,776 |
| Accumulated other comprehensive income (loss) | (1,914,232) | (1,353,141) |
| **TOTAL SHAREHOLDERS' EQUITY** | 53,945,320 | 36,757,351 |
| Non-controlling interests | (9,807) | - |
| **TOTAL EQUITY** | 53,935,513 | 36,757,351 |
| | | |
| **TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY** | $ 84,799,257 | $ 56,653,676 |

**HEBRON TECHNOLOGY CO., LIMITED AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS AND OTHER COMPREHENSIVE INCOME (LOSS)**

| | For the Years Ended December 31, | | |
|---|---|---|---|
| | 2019 | 2018 | 2017 |
| **REVENUE:** | | | |
| Installation service | $ 10,490,191 | $ 17,297,212 | $ 23,748,141 |
| Fluid equipment sales | 8,087,399 | 7,992,848 | 5,452,304 |
| Financial services | 2,525,524 | - | - |
| | 21,103,114 | 25,290,060 | 29,200,445 |
| **COST OF REVENUE** | | | |
| Cost of revenue | 12,882,094 | 17,458,252 | 18,080,777 |
| Business and sales related taxes | 164,399 | 253,856 | 675,507 |
| **GROSS PROFIT** | 8,056,621 | 7,577,952 | 10,444,161 |
| | | | |
| **OPERATING EXPENSES:** | | | |
| | | | |
| General and administrative | 2,566,831 | 3,298,188 | 3,683,594 |
| Selling and marketing | 985,252 | 1,337,321 | 2,187,253 |
| Bad debt | 2,079,837 | 7,913,442 | 187,715 |
| Research and development | 492,696 | 358,411 | 508,282 |
| Total operating expenses | 6,124,616 | 12,907,362 | 6,566,844 |
| **INCOME (LOSS) FROM OPERATIONS** | 1,932,005 | (5,329,410) | 3,877,317 |
| | | | |
| **OTHER INCOME (EXPENSE):** | | | |
| Other income, net | 1,255,149 | (426,585) | 377,174 |
| Interest expense | (158,119) | (208,306) | (56,953) |
| Income from investments | 153,554 | 168,534 | - |
| Total other income (expense), net | 1,250,584 | (466,357) | 320,221 |
| | | | |
| **INCOME (LOSS) BEFORE INCOME TAXES** | 3,182,589 | (5,795,767) | 4,197,538 |
| **PROVISION (BENEFIT) FOR INCOME TAXES** | 442,599 | (651,052) | (2,938,849) |
| | | | |
| **NET INCOME(LOSS)** | 2,739,990 | (5,144,715) | 7,136,387 |
| Net income (loss) attributable to non-controlling interests | - | - | - |
| **NET INCOME (LOSS) ATTRIBUTABLE TO SHAREHOLDERS** | 2,739,990 | (5,144,715) | 7,136,387 |
| | | | |
| **OTHER COMPREHENSIVE INCOME (LOSS)** | | | |
| Foreign currency translation (loss) income | (561,091) | (1,755,528) | 2,249,081 |
| **COMPREHENSIVE INCOME (LOSS)** | 2,178,899 | $ (6,900,243) | 9,385,468 |
| Total comprehensive loss attributable to non-controlling interests | - | - | - |
| **TOTAL COMPREHENSIVE INCOME (LOSS) ATTRIBUTABLE TO SHAREHOLDERS** | $ 2,178,899 | $ (6,900,243) | $ 9,385,468 |
| | | | |
| Basic and diluted earnings (loss) per common share | $ 0.17 | $ (0.33) | $ 0.49 |
| | | | |
| Weighted average number of shares outstanding-basic and diluted | 16,269,577 | 15,760,633 | 14,695,347 |

5

**HEBRON TECHNOLOGY CO., LIMITED AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CHANGES IN SHAREHOLDERS' EQUITY**

| | Class A Common Stock | | Class B Common Stock | | Additional paid in capital | Retained Earnings | Accumulated Other Comprehensive Income (Loss) | Non-controlling Interests | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | | | | | |
| Balance at January 1, 2017 | 6,916,947 | $ 6,917 | 7,778,400 | $ 7,778 | $10,237,965 | $22,741,104 | $ (1,846,694) | - | $31,147,070 |
| Net income | - | - | - | - | - | 7,136,687 | - | - | 7,136,387 |
| Foreign currency translation gain | - | - | - | - | - | - | 2,249,081 | - | 2,249,081 |
| Balance at December 31, 2017 | 6,916,947 | 6,917 | 7,778,400 | 7,778 | 10,237,965 | 29,877,491 | 402,387 | - | 40,532,538 |
| Net (loss) | - | - | - | - | - | (5,144,715) | - | - | (5,144,715) |
| Foreign currency translation loss | - | - | - | - | - | - | (1,755,528) | - | (1,755,528) |
| Issuance of class A common stock for consulting services | 131,452 | 131 | - | - | 239,369 | | - | - | 239,500 |
| Issuance of common stock for equity investment | 1,442,778 | 1,443 | - | - | 2,884,113 | | | - | 2,885,556 |
| Balance at December 31, 2018 | 8,491,177 | 8,491 | 7,778,400 | 7,778 | 13,361,447 | 24,732,776 | (1,353,141) | - | 36,757,351 |
| Net income | - | - | - | - | - | 2,739,990 | - | - | 2,739,990 |
| Foreign currency translation loss | - | - | - | - | - | - | (561,091) | - | (561,091) |
| Capital contribution by shareholder | - | - | - | - | 3,582,781 | - | - | - | 3,582,781 |
| Shares to be issued for acquisition | 1,440,894 | 1,441 | - | - | 11,424,848 | - | - | - | 11,426,289 |
| Non-controlling interests arising from business combination | - | - | - | - | - | - | - | (9,807) | (9,807) |
| Reclassification of common stock | 7,778,400 | 7,778 | (7,778,400) | (7,778) | - | - | - | - | - |
| Balance at December 31, 2019 | 17,710,471 | $ 17,710 | - | $ - | $28,369,076 | $27,472,766 | $ (1,914,232) | (9,807) | $53,935,513 |

6

**HEBRON TECHNOLOGY CO., LIMITED AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CASH FLOWS**

| | For the Years Ended December 31, | | |
|---|---|---|---|
| | 2019 | 2018 | 2017 |
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | | |
| Net income (loss) | $ 2,739,990 | $ (5,144,715) | $ 7,136,387 |
| Adjustments to reconcile net income to net cash provided by (used in) operating activities: | | | |
| Depreciation and amortization | 1,225,977 | 1,195,161 | 939,995 |
| Loss on disposition of property and equipment | - | 283,487 | 12,179 |
| Deferred tax (benefit) expense | (418,131) | (1,471,938) | 11,526 |
| Equity investment income | (153,554) | (168,534) | - |
| Bad debt expense | 2,079,837 | 7,913,442 | 187,715 |
| *Changes in operating assets and liabilities:* | | | |
| Contracts receivable | (5,801,693) | (8,850,502) | (2,992,867) |
| Accounts receivable | (1,141,352) | (1,383,452) | (950,850) |
| Bank acceptance notes receivable | 58,390 | 593,674 | (378,205) |
| Retainage receivables | (489,283) | (748,903) | (80,360) |
| Prepayment and advances to suppliers | 1,392,426 | 93,149 | (7,127,018) |
| Inventories | (277,176) | 1,177,956 | 788,000 |
| Other receivables | 341,339 | (598,764) | (156,074) |
| Accounts payable | 822,461 | 146,546 | 26,450 |
| Bank acceptance notes Payable | (1,171,013) | 2,148,292 | 53,272 |
| Advances from customers | (1,828,259) | 429,217 | (370,964) |
| Deferred revenue | - | - | (1,071,355) |
| Taxes payable | 1,933,516 | 2,770,253 | (2,365,120) |
| Accrued expenses and other current liabilities | 1,021,758 | 890,551 | 240,505 |
| **NET CASH PROVIDED BY (USED IN) OPERATING ACTIVITIES** | **335,233** | **(725,080)** | **(6,096,784)** |
| | | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | | |
| Acquisition of property and equipment | (394,988) | (74,210) | (3,126,777) |
| Loans to third parties | (3,611,682) | - | - |
| Payments for intangible assets | - | (41,000) | - |
| Cash acquired from business acquisitions | 2,043,176 | - | - |
| **NET CASH (USED IN) INVESTING ACTIVITIES** | **(1,963,494)** | **(115,210)** | **(3,126,777)** |
| | | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | | |
| Proceeds from short-term bank loans | 911,968 | 1,995,763 | 295,954 |
| Repayment of short-term bank loans | (1,733,462) | (1,088,667) | - |
| Capital contribution | 3,582,781 | - | - |
| Proceeds from long-term loans | - | - | 173,873 |
| Repayment of long-term loans | - | - | (47,353) |
| (Repayment) proceeds from loan | (174,861) | (176,427) | 560,748 |
| Advances from and (repayments to) related parties | 566,360 | - | (66,582) |
| **NET CASH PROVIDED BY (USED IN) FINANCING ACTIVITIES** | **3,152,786** | **730,669** | **916,640** |
| | | | |
| **EFFECT OF EXCHANGE RATE CHANGE ON CASH AND CASH EQUIVALENT** | **(184,449)** | **(94,239)** | **(292,869)** |
| **NET (DECREASE) INCREASE IN CASH AND CASH EQUIVALENT** | **1,340,076** | **(203,860)** | **(8,599,790)** |
| **CASH AND CASH EQUIVALENT AND RESTRICTED CASH**-beginning of year | 3,072,243 | 3,276,103 | 11,875,893 |
| | | | |
| **CASH AND CASH EQUIVALENT AND RESTRICTED CASH**-end of year | $ 4,412,319 | $ 3,072,243 | $ 3,276,103 |
| | | | |
| **SUPPLEMENTAL CASH FLOW DISCLOSURES:** | | | |
| Cash paid for income taxes | $ 5,158 | $ 42,250 | $ - |
| Cash paid for interest | $ 147,900 | $ 91,917 | $ 75,704 |
| | | | |
| **Non-cash financing activities** | | | |
| Warrants issued to placement agent in connection with the Company's IPO | $ - | $ - | $ - |
| Payment payable to a related party for NiSun BVI acquisition | $ 7,000,000 | - | - |
| Issuance of shares for business combination | $ 11,426,289 | $ - | $ - |
| Issuance of shares for consulting services | $ - | $ 239,500 | $ - |
| Issuance of shares for equity investment | $ - | $ 2,885,556 | $ - |
| | | | |
| **CASH AND CASH EQUIVALENTS COMPRISE OF THE FOLLOWING:** | | | |
| Cash and cash equivalent | $ 3,452,647 | $ 947,588 | $ 3,220,781 |
| Restricted cash | 959,672 | 2,124,655 | 55,322 |
| Total cash, cash equivalents and restricted cash | $ 4,412,319 | $ 3,072,243 | $ 3,276,103 |