**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE HEBRON TECHNOLOGY CO., LTD. SECURITIES LITIGATION** | Case No. 20 Civ. 4420 (PAE) |

## HEBRON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Matthew Solum, P.C.
Matthew A. Tharp
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
matthew.solum@kirkland.com
matt.tharp@kirkland.com

*Counsel for Hebron Technology Co., Ltd.*

Dated: February 19, 2021

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 2

    A.    The Parties to This Litigation ................................................................................. 2

    B.    Alleged Related-Party Transactions and the Independent Investigation ............... 3

        1.    Share Purchase Agreement ....................................................................... 4

        2.    Acquisition of Beijing Hengpu ................................................................. 5

        3.    Nami Transaction ...................................................................................... 7

LEGAL STANDARD .............................................................................................................. 9

ARGUMENT .......................................................................................................................... 10

I.       THE SAC FAILS TO STATE A CLAIM UNDER SECTION 10(B). ........................ 10

    A.    Plaintiffs Fail to Plead Any Actionable Misstatement or Omission. ..................... 11

        1.    Relevant Related Party Standard. .............................................................. 11

        2.    Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the SPA. ................................................................................... 13

        3.    Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the Beijing Hengpu Transaction. .............................................. 15

        4.    Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the Nami Transaction. ............................................................... 18

    B.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter. ........ 20

        1.    Plaintiffs Fail to Plead Facts to Support Motive to Commit Fraud. ......... 21

        2.    Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness. ............ 22

    C.    Plaintiffs Fail to Plead Loss Causation. ................................................................. 25

II.      THE SAC FAILS TO STATE A CLAIM UNDER SECTION 20(A). ....................... 25

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
No. 19 Civ. 10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020) ............................13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................10, 25

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)................................................................................12

*Bd. of Trs. of the City of Ft. Lauderdale v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011).................................................................................2

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).............................................................................................4

*Chapman v. Mueller Water Prods., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020).................................................................................23

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) .............................17

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008).................................................................................24

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
No. 17 Civ. 0917 (LGS), 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ..............................23

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)................................................................................21

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...............................................................................10, 14, 20

*Francisco v. Abengoa, S.A.*,
No. 15 Civ. 6279 (ER), 2020 WL 4940752 (S.D.N.Y. Aug. 21, 2020) .................................20

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................................................24

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015).................................................................................11

*Hutchinson v. Perez*,
No. 12 Civ. 1073 (HB), 2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd*,
550 F. App'x 24 (2d Cir. 2013) ...................................................................................22

*In re Aratana Therapeutics Inc. Secs. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)................................................................10, 25

*In re Bank of Am. AIG Disclosure Secs. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).........................21

*In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.*,
No. 14 Civ. 4471 (KMW), 2016 WL 922711 (S.D.N.Y. Mar. 7, 2016)................15, 16, 17, 21

*In re eSpeed, Inc. Secs. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006)........................................................................22

*In re I.P.O. Secs. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003).........................................................................15

*In re JP Morgan Chase Secs. Litig.*,
No. 02 Civ. 1282 (SHS), 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) ...................................12

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
910 F. Supp. 2d 561 (S.D.N.Y. 2012)........................................................................11

*In re Lululemon Secs. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................2, 20

*In re Omnicom Grp. Inc., Secs. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008)........................................................................2, 25

*In re Rockwell Med., Inc. Secs. Litig.*,
No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...............................23

*In re Sanofi Secs. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd*, 816 F.3d 199 (2d Cir. 2016) ..............................25

*In re Turquoise Hill Res. Ltd. Secs. Litig.*,
No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .........................24, 25

*In re Wachovia Equity Secs. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011).......................................................................23

*Janel World Trade, Ltd. v. World Logistics Servs., Inc.*,
No. 08 Civ. 1327 (RJS), 2009 WL 735072 (S.D.N.Y. Mar. 20, 2009) .................................22

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001).........................................................................19, 21, 22

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11 Civ. 2700 (PKC), 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ..........................15, 18

*Liqiang Wei v. Jiazhong Sun*,
No. 18 Civ. 2136 (MEJ), 2018 WL 1833897 (N.D. Cal. Apr. 18, 2018),
*adopted by* 2018 WL 4378760 (N.D. Cal. May 15, 2018) ........................................................17

*Loc. No. 38 Int'l Brotherhood of Elec. Workers Pension Fund v. Am. Express Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)........................20

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................10, 11, 20, 25

*Marcu v. Cheetah Mobile Inc.*,
No. 18 Civ. 11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) ................................23

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).................................................................................................................10

*McCauley v. City of Chi.*,
671 F.3d 611 (7th Cir. 2011) ...................................................................................................9

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ..............................................................................................11

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..............................................................................................10, 21

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).....................................................................................................1

*S.E.C. v. Sason*,
433 F. Supp. 3d 496 (S.D.N.Y. 2020)......................................................................................19

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010).....................................................................................................24

*Tabor v. Bodison Biotech, Inc.*,
579 F. Supp. 2d 438 (S.D.N.Y. 2008)................................................................................16, 18

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008).....................................................................................................21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..............................................................................................................9, 10

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*,
No. 13 Civ. 7639 (LTS), 2016 WL 4098564 (S.D.N.Y. July 28, 2016)................................17

*Woolgar v. Kingstone Companies, Inc.*,
    No. 19 Civ. 5500 (RA), 2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020) ........................... 19, 24

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................... 10

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 11

Rule 10b-5 ....................................................................................................................... 1, 11

**Other Authorities**

17 C.F.R. § 229.404(a) ........................................................................................................ 15

17 C.F.R. § 240.3b-4 ........................................................................................................... 12

17 C.F.R. § 249.220f ........................................................................................................... 12

Defendant Hebron Technology Co., Ltd. ("Hebron" or "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and under the Private Securities Litigation Reform Act ("PSLRA").[1]  The SAC, filed by Lead Plaintiff Edward Dahlke and plaintiff Michael Clynes ("Plaintiffs"), asserts claims under Section 10(b) and Rule 10b-5 against all defendants, and claims under Section 20(a) against Anyuan Sun and Changjuan Liang (collectively, "Individual Defendants," and collectively with Hebron, "Defendants").  The Individual Defendants have not been served and are not yet appearing in this action.

## PRELIMINARY STATEMENT[2]

In lieu of well-pleaded facts, the SAC repackages unsupported allegations recycled from a single short-seller report that itself relies solely on publicly-available information, which it then mischaracterizes and misconstrues to support Plaintiffs' theory that Hebron's public filings are somehow materially false or misleading with respect to three purportedly undisclosed related-party transactions.  There are three independent reasons to dismiss the SAC:

*First*, Plaintiffs' conclusory assertions of related-party transactions, based on conjecture and anonymous individuals, do not come close to the specificity required to plead a securities fraud claim.  *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so").  *Second*, Plaintiffs do not allege any factual allegations supporting a motive

---

[1]    The original complaint in this action was filed on June 9, 2020.  (Dkt. 1).  An amended complaint was filed on November 20, 2020 (Dkt. 33), which Hebron moved to dismiss on multiple grounds (Dkt. 35).  Rather than oppose Hebron's motion to dismiss, Plaintiffs filed the SAC on January 20, 2021.  As discussed herein, the cursorily revised SAC suffers from the same numerous, fatal defects as the prior complaints, and thus should be dismissed.

[2]    References to "SAC ¶ _" refer to the corresponding paragraph in the SAC (Dkt. 38).  References to "Ex. _" refer to exhibits annexed to the Declaration of Matthew Tharp (Dkt. 36).  Unless otherwise indicated, internal quotations and citations are omitted and emphasis is added.

to defraud and makes scant allegations in support of scienter.  Plaintiffs' allegations fail to establish *any* inference of scienter, much less the "strong inference" of scienter that is required to withstand a motion to dismiss.  *See, e.g.*, *In re Lululemon Secs. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014).  **Third**, because Plaintiffs have not identified any false or misleading statement requiring correction, they fail to plead loss causation.  *See In re Omnicom Grp. Inc., Secs. Litig.*, 541 F. Supp. 2d 546, 551–52 (S.D.N.Y. 2008).  The Court should dismiss the SAC in its entirety.

## BACKGROUND[3]

### A.    The Parties to This Litigation

Hebron, which recently changed its name to NiSun International Enterprise Development Group Co., Ltd., is a technology company dedicated to promoting the integration between industry and finance through innovative technologies.  (SAC ¶ 2; Ex. 1, December 9, 2019 6-K at Ex. 99.1.)  The Company is a developer, manufacturer, and installer of valves and pipe fittings used in the pharmaceutical, food, and beverage industries.  (Ex. 2, April 24, 2020 20-F ("2019 20-F") at 32.)  The Company's shares have been listed and traded on the Nasdaq Exchange since December 27, 2016 under the symbol "HEBT."  (SAC ¶ 22; Ex. 2, 2019 20-F at 96.)

Defendant Anyuan Sun ("Sun") co-founded one of Hebron's subsidiaries, and has previously served as the Company's Chief Executive Officer ("CEO") and Chairman.  (SAC ¶ 17; Ex. 2, 2019 20-F at 86.)  Sun resigned from both positions in August 2020.  (SAC ¶ 107; Ex. 3, August 14, 2020 6-K at Ex. 99.1.)  Sun was Hebron's controlling shareholder until NiSun International Enterprise Management Group Co. Ltd., an entity owned by Bodang Liu, acquired 46.94% of Hebron's shares in July 2019.  (SAC ¶ 23; Ex. 2, 2019 20-F at 93 n.3.)

---

[3]    In addition to the SAC, the Court may consider "documents attached to or incorporated by reference in the complaint" and "public disclosure documents required by law to be, and that have been, filed with the SEC." *Bd. of Trs. of the City of Ft. Lauderdale v. Mechel OAO*, 811 F. Supp. 2d 853, 865 (S.D.N.Y. 2011).

Defendant Changjuan Liang ("Liang") was appointed by the Hebron board of directors as the Chief Financial Officer ("CFO") in August 2019 following the resignation of the Company's former CFO.  (SAC ¶ 25; Ex. 4, August 13, 2019 6-K.)  Liang has also served as the CFO of Fintech (Shanghai) Investment Holding Co., Ltd. since May 2019.  (SAC ¶ 25.)

Lead Plaintiff Edward Dahlke bought 500 shares of Hebron's stock on June 1, 2020 and sold all his shares three days later on June 4, 2020, at a loss of $5,332.[4]  (Dkt. 8, Ex. A.)  He purports to assert claims against Defendants on his own behalf and on behalf of putative purchasers of Hebron securities between April 24, 2020 and June 3, 2020 ("Class Period").  (SAC ¶ 1.)

### B.    Alleged Related-Party Transactions and the Independent Investigation

Plaintiffs allege that Hebron made false or misleading statements because it failed to disclose three purported related-party transactions involving Bodang Liu, the then-largest shareholder of the Company: (1) a private placement sale of the Company's common shares to two institutional investors; (2) acquisition of Beijing Hengtai Puhui Information Service Co., Ltd. ("Beijing Hengpu"); and (3) acquisition of Nami Holding (Cayman) Co., Ltd. ("Nami").  (*Id.* ¶ 26.) The statements alleged to be false or misleading include the Company's 2019 20-F issued on April 24, 2020; the SOX Certification accompanying the 2019 20-F; and two subsequent public filings, a May 1, 2020 6-K and a May 22, 2020 6-K.  (*Id.* ¶¶ 82, 84, 86, 87, 89, 91, 93, 95.)

Plaintiffs almost exclusively rely on a June 3, 2020 report published by a short seller, Grizzly Research LLC ("Grizzly Report").  Grizzly Research LLC is a supposed investment advisor—but has disclosed no information about who prepared the short-seller reports it published.

---

[4]    Another plaintiff, Michael Clynes, who purchased 2,800 shares of Hebron stock on June 3, 2020—the day the Grizzly Report was released—and sold all of his shares on June 4, 2020, filed the first action against Defendants on June 9, 2020.  (Dkts. 1, 23.)  The Court (1) consolidated the actions, (2) granted Dahlke's lead plaintiff motion, and (3) denied Clynes's lead plaintiff motion, given the timing of his purchases of Hebron stock.  (Dkt. 23.)

The Grizzly Report disclosed that Grizzly Research LLC had a "short position" in Hebron and "stands to realize significant gains in the event that the price of HEBT's stock declines." (Ex. 5, Grizzly Report at 2.)  Grizzly Research LLC has released 11 short-seller reports within 18 months, primarily targeting Chinese companies and companies with operations in China.  (*See* Ex. 5, Grizzly Report, cited in SAC ¶¶ 7, 54, 72, 97.)

On July 31, 2020, the Company announced that its Independent Investigation ("Independent Investigation"), conducted by White & Case LLP, concluded that "none of the three transactions specified in the short-seller's report qualified as related party transactions."  (Ex. 6, July 31, 2020 6-K at Ex. 99.1.)[5]  Plaintiffs nonetheless parrot the "findings" of the Grizzly Report (*see* SAC ¶¶ 7, 72), and rely on untranslated media articles predating the at-issue transactions (*id*. ¶¶ 56, 57), and two anonymous individuals (*id*. ¶¶ 69, 70) to attempt to support their allegations.

### 1.    Share Purchase Agreement

On December 9, 2019, prior to the Class Period, Hebron filed a Form 6-K announcing that it had entered into a Share Purchase Agreement ("SPA") to sell approximately $6.5 million of the Company's common shares, at $6.21 per share, to two institutional investors: Jupiter Trading Co., Ltd (BVI) ("Jupiter Trading") and Loong Fang Trading Co., Ltd (BVI) ("Loong Fang").  (*Id*. ¶ 36.) As explained in the press release announcing the SPA, Jupiter Trading and Loong Fang invested in Hebron because they had "great interest" in Hebron's "business expansion from industrial technology to financial technology service."  (Ex. 1, December 9, 2019 6-K at Ex. 99.1.)  The Individual Defendants signed the SPA on behalf of Hebron, and Shan Jiang, a Loong Fang director,

---

[5]    The press release summarizing the conclusions of the Independent Investigation is incorporated into the SAC by reference and may be considered by the Court.  (*See* SAC ¶ 73 (quoting Ex. 6, July 31, 2020 6-K at Ex. 99.1)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference.").

signed on behalf of Loong Fang.  (SAC ¶ 38.)  In its 2019 20-F and in a May 1, 2020 6-K, the Company disclosed the status of the SPA.  (*Id.* ¶¶ 84, 93; Ex. 2, 2019 20-F at F-30.)

Plaintiffs allege that the statements were false or misleading because Hebron failed to disclose that the SPA with Loong Fang was a related-party transaction.  (SAC ¶¶ 86, 95.)[6]  In support of their conclusory allegations, Plaintiffs assert that "under common control with Hebron through Bodang Liu . . . Hebron and [Loong Fang] are affiliated entities" because Shan Jiang, who signed the SPA on behalf of Loong Fang, has served as "a Supervisor at [Puhui Equity Investment Co., Ltd. ('Puhui Investment')] since April 14, 2020, and [Qianhai Zhonghui Business Information Consulting Co., Ltd. ('Zhonghui')] since March 25, 2020"—both of which are owned by Bodang Liu according to the SAC.  (*Id.* ¶¶ 42, 43.)  Plaintiffs do not allege that Puhui Investment or Zhonghui were parties to the SPA, or were otherwise involved in the SPA.  And as the SAC concedes, Shan Jiang did not begin his purported roles at Puhui and Zhonghui until four or five months *after* the SPA was entered into.  Neither the SAC nor the Grizzly Report elaborates on Shan Jiang's alleged role as a "Supervisor" at these two entities, let alone explains how Bodang Liu controlled Shan Jiang through the entities.

### 2.    Acquisition of Beijing Hengpu

In its 2019 20-F, the Company disclosed that it acquired Beijing Hengpu on December 31, 2019 from its two shareholders for approximately $11.4 million through a series of Variable Interest Entity agreements ("Beijing Hengpu transaction").  (*Id.* ¶¶ 86, 87.)  Hebron issued 1,440,894 Class A common shares of its stock to Beijing Hengpu's two shareholders as consideration for the Beijing Hengpu transaction.  (Ex. 2, 2019 20-F at F-19.)  The acquisition

---

[6]    Notably, the SAC does not allege that Jupiter Trading, which purchased Hebron shares *at the same price* as Loong Fang, was a related party to Hebron.  (*See* Ex. 1, December 9, 2019 6-K at Ex. 99.1.)

agreement, which was attached to the 2019 20-F, states that Guoya Investment Holding Co., Ltd. (BVI) ("Guoya") was the 80% shareholder of Beijing Hengpu and HongKong D&L Technology Co., Limited ("HongKong D&L") was the 20% shareholder prior to the transaction.  (*Id.* ¶ 52.)[7] As explained in Hebron's 2019 20-F, Beijing "Hengpu and its subsidiaries provide financial advisory services for financial institutions and corporate clients in the PRC" and Hebron "expect[ed] to achieve significant synergies from [the] acquisition which it plans will complement its financial services business."  (Ex. 2, 2019 20-F at F-19.)  Plaintiffs allege that Xiaoyun Huang ("Huang"), who executed the Beijing Hengpu transaction agreement on behalf of HongKong D&L, "remains the Chairman and legal representative of Beijing Hengpu."  (*Id*. ¶¶ 54, 55.)[8] Plaintiffs further allege that Hebron's disclosures with regard to the Beijing Hengpu transaction were false or misleading because Hebron failed to disclose that the transaction was a related-party transaction due to the alleged connections of Huang and Peng Jiang, a director and manager of Beijing Hengpu, to Bodang Liu.  (*See id*. ¶¶ 54–59, 88.)

With respect to Huang's role at Beijing Hengpu, the SAC does not provide any details about Huang's duties and responsibilities at Beijing Hengpu.  As Plaintiffs concede, the Independent Investigation found that "Huang left his position at Beijing Hengpu ***more than one year before***" the Beijing Hengpu transaction and was only listed as Beijing Hengpu's nominal legal representative "due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information." (*Id*. ¶ 55.)  Without offering any factual allegations about Huang's role at Beijing Hengpu, Plaintiffs instead rely on media

---

[7]   As was the case with the SPA, the SAC notably does not allege that Guoya—the 80% majority shareholder of Beijing Hengpu that entered the Beijing Hengpu transaction ***under the same terms*** as Hong Kong D&L—was a related party to Hebron.  (*See* Ex. 2, 2019 20-F at Exhibit 4.13.)

[8]   The Beijing Hengpu transaction was also executed by the Individual Defendants on behalf of Hebron, Zeng Lin on behalf of Beijing Hengpu, and Liping Peng on behalf of Guoya.  (*See* Ex. 2, 2019 20-F at Exhibit 4.13.)

articles predating the Beijing Hengpu transaction, which allegedly reported on Huang's roles at entities allegedly controlled by Bodang Liu. (*Id*. ¶¶ 56, 57.) Specifically, Plaintiffs allege that, according to various media articles, Huang was reported to be the CEO of Benefactum Alliance Business Consultant (Beijing) Co., Ltd. ("Benefactum"), the CEO of HuiYingJinFu (an online financial platform operated by Benefactum), and the Vice President and Chief Fintech Officer of Shanghai NiSun Enterprise Management Group Co., Ltd. ("NiSun Shanghai"). (*Id*. ¶¶ 56, 57.) Plaintiffs allege that each of these entities was controlled by Bodang Liu, but do not allege that any of these entities was a party or otherwise involved in the Beijing Hengpu transaction. (*Id*.)

Similarly, with respect to Peng Jiang, Plaintiffs offer no concrete factual allegations about Peng Jiang's purported involvement in the Beijing Hengpu transaction. Instead, Plaintiffs summarily allege that Bodang Liu controlled Peng Jiang because Peng Jiang serves as the Vice President of NiSun Shanghai and as a legal representative of Fintech (Shanghai) Digital Technology Co., Ltd. ("Shanghai Fintech"). (*Id*. ¶ 59.) Again, neither of these entities is alleged to be a party to the Beijing Hengpu transaction, and the Independent Investigation found that "Peng J[iang]'s purported connections to Beijing Hengpu and certain companies affiliated with Bodang L[iu] were insufficient to establish a related party relationship because White & Case did not find any evidence demonstrating that J[iang] exercised control over Beijing Hengpu as a result of his nominee director status." (Ex. 6, July 31, 2020 6-K at Ex. 99.1.)

### 3. Nami Transaction

In a press release attached to its May 22, 2020 6-K, Hebron disclosed that it entered into a definitive share purchase agreement to acquire Nami ("Nami transaction"):

> [Hebron] has entered into a definitive share purchase agreement ("Agreement") with Nami Holding (Cayman) Co., Ltd. ("Nami"), a Cayman Islands exempted company, and Nami Holding (BVI) Co., Ltd (SPV), shareholder of Nami [("Nami BVI")], to acquire all of the outstanding ordinary shares of Nami. Nami is the

> parent company of a financial advisory services group comprising subsidiaries and a contractually controlled operating company in China.

(SAC ¶ 95.)  The Nami transaction was in furtherance of Hebron's expansion into the financial services sector.  (*Id.* ¶ 78.)  In exchange for all outstanding shares of Nami, Hebron paid Nami's shareholder, Nami BVI, approximately $25.38 million in relation to the Nami transaction—including $7.05 million in cash and 1,562,726 shares of Hebron's Class A common shares, valued at approximately $11.73 per share.  (*Id.* ¶ 65.)  Plaintiffs allege that Hebron's statements pertaining to the Nami transaction were false or misleading because they failed to disclose that Bodang Liu "controlled Nami[] through its affiliates NiSun Shanghai, Huiying Financial [Holding, 'Huiying Financial'], and Shanghai Nami [Financial Consulting Co., Ltd. ('Shanghai Nami')]."  (*Id.* ¶ 75.)[9] Plaintiffs also allege that Jinbao Li, the majority owner of Nami, is an "undisclosed related party . . . due to [his] 85% ownership of Shanghai Nami."  (*Id*. ¶ 68.)  In support of their allegations, Plaintiffs cite vague statements purportedly made by two anonymous individuals:

- "CW 1": a former "legal counsel at NiSun Shanghai" from July 2017 through July 2018, who prepared contracts and provided legal advice, purportedly stated that "Shanghai Nami sold HuiYingJinFu's financial products under NiSun Shanghai" (*id*. ¶ 69);

- "CW 2": a former "Assistant at Shanghai Nami" from February 2018 through February 2019, purportedly stated that "Shanghai Nami is a sales company selling financial products under the same corporate group as HuiYingJinfu" and that because Li "reported directly to Bodang Liu . . . the decision making powers of Shanghai Nami were mostly controlled by Bodang Liu."  (*Id*. ¶ 70.)

---

[9]    Plaintiffs do not allege that NiSun Shanghai, Huiying Financial, or Shanghai Nami were parties or otherwise involved in the Nami transaction.  Rather, the SAC contradictorily (and confusingly) alleges that Shanghai Nami is (1) "the same company" as NiSun Shanghai, (2) "under the control of Nami Holding (Hong Kong)," (3) a subsidiary of NiSun Shanghai, and (4) a subsidiary of Huiying Financial.  (SAC ¶¶ 68, 69, 71, 74).  The SAC further alleges NiSun Shanghai is a disclosed related party to Hebron (*id.* ¶ 69), and that according to unspecified "SEC filings," Huiying Financial is a company controlled by its Chairman, Bodang Liu.  (*Id.* ¶ 70).  Nami Holding (Hong Kong) is alleged to be founded and owned by Jinbao Li.  (*Id.* ¶ 66.)

The SAC does not provide any details on (1) the responsibilities of the individuals to the entities involved in the Nami transaction; (2) the individuals' connections to, or knowledge of, the Nami transaction; or (3) whether the individuals consented to having their statements referenced in a publicly filed complaint. Moreover, the SAC fails to explain how either individual CW could verify the truth of their allegations at the time of the Nami transaction, given that CW 1 was purportedly last employed by NiSun Shanghai almost two years before the transaction, and CW 2 was purportedly last employed by Shanghai Nami over one year before the transaction.

Plaintiffs also cite an April 2, 2018 article published by NiSun Shanghai on its WeChat account, which purportedly stated that "Shanghai Nami is a subsidiary of Huiying Financial." (*Id*. ¶ 71.) The SAC concedes that NiSun Shanghai quickly corrected the article by explaining that Shanghai Nami was not a subsidiary. (*Id*. ¶ 72.) The Independent Investigation also found that the statement "was [an] inadvertent [error] and . . . was quickly revised" a mere six days after. (*Id*. ¶ 73; Ex. 6, July 31, 2020 6-K at Ex. 99.1.)

## **LEGAL STANDARD**

The standard to survive a motion to dismiss faced by a securities fraud plaintiff is the "most stringent pleading requirement in American civil law." *McCauley v. City of Chi.*, 671 F.3d 611, 625 (7th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)). With the passage of the PSLRA, Congress raised this standard even higher for private securities fraud actions by requiring a plaintiff "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter" as "a check against abusive litigation practices by private parties." *Tellabs*, 551 U.S. at 321. "To state a claim under § 10(b) of the Exchange Act, a plaintiff must adequately plead '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

9

loss; and (6) loss causation.'" *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 790 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). A plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); *see also Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). A plaintiff also "must meet the requirements of Federal Rule of Civil Procedure 9(b)," which requires a plaintiff to "'state with particularity the circumstances constituting fraud.'" *In re Aratana Therapeutics Inc. Secs. Litig.*, 315 F. Supp. 3d 737, 753 (S.D.N.Y. 2018) (Engelmayer, J.) (quoting Fed. R. Civ. P. 9(b) and citing *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.* ("*ECA*"), 553 F.3d 187, 196 (2d Cir. 2009)). A complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). A plaintiff must also allege an inference of scienter that is "more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324. Plaintiffs have not and cannot satisfy these pleading requirements.

## ARGUMENT

### I.    THE SAC FAILS TO STATE A CLAIM UNDER SECTION 10(B).

Plaintiffs fail to state a claim under Section 10(b) and Rule 10b-5 for three independent reasons: *first*, Plaintiffs fail to plead any actionable misstatement or omission; *second*, Plaintiffs fail adequately to plead scienter; and *third*, Plaintiffs do not plead loss causation.[10]

---

[10]    The SAC also should be dismissed *ab initio* because it relies almost exclusively on a single short-seller report. (*See* Ex. 5, Grizzly Report, cited in SAC ¶¶ 7, 54, 72, 97.) Short-seller reports are made with "obvious motive to exaggerate the infirmities of the securities in which [they] speculate." *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012) (dismissing claims relying on short-seller reports); *see also Meyer v. Greene*, 710 F.3d 1189, 1199 n.10 (11th Cir. 2013) (affirming dismissal and noting that short-seller reports revealing "something previously hidden or actively concealed . . . will be the exception, not the rule"); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159–60 n.3 (S.D.N.Y. 2015) (noting that complaints based on

10

**A.      Plaintiffs Fail to Plead Any Actionable Misstatement or Omission.**

Plaintiffs identify no actionable misstatement or omission concerning the three transactions. Specifically, Plaintiffs fail to allege with the requisite specificity how any of the three transactions actually involved related parties—as that term is defined in Hebron's 2019 20-F. This failure dooms each of Plaintiffs' claims.

**1.      Relevant Related Party Standard.**

The SAC cites to two accounting standards that it summarily alleges Hebron's SEC filings breached. Specifically, the SAC alleges that Hebron violated FASB ASC 850, which the SAC alleges is the relevant U.S. GAAP standard. (SAC ¶ 27.) The SAC also alleges Hebron violated the "Committee of Sponsoring Organizations of the Treadway Commission Report, Internal Control—Integrated Framework—2013" ("COSO Framework"). (*Id.* ¶¶ 34, 35.). Standing alone, neither of these allegations sufficiently pleads a material misstatement or omission. *See, e.g.*, *In re JP Morgan Chase Secs. Litig.*, No. 02 Civ. 1282 (SHS), 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) (dismissing claims and noting that "[s]ignificantly, the SAC does not plead that the Securities and Exchange Commission has alleged that [defendant's] SEC filings improperly omitted related party disclosures . . . . These omissions suggest that reasonable accountants could differ as to whether [GAAP standard] applied to the" alleged related-party transactions). The SAC also recites SEC regulations applicable to issuers that file under section 15(d)-15(e) of the

short-seller reports tend to be "long on sound, fury and speculation, but [] short on specifics."). Where, as is the case here, a complaint relies on "a secondhand short-seller report" that "is uncorroborated by an independent investigation by counsel," the Court should dismiss the complaint for failure "to plead an actionable misstatement or omission" under Rule 12(b)(6) and Rule 9(b). *Fanhua*, 442 F. Supp. 3d at 804. With respect to an "independent investigation by counsel," the SAC alleges it is based on counsel's investigation of publicly available information including Hebron's SEC filings and People's Republic of China regulatory filings. (SAC at 1.) In reality, the SAC merely rehashes the assertions of the Grizzly Report, with the *post hoc* addendum that the SAC stems from an "investigation" by counsel. The three alleged related-party transactions discussed in the Grizzly Report are the same transactions contained in the SAC.

11

Exchange Act, but does not bother to allege at all—yet alone with the specificity required by Rule 9(b)—how Hebron violated these regulations.  (*Id.* ¶ 33.)[11]  These allegations all fail.

The relevant related-party standard is explicitly stated in the filings themselves.  Hebron is considered a "foreign private issuer" by the U.S. Securities and Exchange Commission and must annually file SEC Form 20-F.  *See* SAC ¶ 6 (Hebron filed its Annual Report using Form 20-F); 17 C.F.R. § 240.3b-4 (defining "foreign private issuer"); 17 C.F.R. § 249.220f (2004).  In its 2019 SEC Form 20-F filing, Hebron adopted the definition of "related party" from the Item 7.B Instructions for SEC Form 20-F.  (Ex. 2, 2019 20-F at 94; Int'l Disclosure Standards, S.E.C. Release No. 7745 (Sept. 28, 1999).)[12]  As explained below, Hebron disclosed the transactions within this definition of a "related party," and thus none of the alleged misstatements or omissions are actionable.  Indeed, the Independent Investigation confirmed as much.  That investigation examined each of the allegations, and concluded "based on the evidence collected and the information provided by interviewees that none of the three transactions specified in the short seller's report qualified as related party transactions requiring disclosure under the applicable standard."  (Ex. 6, July 31, 2020 6-K at Ex. 99.1.)

---

[11]  To the extent Plaintiffs argue that Hebron violated either the COSO Framework or SEC regulations requiring it to maintain disclosure controls and procedures because those controls and procedures were purportedly ineffective, that argument fails.  *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 265 (S.D.N.Y. 2019) (dismissing securities fraud claims because plaintiffs "failed to allege sufficient facts to demonstrate that representations that the transaction would be subjected to the related-party transaction approval process were false").

[12]  Form 20-F's definition of a related party to a company includes, *inter alia*, (a) enterprises that control, are controlled by, or are under common control with the company; (b) associates; (c) individuals owning a voting interest in the company sufficient to give them significant influence over the company; (d) key management personnel of the company; and (e) enterprises in which a substantial interest in the voting power is owned or influenced by a person described in (c) or (d). (Ex. 2, 2019 20-F at 94; Int'l Disclosure Standards, S.E.C. Release No. 7745 (Sept. 28, 1999).)

### 2.    Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the SPA.

Hebron's 2019 20-F statement that the Company had not been involved in any related-party transactions other than those disclosed is not actionable; it was true.[13]  With respect to the SPA, Plaintiffs fail to allege sufficiently that, under the applicable related-party definition in Hebron's 2019 20-F, Shan Jiang or Loong Fang were parties related to Hebron.

As to Shan Jiang, the SAC alleges that he signed the SPA on behalf of Loong Fang, has been a supervisor at Puhui Investment since April 14, 2020, and has been a supervisor at Zhonghui since March 25, 2020.  (SAC ¶ 42.)  The SAC also alleges that Benefactum is the 100% owner of Puhui Investment and Zhonghui (*id.*), and that Bodang Liu is the 99.99% owner of Benefactum (*id.* ¶ 41).  Notably, however, the SAC does not contain a single allegation regarding what Shan Jiang's purported role as a "supervisor" at Puhui Investment or Zhonghui entailed.  This omission forecloses Plaintiffs from successfully pleading that Shan Jiang was a related party to Hebron, either on the basis he owned a voting power of Hebron that gave him significant influence over Hebron or because he was a key management personnel of Hebron who had authority and responsibility for planning, directing, and controlling the activities of Hebron.  Thus, Plaintiffs fail to allege Shan Jiang was a related party to Hebron.  *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067 (PAE), 2020 WL 4734989, at *14 (S.D.N.Y. Aug. 14, 2020) (dismissing claims where allegations "far from being particular," were instead "uncommonly hazy") (Engelmayer, J.); *see also* Ex. 6, July 31, 2020 6-K at Ex. 99.1 (Independent Investigation "found no evidence suggesting that [Shan Jiang is a] key management personnel of Hebron, or that [Shan

---

[13]    Plaintiffs' other alleged misstatements regarding the SPA are similarly not actionable because of lack of falsity. (*See* AC ¶¶ 85, 90, 92, 94.)

Jiang is an individual] who own[s] sufficient voting power over Hebron to exercise significant influence over the company.").

Additionally, the SAC fails to allege Loong Fang was a related party to Hebron. Plaintiffs fail to identify how, even if Bodang Liu controlled either Puhui Investment or Zhonghui, control of an alleged related party of Hebron at which Shan Jiang was a supervisor establishes Loong Fang as a related party under a theory of common control of Loong Fang and Hebron. The SAC alleges that "Bodang Liu indirectly controls the Loong Fang Trading Co. through Benefactum's 100% ownership over Puhui Investment and Zhonghui" but does not explain how Bodang Liu allegedly controlled Loong Fang simply because Shan Jiang was a supervisor at Puhui Investment and Zhonghui. (SAC ¶ 43.) In the SAC, purporting to apply ASC 850-10-20's definitions of "affiliate" and "control," Plaintiffs added the conclusory allegation that "Bodang Liu has control over the Loong Fang Trading Co." because "Shan Jiang, Puhui Investment and Zhonghui act as affiliated entities and/or intermediaries, making the Loong Fang Trading Co. an enterprise under common control with Hebron through Bodang Liu." (*Id.*) But this new allegation is no panacea: there are still no well-pleaded allegations explaining how Bodang Liu's alleged control over Puhui Investment and Zhonghui gave Bodang Liu "the power to direct or cause the direction of" Shan Jiang, and thus purportedly by extension, Loong Fang. (*Id.* (quoting ASC 850-10-20 definition of control).) This failure forecloses Plaintiffs' argument that Loong Fang was a related-party entity to Hebron. *See ECA*, 553 F.3d at 200 (securities fraud plaintiff must allege controlling entity "created, controlled, and made decisions on behalf of" the related party); *In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.* ("*CMGE*"), No. 14 Civ. 4471 (KMW), 2016 WL 922711, at *5 (S.D.N.Y. Mar. 7, 2016) (dismissing complaint because it did not describe "any facts showing that [defendant] continued to hold decision-making power over [alleged related party]"). Because

14

Plaintiffs fail to articulate how either Shan Jiang or Loong Fang was a related party, Plaintiffs' claims regarding the SPA should be dismissed.[14] *See In re I.P.O. Secs. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) ("particularity means the who, what, when, where and how"); *see also* Ex. 6, July 31, 2020 6-K at Ex. 99.1 (Independent Investigation found no evidence that Loong Fang was a related party to Hebron).

### 3. Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the Beijing Hengpu Transaction.

Hebron's 2019 20-F statement that the Company had not been involved in any related-party transactions other than those disclosed is not actionable because it was not false with respect to the Beijing Hengpu transaction.[15] Plaintiffs fail to allege that Xiaoyun Huang, Peng Jiang, or Beijing Hengpu were related parties to Hebron, as that term is defined in Hebron's 2019 20-F.

With respect to Huang, the SAC alleges that Huang controlled Beijing Hengpu because, "[a]ccording to Beijing Hengpu's SAMR records, Huang was [] registered as Beijing Hengpu's Chairman since June 28, 2017, and, as of October 30, 2020, remains the Chairman and legal representative of Beijing Hengpu." (SAC ¶ 55.) The SAC also alleges that Huang was reported to be the CEO of Benefactum and HuiYingJinFu, and the Chief Fintech Officer of NiSun Shanghai. (*Id.* ¶¶ 56, 57.) But as the SAC explicitly references, and as the Independent Investigation

---

[14] Plaintiffs' claims related to the SPA should be dismissed for the additional and independent reason that the SAC fails to allege Shan Jiang had any role at either Puhui Investment or Zhonghui on December 9, 2019, the date Hebron announced it had entered into the SPA. (SAC ¶ 36.) The SAC alleges Shan Jiang has only been a supervisor at Puhui Investment since April 14, 2020, and a supervisor at Zhonghui since March 25, 2020. (*Id.* ¶ 42.) Because Shan Jiang had *no role whatsoever* at either of the purported related parties when the SPA was entered into and announced, Plaintiffs' allegations should be dismissed. *See Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC), 2012 WL 3957916, at *19 (S.D.N.Y. Sept. 10, 2012) ("It is unclear whether the requirement that companies disclose 'proposed' transactions in which 'any related person . . . will have a direct or indirect material interest,' 17 C.F.R. § 229.404(a), applies to a situation in which a company agrees to purchase a target . . . and corporate officers then take an interest in the target.").

[15] Plaintiffs' other alleged misstatements regarding the Beijing Hengpu transaction are similarly not actionable because of lack of falsity. (*See* SAC ¶¶ 88, 90, 92.)

concluded, Huang had no role at Beijing Hengpu at the time of the transaction but was merely nominally listed as Beijing Hengpu's legal representative as a technicality given "certain government regulatory policies that" temporarily prevented Beijing Hengpu from changing its registration information. (*Id.* ¶ 55; *see also* Ex. 6, July 31, 2020 6-K at Ex. 99.1 ("Huang left his position at Beijing Hengpu more than a year before the acquisition and . . . he is only listed as the company's legal representative in Beijing Hengpu's corporate records due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information.").) Strikingly, the SAC ***does not allege*** that Huang had a substantive role at Beijing Hengpu at the time of the transaction, and instead clings to the argument that Huang had control over Beijing Hengpu because he was still technically listed as having a role at the company on SAMR records. Case law makes clear that Plaintiffs may not rely on technicalities, but must instead adequately allege the "vital link" of actual control over an entity to plead an undisclosed related-party transaction and survive a motion to dismiss. *See CMGE*, 2016 WL 922711, at \*5; *see also Tabor v. Bodison Biotech, Inc.*, 579 F. Supp. 2d 438, 450–51 (S.D.N.Y. 2008) (dismissing complaint for failure to allege "that [alleged related party] controlled or significantly influenced the management or operating procedures of" defendant). As to the allegation that Huang was an undisclosed related party because of his role at HongKong D&L, the Independent Investigation "determined that [it] was insufficient to qualify him as a related party given that he contractually turned over his voting and control rights two years before the acquisition and thus was incapable of exercising substantial influence over Beijing Hengpu." (Ex. 6, July 31, 2020 6-K at Ex. 99.1.) Because the SAC fails to allege Huang had any control over Beijing Hengpu at the time of its acquisition by Hebron, any allegation that Huang was a related party to Hebron is irrelevant.[16]

---

[16]    The allegation that Huang was an intermediary between Beijing Hengpu and Bodang Liu (as the term is used within ASC 850-10-20's definition of affiliate) (*see id.* ¶¶ 30-31, 58), fails to change the outcome of this motion.

16

Plaintiffs' allegations regarding Peng Jiang as a related party to Hebron do not fare any better. The SAC alleges that Peng Jiang has been Beijing Hengpu's director and manager since June 2017; has been a legal representative, Vice President, and 99% shareholder of NiSun Shanghai since October 2019; and is the legal representative of Shanghai Fintech, an alleged subsidiary of Hebron. (SAC ¶ 59.) But despite reciting Peng Jiang's title as a "director and manager" at Beijing Hengpu, the SAC does not allege at all, let alone with specificity, how Peng Jiang exerted any control over Beijing Hengpu.[17] (*Id.*) Given this glaring failure, Peng Jiang's purported roles at NiSun Shanghai and Shanghai Fintech are irrelevant, and Plaintiffs' claims regarding Peng Jiang should be dismissed. *See CMGE*, 2016 WL 922711, at *5 (dismissing claims because no control allegations); *Tabor*, 579 F. Supp. 2d at 450–51 (same); *SkyPeople Fruit Juice*, 2012 WL 3957916 at *18 (same). And even if the SAC adequately described Peng Jiang's purported role at Beijing Hengpu (it does not), Plaintiffs fail to explain how allegations that Peng

---

Plaintiffs could not be bothered to explain at all, let alone with the requisite particularity, how Bodang Liu "controls, is controlled by, or is under common control with" Beijing Hengpu through Huang, as they plead no facts as to how Bodang Liu has "the power to direct or cause the direction of" Huang, and thus purportedly by extension, Beijing Hengpu. Moreover, Plaintiffs declined to provide a translation for the articles that their allegations rely on (*see* SAC ¶¶ 56–57), making it impossible for the Court to determine who made the alleged statements, and thus impossible for the Court to evaluate their reliability, *see Liqiang Wei v. Jiazhong Sun*, No. 18 Civ. 2136 (MEJ), 2018 WL 1833897, at *1 (N.D. Cal. Apr. 18, 2018) ("The Court cannot rely on an untranslated document to evaluate the sufficiency of Plaintiff's claims."), *adopted by* 2018 WL 4378760 (N.D. Cal. May 15, 2018); *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13 Civ. 7639 (LTS), 2016 WL 4098564, at *5 n.11 (S.D.N.Y. July 28, 2016) ("[T]hese documents are in Chinese, and [party has] failed to provide any translation or explanation of their meaning, leaving the Court unable to evaluate their relevance or significance."); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) ("Because the article does not reveal the identity or position of the person who provided the information, it is impossible to evaluate its reliability.").

[17] Plaintiffs plead the abstract, textbook responsibilities of a director and of a manager (SAC ¶ 59), but do not adequately allege Peng Jiang's role at Beijing Hengpu. Notably, Peng Jiang did not sign the acquisition agreement on behalf of Beijing Hengpu. Rather, the acquisition agreement was signed by Beijing Hengpu's CEO at the time, Zeng Lin. (*See* Ex. 2, 2019 20-F at Exhibit 4.13.) Moreover, Plaintiffs' boilerplate allegations are kneecapped by the conclusion of the Independent Investigation, which "found that Peng Jiang's purported connections to Beijing Hengpu and certain companies affiliated with Bodang Liu were insufficient to establish a related party relationship because White & Case did not find any evidence demonstrating that Jiang exercised control over Beijing Hengpu as a result of his nominee director status." (Ex. 6, July 31, 2020 6-K at Ex. 99.1.)

17

Jiang purportedly had roles at a related party to Hebron, as well as a subsidiary of Hebron, establish that he either owned a voting power of Hebron that gave him significant influence over Hebron, or was a key management personnel of Hebron—as required to establish that Peng Jiang was a related party to Hebron.[18]  Plaintiffs' claims predicated on the Beijing Hengpu transaction should be dismissed.

### 4. Plaintiffs Fail to Plead Any Actionable Misstatement or Omission Related to the Nami Transaction.

The press release attached to Hebron's May 22, 2020 6-K announcing the Nami transaction is not actionable because it was not false.  Specifically, Jinbao Li ("Li"), Nami, and Shanghai Nami were not related parties to Hebron under the definition of the term in Hebron's 2019 20-F.

The SAC alleges Nami is an undisclosed related party to Hebron because it is controlled by Li and because Li is an 85% shareholder of Shanghai Nami—which the SAC contradictorily alleges was a subsidiary of two purported Hebron related parties: NiSun Shanghai and Huiying Financial.  (*See* SAC ¶¶ 68–74.)  But the SAC's bare-bones and inconsistent allegations fail to adequately allege that Shanghai Nami was a related party to Hebron.  Specifically, the allegation that the April 2, 2018 article posted in NiSun Shanghai's WeChat initially erroneously stated Shanghai Nami was a subsidiary of Huiying Financial does not make the Nami transaction statements actionable.  (*See id.* ¶¶ 71, 72.)  The April 2, 2018 article was quickly corrected to note Shanghai Nami was not a subsidiary—which the SAC explicitly admits.  (*See id.* ¶¶ 72, 73; *see also* Ex. 6, July 31, 2020 6-K at Ex. 99.1 (Independent Investigation concluded "the 2018 WeChat article that mistakenly stated that NiSun Shanghai and Nami Shanghai were subsidiary companies

---

[18] The allegation that Beijing Hengpu itself is a related party is derivative of Plaintiffs' allegations regarding Huang and Peng Jiang.  Because Plaintiffs have failed to adequately allege either of those individuals is a related party to Hebron, they also fail to allege Beijing Hengpu is a related party to Hebron.

was inadvertent and that error was quickly revised a mere six days later.").)   Similarly, the allegation that a CV was located online indicating that Shanghai Nami was a subsidiary of NiSun Shanghai does not provide any support for the allegation that Nami was an undisclosed related party to Hebron.   (*Id.* ¶ 74.)   In fact, this allegation explicitly contradicts the allegation that Shanghai Nami was a subsidiary of Huiying Financial.   (*Id.* ¶ 71.)   And the SAC conspicuously does not disclose whether the alleged CV had an employment end date, whether such date was prior to the Nami transaction, or whether it was clear when the CV was last updated.   Together, these two allegations amount to nothing more than pure speculation, which is utterly insufficient to survive any motion to dismiss—let alone a motion brought under Rule 9(b)'s stringent standard. *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) ("A plaintiff cannot base securities fraud claims on speculation and conclusory allegations."); *S.E.C. v. Sason*, 433 F. Supp. 3d 496, 511 (S.D.N.Y. 2020) ("vague and factually unsubstantiated allegations fall short of establishing fraud under Rule 9(b)").[19]

Plaintiffs' meager confidential witness allegations cannot be credited.[20]   ***First***, the SAC alleges CW 1 was employed by NiSun Shanghai from July 2017 through July 2018 and that CW 2 was employed by Shanghai Nami from February 2018 to February 2019.   (SAC ¶¶ 69, 70.)   But the Nami transaction did not occur until May 12, 2020—over a year after the last date of CW 2's

---

[19]   The allegations that Li and Nami are related parties to Hebron are each derivative of the allegation that Shanghai Nami was a related party to Hebron.   Specifically, as already discussed, the SAC does not adequately plead that Shanghai Nami is the subsidiary of any related party to Hebron, such that Li's 85% ownership of Shanghai Nami would establish him as a related party.   Because the SAC only alleges Nami is a related party to Hebron based on its ownership by Li, the SAC also fails to adequately allege that Nami is a related party to Hebron.

[20]   As discussed herein, the use of the term "witness" is perhaps a misnomer here, where there is no allegation that the so-called CWs were employed by the relevant entities at the time of the at-issue transactions—and thus no allegation they were in a position to "witness" anything.   *See Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020) (dismissing securities fraud claims and noting "courts must pay particular attention to the timing of anonymous allegations and the CWs' bases for making such allegations.").

alleged employment at Shanghai Nami and nearly two years after the last date of CW 1's alleged employment at NiSun Shanghai.  (*See id.* ¶¶ 64, 65.)  Thus, there is no basis to assume the truth of the CWs' allegations at the time of the Nami transaction, which occurred years after their alleged employment ended.  *See Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2020 WL 4940752, at *18 (S.D.N.Y. Aug. 21, 2020) ("[C]ourts have rejected confidential witness allegations where the confidential witnesses left the company before the class period."); *Lululemon*, 14 F. Supp. 3d at 579 ("No CW sets forth facts that suggest that any of the alleged statements were false when they were made.").

*Second*, there is no allegation that the CWs interacted with either of the Individual Defendants, and there is no allegation as to how either of the rank-and-file positions of the CWs ("assistant" and "legal counsel") would allow them to become aware of the purported fraudulent (and secret) activities.  *See Loc. No. 38 Int'l Brotherhood of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (discounting allegations of "low-level, rank-and-file employees" who the complaint did not indicate had any access to the alleged information or contact with the individual defendants), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).

In sum, these conclusory allegations are insufficient to meet the pleading standards in any case, much less the heightened pleading requirements imposed by the PSLRA.  *See Fanhua*, 442 F. Supp. 3d at 799–800.  The claims related to the Nami transaction should be dismissed.

### B.       Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter.

Plaintiffs' Section 10(b) claims separately fail because Plaintiffs have not adequately pleaded scienter.  A plaintiff must plead scienter in one of two ways:  (1) by alleging that Defendants had the motive and opportunity to commit fraud; or (2) by producing "strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA*, 553 F.3d at 198.  Here, the SAC does not adequately plead scienter as to Sun or Liang under either theory, and the SAC

fails to attach scienter to Hebron "by extension." *See Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

### 1.    Plaintiffs Fail to Plead Facts to Support Motive to Commit Fraud.

To adequately allege that Defendants had motive and opportunity to commit fraud, Plaintiffs must "allege that defendants benefited in some concrete and personal way from the purported fraud." *Novak*, 216 F.3d at 307–08; *see also Kalnit*, 264 F.3d at 139.   The SAC's allegations are, individually and collectively, entirely insufficient to establish the requisite motive.

Plaintiffs make no attempt to plead that the Individual Defendants received any improper personal benefits related to the three purported related-party transactions.  *See CMGE*, 2016 WL 922711 at *7 (rejecting attempt to establish scienter based on motive that failed to "describe, as it must, how [d]efendants 'benefited in some concrete and personal way' from the alleged related-party transactions").  Plaintiffs further contend that Liang's past employment at two companies owned or controlled by Bodang Liu made Liang beholden to Bodang Liu at her current job.  (SAC ¶ 102.)  But this is an ineffective argument absent any allegations that Bodang Liu continued to exert material influence.  *See Dobina v. Weatherford Int'l Ltd*., 909 F. Supp. 2d 228, 254 (S.D.N.Y. 2012) (a prior working relationship is insufficient to establish scienter).

There is also no allegation that either Individual Defendant sold Hebron stock during the Class Period.  Sun has not owned Hebron stock since July 2019—months prior to any of the alleged misstatements and almost a year prior to the Class Period.  (Ex. 2, 2019 20-F at 93 n.3.)  Liang owned 100,000 shares of Hebron stock on April 24, 2020 (*id.* at 93), and held the same number of shares on August 10, 2020 (Ex. 3, August 14, 2020 6-K at 19).  That the Individual Defendants did not sell stock during the Class Period cuts against any inference of scienter.  *See, e.g.*, *In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 585 (S.D.N.Y. 2013) (failure to allege scienter where "no allegation that the defendants . . . sold a single share of BoA stock during

21

the Class Period."), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *In re eSpeed, Inc. Secs. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) ("that neither [individual defendant] sold stock during the putative class period undermines plaintiffs' motive allegations").

Lastly, the fact that Sun and his family guaranteed corporate debts is not a sufficient motive.[21] The SAC speculates, without asserting any supporting facts, that Sun "was under tremendous financial pressure to get Hebron's debt repaid." (SAC ¶ 101.) This is insufficient because the rest of the SAC is devoid of allegations to support the propositions (1) that Hebron was at risk of a default; and (2) that even if financial difficulties did arise, misleading investors would shield Sun from personal liabilities. *See Janel World Trade, Ltd. v. World Logistics Servs., Inc.*, No. 08 Civ. 1327 (RJS), 2009 WL 735072, at *6 (S.D.N.Y. Mar. 20, 2009) ("[S]peculative allegations regarding personal liability that may potentially attach to an individual defendant are insufficient to give rise to a strong inference of scienter under the PSLRA.").

### 2.    Plaintiffs Fail to Allege Conscious Misbehavior or Recklessness.

Where, as here, Plaintiffs have not established motive, they must plead particularized facts showing an even "stronger inference" that Defendants made the alleged misstatements with conscious misbehavior or recklessness. *Kalnit*, 264 F.3d at 143. Conscious misbehavior consists of "deliberate, illegal behavior," while recklessness means conduct that is "at the least . . . ***highly unreasonable*** and which represents an ***extreme departure*** from the standards of ordinary care." *Id.* at 142 (emphasis added). The SAC makes several conclusory assertions that, individually and collectively, fail to establish the required state of mind. *See, e.g.*, *Hutchinson v. Perez*, No. 12 Civ.

---

[21]    Sun founded Hebron's oldest subsidiary in China, and was Hebron's controlling shareholder until July 2019. (Ex. 2, 2019 20-F at 86; Ex. 7, September 4, 2020 6-K.) Sun's controlling interest in (and long-term association with) Hebron explains his guaranteeing of corporate debt.

22

1073 (HB), 2013 WL 1775374, at *4 (S.D.N.Y. Apr. 25, 2013) (plaintiffs cannot "combine several insufficient allegations of scienter" to "construct 'strong inference' of recklessness").

*First*, the mere fact that the Individual Defendants held executive positions is insufficient to show scienter. *See In re Rockwell Med., Inc. Secs. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) ("'accusations' founded on nothing more than a defendant's corporate position[,] are entitled to no weight").[22] Nor does Plaintiffs' allegation that, in a "small public holding company [such as Hebron]," "[t]he alleged false or misleading statements . . . would invariably be brought to the attention of [the Individual Defendants]," (SAC ¶ 105), establish scienter, *see Cohen v. Kitov Pharms. Holdings, Ltd.*, No. 17 Civ. 0917 (LGS), 2018 WL 1406619, at *8 (S.D.N.Y. Mar. 20, 2018) ("The size of the company does not give rise to a 'strong inference' that [the Defendant CFO] acted with a guilty state of mind"); *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 401 (S.D.N.Y. 2020) ("Plaintiffs [cannot] rely on the Individual Defendants' positions as CEO and CFO to allege awareness both of the product issues and their alleged accounting implications.").

*Second*, the SAC appears to imply, again without offering any particularized allegations, that Sun's resignation as CEO and Chairman of Hebron, which was disclosed in Hebron's August 14, 2020 6-K, was triggered by the release of the Grizzly Report on June 3, 2020. (SAC ¶ 107.) The period of time between these two events, over two months, calls into question any alleged causal relationship. Further, as already mentioned, Sun sold all his Hebron shares in July 2019. (Ex. 2, 2019 20-F at 93 n.3.) In addition, the August 14, 2020 6-K disclosed that several of

---

[22]  Plaintiffs also cannot establish scienter by making the tenuous argument that, while Sun and Liang were at Hebron's helm, two of the three purported related-party transactions were related to one of Hebron's core business areas. *See Marcu v. Cheetah Mobile Inc.*, No. 18 Civ. 11184 (JMF), 2020 WL 4016645, at *8 (S.D.N.Y. July 16, 2020) ("At best, core-operations allegations are 'supplementary'—they are not 'independently sufficient means to plead scienter.'") (quoting *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011)).

23

Hebron's existing directors, Sun included, either resigned or did not seek reelection. (Ex. 3, August 14, 2020 6-K at 5.) These facts strongly suggest that Sun's professional decision had benign reasons, rather than fraudulent ones. *See Woolgar*, 2020 WL 4586792 at *26 ("[T]here are any number of reasons that an executive might resign, most of which are not related to fraud."); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("[R]esignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter.").

*Third*, Plaintiffs contend that Hebron's engagement of a new independent auditor "helped set the stage for Defendants' egregious wrongdoings" (SAC ¶ 106), but this baseless allegation falls short of showing a strong—or any—inference of scienter. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846 (LGS), 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014) ("It is noteworthy that the outside auditors did not question the corporate defendant's accounting practices."); *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 474, 475 (S.D.N.Y. 2008) (Resignation of a company's outside auditor is insufficient to support a strong inference of scienter where, as happened here, auditor files a letter stating "there were no disagreements between the Company and" the auditor).[23]

*Fourth*, the fact that Hebron engaged White & Case, a prominent U.S. law firm, to conduct the Independent Investigation, which concluded that none of the alleged transactions required disclosure, cuts even further against an inference of scienter. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) ("Ordering an investigation . . . weakens rather than strengthens an

---

[23] Friedman LLP issued a letter confirming that it agreed with Hebron's statement that there was no accounting disagreement between Friedman and Hebron. (Ex. 8, February 26, 2019 6-K at Ex. 99.1.) And while Plaintiffs argue Friedman's letter is silent as to any disagreements related to the fiscal year ended December 31, 2018, the 6-K filing, which Friedman LLP stated it was "in agreement with," noted that there were no disagreements between Hebron and Friedman LLP "*through* the dismissal of Friedman on February 26, 2019." (*Id.*)

inference of scienter."); *Fanhua*, 442 F. Supp. 3d at 808 ("initiation of an independent investigation here, if anything" cuts against inference of scienter).

In the end, this Court should reject Plaintiffs' scattershot scienter argument "that zero plus zero plus zero plus zero plus zero adds up to" a strong inference of scienter. *Id.* at 475 ("amalgam of suggestions" is insufficient to adequately plead scienter).[24]

### C.    Plaintiffs Fail to Plead Loss Causation.

The SAC's failure to plead loss causation also warrants dismissal.  To plead loss causation, a plaintiff must allege that (1) "the market reacted negatively to a corrective disclosure"; or (2) "the materialization of the risks that were concealed by the alleged misrepresentations or omissions proximately caused plaintiff['s] loss." *Omnicom Grp.*, 541 F. Supp. 2d at 551.

Here, there were no "misrepresentations or omissions" with regard to the three transactions and Plaintiffs cannot argue that their loss was proximately caused by non-existent misrepresentations or omissions. *See id.* at 551–52.  Further, there was no allegedly corrective disclosure.    The Grizzly Report cannot constitute a corrective measure because a "recharacterization of previously disclosed facts cannot qualify as a corrective disclosure." *Id.*

## II.    THE SAC FAILS TO STATE A CLAIM UNDER SECTION 20(A).

Plaintiffs' Section 20(a) claims fail because Plaintiffs fail to state a claim for a primary violation of Section 10(b); both should also be dismissed. *See ATSI Commc'ns*, 493 F.3d at 108.

## CONCLUSION

For these reasons, the SAC should be dismissed with prejudice.[25]

---

[24]    And Plaintiffs cannot rely on Sarbanes-Oxley certifications as a substitute because they fail to allege specific contrary information held by Sun or Liang at the time that they signed the certifications at issue here. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Secs. Litig.*, 2014 WL 7176187 at *7 (no inference of scienter in absence of "inference that . . . [SOX] certifications" were not "reasonably believed to be true when made").

[25]    (*See* Dkt. 26 at n.1 ("if Hebron moves to dismiss the amended complaint, no further opportunity to amend will be granted"); Dkt. 37 at 1 ("No further opportunities to amend will ordinarily be granted."); *accord* Rule 3.B of the

Dated: February 19, 2021

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

/s/ *Matthew Solum*

Matthew Solum, P.C.
Matthew Tharp
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
matthew.solum@kirkland.com
matt.tharp@kirkland.com

*Counsel for Hebron Technology Co., Ltd.*

---

Court's Individual Rules and Practices.)  Dismissal with prejudice is particularly warranted here because further amendment would be futile.  *See In re Aratana Therapeutics Inc.*, 315 F. Supp. 3d at 766 (dismissing securities fraud claims with prejudice) (Engelmayer, J.); *In re Sanofi Secs. Litig.*, 87 F. Supp. 3d 510, 547 (S.D.N.Y. 2015) (dismissing securities fraud claims with prejudice where "[a]n amended complaint [was] unlikely to survive a motion to dismiss") (Engelmayer, J.), *aff'd*, 816 F.3d 199 (2d Cir. 2016).

26