UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE HEBRON TECHNOLOGY CO., LTD. SECURITIES LITIGATION | Case No. 20 Civ. 4420 (PAE) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO HEBRON'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Tel: (212) 661-1100
Fax: (917) 463-1044
Email: jalieberman@pomlaw.com
        bszydlo@pomlaw.com

*Counsel for Lead Plaintiff Edward A. Dahlke, Plaintiff Michael Clynes, and the proposed Class*

*(Additional Counsel on Signature Page)*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

    A.    The Three Related Party Transactions ................................................................ 3

          1.    Hebron's Loong Fang PIPE Transaction Was an Undisclosed Related Party Transaction ................................................................ 4

          2.    The Company's Acquisition of Beijing Hengpu Was an Undisclosed Related Party Transaction ................................................................ 5

          3.    Hebron's Acquisition of Nami Holding (Cayman) Was an Undisclosed Related Party Transaction ................................................ 8

    B.    There Were Shortcomings in the Subsequent Investigation ............................... 11

    C.    Plaintiffs' Investigation and Related Party Analysis ......................................... 12

LEGAL STANDARD ............................................................................................................. 13

    A.    Rule 12(b)(6), Rule 9(b) and the PSLRA Pleading Standard ............................. 13

    B.    Elements of Plaintiffs' Claims ......................................................................... 14

ARGUMENT ........................................................................................................................ 14

I.    PLAINTIFFS STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 .......... 14

    A.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Three Material Related Party Transactions .............. 14

          1.    The Relevant Related Party Standard is FASB ASC 850 ........................ 14

          2.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Loong Fang PIPE Transaction ..................... 16

          3.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Beijing Hengpu Acquisition ......................... 18

          4.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Nami Holding (Cayman) Acquisition .......... 21

    B.    Plaintiffs Sufficiently Allege Scienter ............................................................. 22

    C.    Plaintiffs Adequately Plead Loss Causation ..................................................... 24

II.    PLAINTIFFS STATE A CLAIM UNDER SECTION 20(a) ....................................... 25

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I.G. Asian Infrastructure Fund, L.P. v. Chase Manhattan Asia Ltd.*, No. 02-cv-10034 (KMW),
    2004 U.S. Dist. LEXIS 27334 (S.D.N.Y. Mar. 25, 2004), *aff'd*, 122 Fed. App'x 541 (2d Cir.
    Feb. 25, 2005) ...................................................................................................................20

*Alaska Elec. Pension Fund v. Asar*,
    768 Fed. App'x 175 (5th Cir. 2019) ...................................................................................24

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067 (PAE),
    2020 U.S. Dist. LEXIS 146995 (S.D.N.Y. Aug. 14, 2020).......................................12, 13, 16

*Ashcroft v. Dep't of Corr.*, No. 05CV488, No. 05cv488,
    2007 U.S. Dist. LEXIS 49079 (W.D.N.Y. July 6, 2007)...........................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................13, 14, 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................13

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG),
    2014 U.S. Dist. LEXIS 137387 (S.D.N.Y. Sept. 29 2014).....................................................20

*Cohen v. Kitov Pharm. Holdings, Ltd.*, No. 17 Civ. 0917 (LGS),
    2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) ......................................................24

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................................18

*Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)................................................................................................22

*In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.*, No. 14-CV-4471 (KMW),
    2016 U.S. Dist. LEXIS 29258 (S.D.N.Y. Mar. 7, 2016) ...........................................18, 19, 21

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009)...................................................................................24

*In re Vale S.A. Sec. Litig.*, No. 1:15-cv-9539-GHW,
    2017 U.S. Dist. LEXIS 42513 (S.D.N.Y. Mar. 23, 2017) ...............................................24, 25

*Janel World Trade, Ltd. v. World Logistics Serv.*, No. 08 Civ. 1327 (RJS),
2009 U.S. Dist. LEXIS 30256 (S.D.N.Y. Mar. 20, 2009) .......................................................22

*Lewy v. Skypeople Fruit Juice, Inc.*, No. 11 Civ. 2700 (PKC),
2012 U.S. Dist. LEXIS 128416 (S.D.N.Y. Sept. 10, 2012).....................................................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)....................................................................................................24

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)..................................................................................................................14

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 Fed. App'x 10 (2d Cir. 2011)...........................................................................................23

*Steginsky v. Xcelera Inc.*,
741 F.3d 365 (2d Cir. 2014)....................................................................................................13

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................22

*Van Buskirk v. N.Y. Times Co.*,
325 F.3d 87 (2d Cir. 2003).....................................................................................................25

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-FM,
2016 U.S. Dist. LEXIS 98632 (S.D.N.Y. July 28, 2016) ......................................................20

*Wei v. Sun*, No. 18-cv-02136-MEJ,
2018 U.S. Dist. LEXIS 65556 (N.D. Cal. Apr. 18, 2018) .....................................................20

## Statutes

15 U.S.C. § 78u-4(b)(1) ..............................................................................................................13

15 U.S.C. § 78u-4(b)(2) ..............................................................................................................14

## Rules

Fed. R. Civ. P. 9(b) .....................................................................................................................13

Fed. R. Civ. P. 10b-5...................................................................................................................14

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 13

Fed. R. Civ. P. 15(a)(2)................................................................................................................25

## GLOSSARY OF TERMS

**"Benefactum"** – refers to Benefactum Alliance Business Consultant (Beijing) Co., Ltd.

**"Br. at _"** – refers to pages in Defendant Hebron's Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint (Dkt. 40).

**"CEO"** – means Chief Executive Officer

**"CFO"** – means Chief Financial Officer

**"Company"** – refers to Defendant Hebron Technology Co., Ltd.

**"Complaint"** – means the Consolidated Second Amended Complaint (Dkt. No. 38)

**"CW"** – means confidential witness

**"Ex. _"** – refers to exhibits

**"GAAP"** – means generally accepted accounting principles

**"Group"** – means Hebron, its subsidiaries, VIEs, and subsidiaries of the VIEs

**"Guoya BVI"** – means Guoya Investment Holding Co. Ltd. (BVI)

**"Hebron"** – refers to Defendant Hebron Technology Co., Ltd.

**"HKRC"** – refers to the Hong Kong Registrar of Companies

**"HongKong D&L"** – means HongKong D&L Technology Co., Limited

**"Huiying Financial"** – refers to Huiying Financial Holdings

**"HuiYingJinFu"** – refers to an online financial platform designed to match companies with investors

**"Individual Defendants"** – refers to Defendants Anyuan Sun, Hebron's CEO and Chairman of the Board of Directors at all times, and Changjuan Liang, Hebron's CFO at all relevant times

**"Jupiter Trading"** – refers to Jupiter Trading Co., Ltd (BVI)

**"Loong Fang Trading Co."** – refers to Loong Fang Trading Co., Ltd (BVI)

**"Nami Holding (Hong Kong)"** – refers to Nami Holding (Hong Kong) Co., Limited

**"NEEQ"** – refers to China's National Equities Exchange and Quotations

**"NiSun BVI"** – means NiSun International Enterprise Management Group (British Virgin Islands) Co., Ltd.

**"NiSun Shanghai"** – refers to Shanghai NiSun Enterprise Management Group Co., Ltd.

**"Plaintiffs"** – means Lead Plaintiff Edward Dahlke and Plaintiff Michael Clynes

**"PRC"** – refers to the People's Republic of China

**"PSLRA"** – means the Private Securities Litigation Reform Act of 1995

**"Puhui Investment"** – means Puhui Equity Investment Co., Ltd.

**"Related Party Transactions"** – refers to the Loong Fang PIPE Transaction, the Beijing Hengpu Acquisition and the Nami Holding (Cayman) Acquisition

**"SAC"** – refers to the Consolidated Second Amended Complaint (Dkt. No. 38)

**"SAMR"** – refers to China's State Administration of Market Regulation

**"Shanghai Fintech"** – refers to Fintech (Shanghi) Digital Technology Co., Ltd.

**"Shanghai Fintech Holding"** – means Fintech (Shanghai) Investment Holding Co., Ltd., which is a subsidiary NiSun BVI, a company owned by Bodang Liu until it was acquired by Hebron on July 12, 2019

**"Shanghai Nami"** – refers to Shanghai Nami Financial Consulting Co., Ltd.

**"Shanghai Naqing"** – refers to Shanghai Naqing Enterprise Management Co., Ltd.

**"Tharp Decl."** – refers to the Declaration of Matthew Tharp (Dkt. 36)

**"VIEs"** – means variable interest entities

**"W&C"** – refers to White & Case

**"Zhonghui"** – means Qianhai Zhonghui Business Information Consulting Co., Ltd.

**"2019 Annual Report"** – refers to the Company's Annual Report on Form 20-F for the fiscal years ended December 31, 2019

**"¶__"** – refers to paragraphs in the SAC (Dkt. 38)

v

Plaintiffs respectfully submit this memorandum of law in opposition to Hebron's motion to dismiss the Complaint pursuant to Rules 12(b)(6), 9(b) and the PSLRA.[1]

**PRELIMINARY STATEMENT**

This is a securities fraud class action on behalf of investors who purchased or otherwise acquired Hebron securities between April 24, 2020 and June 3, 2020 ("Class Period"). Hebron is a small public holding company that conducts its business through its subsidiaries, VIEs and subsidiaries of VIEs in the PRC. The Company conducts equipment and engineering service operations, and since July 2019, has been providing financial advisory service operations. Throughout the Class Period, Defendants misled investors by misrepresenting and omitting material information in their public statements regarding ***three related party transactions in a six-month period between December 2019 and May 2020***, the disclosure of which would have altered the risk profile of their capital. For example, the Company referred to one related party as merely a "private investor." In another instance, Hebron stated that it acquired a company from its "original [two] shareholders" without disclosing that one was a related party. As a result of Defendants' failure to disclose the Related Party Transactions, Hebron was not in compliance with the applicable U.S. GAAP standard regarding related party transactions and the required disclosures. Moreover, the Company's disclosure controls regarding related party transactions were ineffective. Although the Hebron disclosed in its 2019 Annual Report that its disclosure controls were ineffective and, as a result, the Company did not maintain effective internal control over financial reporting due the existence of certain material weaknesses, the material weaknesses described in the report failed to discuss anything about the lack of disclosure of the related party transactions discussed herein.

---

[1] Unless otherwise indicated, internal quotations and citations are omitted and emphasis is added.

On June 3, 2020, Grizzly Research published a scathing research report alleging that Hebron is an "insider enrichment scheme with no basis," citing questionable transactions, including a series of material related party transactions (the "Grizzly Report"). Specifically, the Grizzly Report disclosed that Hebron's Loong Fang PIPE Transaction, Beijing Hengpu Acquisition, and Nami Holding (Cayman) Acquisition, were material undisclosed related party transactions. On this news, the Company's share price fell $8.26, or nearly 37% on June 3, 2020, and continued to decline on June 4, 2020 by $2.51, or nearly 18%.

Hebron moves to dismiss Plaintiffs' Section 10(b) claim on three grounds. First, the Company contends that a different related party standard applies, rather than the U.S. GAAP standard for related parties, and under that standard, all of Defendants' statements are true. But Hebron disclosed in its 2019 Form 20-F that it filed its financial statements in accordance with U.S. GAAP. Consequently, ***Hebron cannot divorce itself from the requirements of U.S. GAAP by asserting that something else is applicable***. As such, Plaintiffs adequately allege false and misleading statements by Defendants concerning all the Related Party Transactions. Hebron also argues that Plaintiffs fail to plead a strong inference of scienter, but there is ample support for scienter when evaluating ***all*** of the facts alleged. For example, Plaintiffs allege that ***Defendant Sun and his brother guaranteed almost $2 million of the Company's debt with recourse to their respective homes and was under pressure to get Hebron's debt repaid***. Therefore, Defendant Sun had incentives relating to present, existing, and personal liability at the time of each Related Party Transaction which created a motive for him to participate in the fraud. Moreover, two months after the fraud was disclosed, Hebron disclosed that ***Sun resigned from the Company as CEO and Chairman***. The Company also argues that Plaintiffs fail to adequately plead loss causation, but Plaintiffs allege that market reacted negatively to a corrective disclosure of the fraud, which is all

that is required to satisfy the burden of pleading loss causation. Hebron also moves to dismiss Plaintiffs' Section 20(a) claim **against the Individual Defendants** but **lacks standing to make arguments on behalf of non-appearing defendants**. And while Hebron urges dismissal of this claim because it contends that Plaintiffs' primary claim fails, Plaintiffs adequately allege a Section 10(b) claim.

## BACKGROUND

Hebron is a small holding company that conducts its business mainly through its subsidiaries, VIEs, and subsidiaries of VIEs, in China. The Company has two core business segments – the equipment and engineering segment; and the financial services segment. ¶¶20-21. In June 2019, Bodang Liu became the largest and controlling shareholder of the Company, with a 46.94% interest. The Company's 2019 Annual Report states that Liu is the "ultimate controlling shareholder of the Group." In China, this means that Liu has the most control rights and has the right to exert the most influence over management (over other shareholders) through the election of directors. As a result, Liu has significant influence over who holds key management positions. For example, shortly after Liu took control of the Company, he used his influence to have Defendant Liang appointed as Hebron's CFO. ¶¶23-25.

### A.    The Three Related Party Transactions

Not long after Bodang Lui took control of Hebron, the Company entered into **three material undisclosed related party transactions in a six-month period** between December 2019 and May 2020 which artificially inflated the price of Hebron's stock. The transactions were **the Loong Fang PIPE Transaction, the Beijing Hengpu Acquisition and the Nami Holding (Cayman) Acquisition**. Because the transactions involve a highly intricate web of relationships, relationship maps are attached to the Complaint for the sake of keeping track of the relationships.

3

Dkt. Nos. 38-1, 2, 3. ***The undisclosed related parties are noted in red in each relationship map.***
Defendants made a number of false or misleading statements about each of these transactions. ¶26.

### 1.    Hebron's Loong Fang PIPE Transaction Was an Undisclosed Related Party Transaction

On December 9, 2019, prior to the Class Period, the Company filed a Form 6-K and an accompanying press release with the SEC announcing that it had entered into a share purchase agreement *with two institutional investors*, Jupiter Trading and the Loong Fang Trading Co., for the private placement of 1,048,932 of Hebron's common shares at $6.21 per share, resulting in expected gross proceeds of approximately $6.5 million (the "Loong Fang PIPE Transaction"). The press release included comments from Defendant Sun, the Company's CEO, including the statement that the transaction means *"that investors have great interest to our business expansion from industrial technology service to financial technology service."* But as explained below, the Loong Fang Trading Co. is actually an undisclosed related party and the transaction is designed to show interest in the stock by institutional investors in an effort to push the stock price artificially higher. The Company's 2019 Annual Report states that "on December 9, 2019, the Group entered into a definitive share purchase agreement *with certain investors* for a private placement of approximately 1.05 million Class A common shares at $6.21 per share." Mr. Shan Jiang was a signing director on behalf of the Loong Fang Trading Co. and the Individual Defendants signed on behalf of Hebron. ¶¶36-38. On May 1, 2020, Hebron filed a Form 6-K with the SEC, signed by Defendant Sun, along with a press release, announcing that the Loong Fang PIPE Transaction, in which the Company sold shares *to two private investors*, had closed. ¶39.

Bodang Liu is a disclosed related party to Hebron with a 46.94% interest in the Company. He is the largest shareholder. SAMR filings show that he is also a 99.99% owner of Benefactum. Therefore, Benefactum is an undisclosed related party to Hebron because it is an affiliated entity

controlled by Bodang Liu. Because Liu controls Benefactum and he is a disclosed related party to Hebron, *Hebron and Benefactum are related party affiliates*. ¶¶41-42.

SAMR records confirm that Benefactum is also the 100% owner of both Puhui Investment and Zhonghui, and that Mr. Shan Jiang, who as stated above was signing director on behalf of the Loong Fang Trading Co. in connection with the transaction, is also a Supervisor at Puhui Investment since April 14, 2020 and Zhonghui since March 25, 2020. He held both positions prior to the April 24, 2020 filing of the 2019 Annual Report, and the May 1, 2020 filing of the Company's Form 6-K announcing the closing of transaction. Consequently, *Shan Jiang is an "intermediary"* between the Loong Fang Trading Co. and Bodang Liu (as that term is used within the definition of "affiliate" in ASC 850-10-20). ¶42.

Bodang Liu indirectly controls the Loong Fang Trading Co. through Benefactum's 100% ownership over Puhui Investment and Zhonghui. ASC 850-10-20 defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity through ownership, by contract, or otherwise." Bodang Liu has control over the Loong Fang Trading Co. under this definition. *Shan Jiang, Puhui Investment and Zhonghui act as affiliated entities and/or intermediaries*, making the Loong Fang Trading Co. an enterprise under common control with Hebron through Bodang Liu. Therefore, *Hebron and the Loong Fang Trading Co. are affiliated entities*. This conclusion is consistent with the first example of "related parties" under ASC 850. Consequently, *Benefactum and the Loong Fang Trading Co. are both affiliated entities of Hebron and thus undisclosed related parties*. ¶¶29, 42-43.

### 2. The Company's Acquisition of Beijing Hengpu Was an Undisclosed Related Party Transaction

Hebron's 2019 Annual Report states that on December 31, 2019, the Group, through VIE agreements, started to effectively control Beijing Hengpu by issuing 1,440,894 shares of Hebron's

common stock to Beijing Hengpu's shareholders (the "Beijing Hengpu Acquisition"). Beijing Hengpu is purportedly a Fintech platform that focuses on companies in need of financing which are listed on the NEEQ, China's lower-tier stock exchange. It sets the bar much lower for listing than other Chinese stock exchanges. There are no requirements that companies be profitable or growing. Moreover, China's security regulator has little oversight of the exchange. As such, the risk of encountering fraudulent companies on the NEEQ is much higher and this makes Beijing Hengpu's financing business for companies on the NEEQ subject to increased risk. ¶51.

The December 15, 2019 Share Exchange Agreement for the Beijing Hengpu Acquisition states that the sellers were Guoya BVI and HongKong D&L. The agreement states that Guoya BVI had an 80% ownership interest, and HongKong D&L had a 20% ownership interest, in Beijing Hengpu.  The purchase price for the exchange of shares was Chinese RMB 80 million, which was approximately $11.4 million. ¶52. As explained below, ***HongKong D&L, Benefactum and Beijing Hengpu are undisclosed related party affiliates of Hebron***.

HKRC's records confirm that HongKong D&L was incorporated in Hong Kong on June 24, 2019 and the company's founder is Xiaoyun Huang ("Huang"). Huang is also HongKong D&L's director and sole owner, according to HKRC corporate records, and the Grizzly Report states that Huang is the company's legal representative. Huang executed the December 15, 2019 Share Exchange Agreement on behalf of HongKong D&L for the Beijing Hengpu Acquisition. It is evident that through this action, Huang has control over HongKong D&L. The Individual Defendants signed on behalf of Hebron. ¶¶53-54

According to Beijing Hengpu's SAMR records, Huang was also registered as Beijing Hengpu's Chairman since June 28, 2017, and, as of October 30, 2020, remains the Chairman and legal representative of Beijing Hengpu. Although Hebron claims that "Huang left his position at

Beijing Hengpu more than one year before" the Beijing Hengpu Acquisition, the Company admitted that as late as July 31, 2020, Huang was still listed as Beijing Hengpu's legal representative "due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information." Through these positions held, Huang had "possession . . . of the power to direct or cause the direction of" Beijing Hengpu during the time of the transaction on December 15, 2019.[2] ¶55.

SAMR records confirm that Bodang Liu, Hebron's largest shareholder, owns 99.99% of Benefactum, which operates online financial platform www.hyjf.com ("HuiYingJinFu"). HuiYingJinFu is a P2P platform designed to match companies with investors. Throughout 2019, Huang was also reported to be CEO of HuiYingJin Fu, and CEO of Benefactum according to multiple media articles. ¶56.

Bodang Liu, in addition to being the 99.99% owner of Benefactum, is also the Chairman and CEO of NiSun Shanghai, a disclosed related party to Hebron according to NiSun Shanghai's website. SAMR filings confirm that until October 17, 2019, Bodang Liu was a 99% shareholder of NiSun Shanghai.  Huang is also reported to be NiSun Shanghai's Chief Fintech Officer according to an August 19, 2019 post on NiSun Shanghai's website and multiple media articles. ¶57.

*Huang acts as an "intermediary"* between Beijing Hengpu and Bodang Liu (as that term is used within the definition of "affiliate" in ASC 850-10-20).  Since Huang is the Chairman and Legal Representative of Beijing Hengpu and CEO of Benefactum, which is 99.99% owned by Bodang Liu, ***Beijing Hengpu and Hebron are related parties under common control from***

---

[2] ASC 850-10-20 (defining "control").

*intermediaries and/or affiliates with Bodang Liu*.  This conclusion is consistent with the first example of "related parties" under ASC 850. ¶58.

SAMR filings confirm that Mr. Peng Jiang has been registered as Beijing Hengpu's director and manager since June 28, 2017. Members of the board of directors hire and/or approve the hiring of top management in companies, which gives them a certain amount of control. Managers are involved setting and implementing company policies and procedures. Through both of these positions, Peng Jiang clearly had control over Beijing Hengpu at the time of the transaction on December 15, 2019. SAMR filings also confirm that he is a legal representative and 99% shareholder of NiSun Shanghai since October 17, 2019, a disclosed related party of Hebron. NiSun Shanghai's website also states that he is Vice President of NiSun Shanghai. Therefore, through his control relationships over NiSun Shanghai and Beijing Hengpu, *Peng Jiang is an undisclosed related party of Hebron.  He is also an undisclosed related party to the Beijing Hengpu Acquisition* (i) via his relationship with NiSun Shanghai; and (ii) because he is also the legal representative of Hebron's 100%-owned VIE company, Shanghai Fintech, as confirmed by SAMR filings.  (Hebron acquired Shanghai Fintech through acquiring NiSun BVI from Bodang Liu on July 12, 2019).  This conclusion is consistent with the first example of "related parties" under ASC 850. ¶59.

### 3.    Hebron's Acquisition of Nami Holding (Cayman) Was an Undisclosed Related Party Transaction

On May 22, 2020, Hebron filed a Form 6-K with the SEC signed by Defendant Sun, along with a press release, announcing that the Company had entered into a share purchase agreement with Nami Holding (Cayman), and Nami Holding (BVI), shareholder of Nami Holding (Cayman), to acquire all of the outstanding shares of Nami Holding (Cayman). According to the May 22, 2020 6-K, the agreement provides that Nami Holding (BVI) will receive aggregate consideration

of RMB 180 million (approximately $25.38 million) valued as of the date the agreement was executed, consisting of RMB 50 million (approximately $7.05 million) in cash and 1,562,726 shares of the Hebron's Class A common shares. The agreement was executed on May 12, 2020 and closed shortly thereafter (the "Nami Holding (Cayman) Acquisition"). After the acquisition, Nami Holding (BVI) holds 1,562,726 shares of Hebron, and Hebron holds all of the outstanding shares of Nami Holding (Cayman). ¶¶ 64-65.

The May 22, 2020 6-K states that Nami Holding (Cayman) is the parent company of a financial services group that is majority-owned and controlled by Mr. Jinbao Li. HKRC records confirm that Mr. Jinbao Li is the founder and owner of Nami Holding (Hong Kong). According SAMR's records, Nami Holding (Hong Kong) owns 100% of Shanghai Naqing, which was established on August 23, 2019. SAMR records also confirm that on May 20, 2020, all of Shanghai Nami shares were pledged to Shanghai Naqing.  The two Shanghai Nami shareholders who pledged 100% of their shares were Jinbao Li, pledging 85% of Shanghai Nami, and Xin Liu, pledging 15% of Shanghai Nami. According to Hebron's August 14, 2020 Form 6-K filed with the SEC, Jinbao Li has been the CEO of Shanghai Nami since April 2016. Effectively, Shanghai Nami is under the control of Nami Holding (Hong Kong).  *Jinbao Li is an undisclosed related party along with Nami Holding (Cayman)* due to Jinbao Li's 85% ownership of Shanghai Nami. Since Jinbao Li is an undisclosed related party, *Shanghai Nami is an undisclosed related party* as well (because Mr. Li owns 85% of Shanghai Nami). ¶¶66-68.

CW 1 was legal counsel at NiSun Shanghai from July 2017 through July 2018.  CW 1 prepared legal documents and contracts, and provided legal and compliance opinions for NiSun's Shanghai's financial products and investment activities. According to CW 1, Shanghai Nami, Benefactum and NiSun Shanghai (a disclosed related party to Hebron) *were really all the same*

9

*company*, just in different locations. CW 1 stated that Shanghai Nami sold HuiYingJinFu's financial products under NiSun Shanghai, and that Shanghai Nami was originally just a department within NiSun Shanghai, but was spun off due to compliance-related issues, since P2P corporations are not permitted to conduct sales for their own financial products. ¶69.

Bodang Liu controls Shanghai Nami through his active involvement as CEO and Chairman of NiSun Shanghai and as the Chairman and Controller of Huiying Financial, according to SEC filings. CW 2 was Jinbao Li's Assistant at Shanghai Nami from February 2018 to February 2019. During the course of CW 2's employment, CW 2 reported directly to Jinbao Li, who, according to CW 2, was also President of Shanghai Nami. CW 2 stated that Shanghai Nami is a sales company selling financial products under the same corporate group as HuiYingJinfu. CW 2 stated that Jinbao Li reported directly to Bodang Liu. *Even though Jinbao Li owned 85% of Shanghai Nami, CW 2 stated that the decision-making powers of Shanghai Nami were mostly controlled by Bodang Liu*. According to CW 2, Jinbao Li's role at Shanghai Nami was mostly that of a professional manager. ¶70.

NiSun Shanghai is a disclosed related party to Hebron that is controlled by its Chairman and CEO, Bodang Liu. NiSun Shanghai manages an official WeChat account for the NiSun companies. WeChat enables its corporate users to open an official account where companies can share press releases and any recent developments. According to an April 2, 2018 article published by NiSun Shanghai on the WeChat account, Shanghai Nami is a subsidiary of Huiying Financial whose Chairman and Controller is Bodang Liu. The April 2, 2018 article also disclosed that Jinbao Li, who, as previously stated, is the majority owner of Nami Holding (Cayman), is also the CEO of a subsidiary that is under the control of both Huiying Financial and NiSun Shanghai, both of which are controlled by Bodang Liu. That subsidiary is believed to be Shanghai Nami, where, as

stated in Hebron's August 14, 2020 Form 6-K, Jinbao Li has been the CEO since April 2016. These are two different pathways to explain that Shanghai Nami is affiliated with Bodang Liu, who as explained above is the Chairman and Controller of Huiying Financial and Chairman and CEO of NiSun Shanghai. Through either affiliation to Bodang Liu via Huiying Financial or NiSun Shanghai, *Shanghai Nami is an undisclosed related party to Hebron*. ¶71.

The Grizzly Report states that Grizzly Research discovered that the April 2, 2018 article on WeChat was altered after it was originally published by NiSun Shanghai. According to the Grizzly Report, NiSun Shanghai "tried to cover its tracks" by revising the words "*subsidiary* Shanghai Nami" to "*cooperation company* Shanghai Nami." In fact, Hebron admitted in its press release filed with the SEC on July 31, 2020 that the April 2, 2018 article was in fact altered after it was published. According to the Company's press release, the Company "mistakenly stated that NiSun Shanghai and [Shanghai Nami] were subsidiary companies . . . and that error was quickly revised. . . ." Notwithstanding Hebron's claims, Lead Counsel recently found a *curriculum vitae* ("CV") posted on Zhaopin.com, a popular Chinese online job board, for Ms. Zhao, who, according to her CV, was employed by NiSun Shanghai as a Human Resources Manager since May 2018. Her CV also states that Shanghai Nami is a subsidiary of NiSun Shanghai. ¶¶72-74.

Consequently, Bodang Liu controlled *Nami Holding (Cayman)* through its affiliates Nisun Shanghai*, Huiying Financial, and Shanghai Nami*. *Nami Holding (Cayman), Huiying Financial, and Shanghai Nami are undisclosed related parties*. ¶75.

### B.      There Were Shortcomings in the Subsequent Investigation

On July 31, 2020, the Company filed a Form 6-K with the SEC with an attached press release announcing the findings of an investigation conducted by W&C which concluded that none of the three transactions identified in the Grizzly Report qualified as a related party transaction (the "July 31, 2020 Press Release"). Br. at 4; Tharp Decl. Ex. 6. While the Company contends that

11

the July 31, 2020 Press Release should be incorporated by reference and considered by the Court (Br. at 4 n.5), *W&C's findings may only be considered for the fact that the statements were made and not for the truth of the matters asserted therein*.[3] Moreover, Hebron fails to direct the Court's attention to the serious shortcomings in the investigation. The Company's July 31, 2020 Press Release includes the broad disclaimer that the investigation was "based on the information and materials *provided by the Company and relevant individuals*" and that "[b]ecause of time constraints and at instructions of the [Company's] Independent Committee, *[W&C] did not conduct any forensic accounting review and testing for this investigation*." Tharp Decl. Ex. 6. Furthermore, in light of Hebron's argument that the relevant related-party standard is not the standard set forth in U.S. GAAP (*see* Br. at 11-12), it is unclear from the Company's July 31, 2020 Press Release which related-party standard was applied by W&C during its investigation, raising further doubt regarding the conclusions.

### C.    Plaintiffs' Investigation and Related Party Analysis

Lead Counsel, with the assistance of accountants and Chinese-speaking investigators, conducted its own investigation and related party analysis to arrive at the conclusion that Hebron's Loong Fang PIPE Transaction, Beijing Hengpu Acquisition, and Nami Holding (Cayman) Acquisition were material undisclosed related party transactions. ¶9. While Hebron claims that Plaintiffs merely parrot the findings of the Grizzly Report (Br. at 4, 10 n.10), nothing could be further from the truth. The Complaint includes independent factual allegations[4] corroborating allegations drawn from the Grizzly Report.[5] Additionally, the discussion in the Complaint

---

[3] *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2020 U.S. Dist. LEXIS 146995, at *3 n. 2 (S.D.N.Y. Aug. 14, 2020) (Englemayer, J.)
[4] *See*, *e.g.*, ¶¶ 41, 42, 54, 55, 56, 57, 59.
[5] The Grizzly Report includes many other allegations that were not included in the Complaint.

explaining why each of the transactions involved related parties is distinct from that set forth in the Grizzly Report.[6]

## LEGAL STANDARD

### A.      Rule 12(b)(6), Rule 9(b) and the PSLRA Pleading Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in . . . plaintiff's favor (*Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)), this tenet does not apply to legal conclusions (*Iqbal*, 556 U.S. at 678).

In addition to meeting the demands of Rule 12(b)(6), a securities fraud plaintiff must satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI*, 493 F.3d at 99. Similarly, under the PSLRA, "where a plaintiff's claims depend upon allegations that the defendant has made an untrue statement of material fact or that the defendant omitted a material fact necessary to make a statement not misleading, the plaintiff 'shall specify each statement alleged to have been misleading [and] the reasons or reasons why the statement is misleading.'" *Qihoo*, 2020 U.S. Dist. LEXIS 146995, at *12 (quoting 15 U.S.C. § 78u-4(b)(1)). The PSLRA also

---

[6] For example, *compare* Dkt 36-8 (Tharp Decl. Ex. 5) at 10-13 (Grizzly Report discussing the Loong Fang PIPE Transaction) *with* the Complaint ¶¶36-49 (discussing same).

requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)).

### B.    Elements of Plaintiffs' Claims

Plaintiffs assert claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. ¶¶119-33.  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege six elements – "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). To state a claim under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108.

## ARGUMENT

## I.    PLAINTIFFS STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5

### A.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Three Material Related Party Transactions

#### 1.    The Relevant Related Party Standard is FASB ASC 850

Hebron contends that FASB ASC 850 does not apply and that it adopted the definition of "related party" from Item 7.B of the Instructions for SEC Form 20-F (annual report). Br. at 11-12. But Hebron disclosed in its 2019 Annual Report that it filed its financial statements in accordance with U.S. GAAP.  Tharp Decl. Ex. 2 at 3, 8. Consequently, Hebron cannot divorce itself from the requirements of U.S. GAAP, the body of accounting principles used in preparing its financial statements, by asserting that something else is applicable. Additionally, the Instructions for Form 20-F do not state that any part of it supersedes U.S. GAAP and specifically state that the Form is

14

to be used "only as a guide in the preparation of the…annual report" (https://www.sec.gov/files/form20-f.pdf at 4). Moreover, the Instructions refer to requirements apart from those set forth in Form 20-F. *See*, *e.g.*, *id.* General Instructions C.(d) at 4 ("If the same information required by this Form *also is required by the body of accounting principles used in preparing the financial statements, . . .*"); *see also id.* PART I, Item 7. entitled "Major Shareholders and Related Party Transactions" at 20 ("The purpose of this standard is to provide information regarding … transactions the company has entered into with persons *affiliated* with the company and whether the terms of such transactions are fair to the company. *The standards may require disclosure of related party transactions not required to be disclosed under the body of accounting principles used in preparing the financial statements.*"). Thus, it is clear that U.S. GAAP still applies.

Moreover, there is no significant difference between the related party transaction requirements in Item 7 of the Instructions for Form 20-F and ASC 850 in U.S. GAAP. Item 7 uses the term ***"affiliated"*** which is the same term used in ASC 850. Item 7.B states: "Provide the information required . . . with respect to transactions or loans between the company and ***(a)*** ***enterprises*** *that directly or indirectly through one or more intermediaries, control or are controlled by, or are under common control with, the company*; …."[7] ASC 850-10-20 defines the term "related parties" to include *affiliates* of the entity, and further defines the term ***"affiliates"*** as ***"a party*** *that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an entity."* AC ¶¶ 29-30. Additionally, the term **"affiliate"** is defined in the Instructions for Form 20-F: "An ***'affiliate'*** of a specified person or entity refers

---

[7] https://www.sec.gov/files/form20-f.pdf at 21; Br. at 12 n.12.

to *__one who, directly or indirectly, either controls, is controlled by or is under common control with, the specified person or entity__*".[8]

Thus, the definition of related parties is more expansive than what Hebron contends. *See* Br. at 11-12. *__The transactions that Plaintiffs allege as undisclosed related party transactions include "__parties__" and/or "__enterprises__" that directly or indirectly through one or more intermediaries (or affiliates) are under common control with Hebron.__* These "parties" and/or "enterprises" are under common control with Hebron through Mr. Bodang Liu, who is Hebron's ultimate controlling shareholder with a 46.94% interest. ¶ 23. *__The parties that are under such common control include the (i) Long Fang Trading Co., (ii) Beijing Hengpu, (iii) HongKong D&L, (iv) Benefactum, (v) Mr. Peng Jiang, (vi) Nami Holding (Cayman), (vii) Mr. Jinbao Li, (viii) Shanghai Nami, and (ix) Huiying Financial__*.[9]

### 2.   Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Loong Fang PIPE Transaction

With respect to the Loong Fang PIPE Transaction, Plaintiffs allege that *__Benefactum and the Loong Fang Trading Co. are both affiliated entities of Hebron and thus undisclosed related parties__*. Plaintiffs allege a number of false and misleading statements concerning this transaction. *See* ¶¶38-39, 82-85, 89-94. For example, Hebron issued a press release stating that the Company entered into a share purchase agreement *with two private investors* even though one of the parties, the Loong Fang Trading Co., is an affiliated entity of Hebron. ¶¶39, 44, 93-94. Hebron does not challenge (i) whether Plaintiffs sufficiently allege that Benefactum is an undisclosed related party or (ii) the materiality of any of the alleged false and misleading statements regarding this

---

[8] https://www.sec.gov/files/form20-f.pdf at 5.
[9] To the extent that Hebron argues that the independent investigation confirmed that this transaction was not a related party transaction, this argument should be ignored because there were shortcomings in the investigation and the findings may not be considered for the truth of the matters asserted therein. *Qihoo*, 2020 U.S. Dist. LEXIS 146995, at *3 n. 2. Moreover, based on Hebron's argument that the relevant related-party standard is not the standard set forth in GAAP's ASC 850, the Court has no idea which related party standard was considered by W&C.

16

transaction. Instead, the Company argues that all the statements are true *under the related party standard applied in its 2019 Annual Report*. Br. at 13, 13 n.13.

Hebron contends that Plaintiffs fail to allege sufficiently that Mr. Shang Jiang is a related party (Br. at 13-14), but since *Plaintiffs do not allege that Shan Jiang is a related party*, this argument may be ignored. *See* ¶¶36-44. Plaintiffs allege that Shan Jiang was the signing director on behalf of the Loong Fang Trading Co. for the transaction, and has been a Supervisor at Puhui Investment since April 14, 2020, and a Supervisor at Zhonghui since March 25, 2020. Plaintiffs further allege that Benefactum is the 100% owner of both Puhui Investment and Zhonghui, and that Bodang Liu owns 99.99% of Benefactum. ¶¶38, 41-42. Consequently, Shan Jiang *is an alleged intermediary* between the Loong Fang Trading Co. and Bodang Liu, **which makes the Loong Fang Trading Co. a related party with Hebron** through common control under Bodang Liu. ¶¶38-44.

Hebron also contends that Plaintiffs fail to allege sufficiently that the Loong Fang Trading Co. is a related party to Hebron. Br. at 14. Plaintiffs allege that Bodang Liu has indirect control over the Loong Fang Trading Co. through Benefactum's 100% ownership of Puhui Investment and Zhonghui. Bodang Liu is the 99.99% owner of Benefactum. ¶¶41-43. According to ASC 850-10-20, "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity through ownership, by contract, or otherwise." ¶31. Bodang Liu has control over the Loong Fang Trading Co. under this definition. Mr. Shan Jiang, Puhui Investment, and Zhonghui *act as affiliated entities and/or intermediaries*, making the Loong Fang Trading Co. an enterprise under common control with Hebron through Bodang Liu. ¶43. This conclusion is consistent with the first requirement described in the

17

definition of related parties under ASC 850-10-20 as well as the definition adopted by Hebron in its 2019 Annual Report.[10],[11]

### 3.    Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Beijing Hengpu Acquisition

With respect to the Beijing Hengpu Acquisition, Plaintiffs allege that ***Hong Kong D&L, Benefactum, and Beijing Hengpu are undisclosed related party affiliates of Hebron***. ¶53. Additionally, Plaintiffs allege that ***Peng Jiang is an undisclosed related party of Hebron and to the Beijing Hengpu Acquisition*** via his relationship with NiSun Shanghai; and because he is also the legal representative of Hebron's 100%-owned VIE company, Shanghai Fintech. ¶59. Plaintiffs allege a number of false and misleading statements concerning this acquisition. ¶¶82-83, 86-92. For example, Plaintiffs allege that the 2019 Annual Report states that Hebron acquired Beijing Hengpu from its "*original [two] shareholders*" without disclosing that one of them, Hong Kong D&L was a related party. ¶87. Hebron concedes that Plaintiffs adequately allege that HongKong D&L and Benefactum are undisclosed related party affiliates of Hebron; and Hebron does not

---

[10] *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) (Br. at 14) does not come close to stating that "to allege control of a related party, [a] securities fraud plaintiff *must* allege [that the] controlling entity 'created, controlled, and made decisions on behalf of' the related party." In *ECA*, the Second Circuit, in a discussion regarding scienter, merely agreed with the district court's findings that plaintiffs alleged with particularity that an entity was a related party. *Id.* at 199-200. Hebron's reliance on *In re China Mobile Games & Ent. Grp., Ltd Secs. Litig.*, 2016 U.S. Dist. LEXIS 29258, at *17 (S.D.N.Y. Mar. 7, 2016) is also misplaced. Unlike the facts in the present action, the plaintiff in *China Mobile* failed to allege "any facts" showing that the defendant "continued to hold decision-making power over" the alleged related party "despite having divested all ownership in the company."

[11] Hebron contends that Plaintiffs' claims related to the Loong Fang PIPE Transaction should be dismissed for the additional reason that "Shan Jiang had no role whatsoever at either of [Puhui Investment or Zhonghui,] *the purported related parties*" when the Loong Fang PIPE Transaction was first announced in December 2019. Br. at 15 n.14. But *Plaintiffs do not allege that Puhui Investment or Zhonghui are related parties*. Additionally, at the time that Hebron filed its 2019 Annual Report on April 24, 2020, Shan Jiang was a Supervisor at Puhui Investment and Zhonghui. *Therefore, Shan Jiang was in a position of control over Puhui Investment and Zhonghui when the 2019 Annual Report was filed. Furthermore, when the Company filed a Form 6-K with the SEC on May 1, 2020 announcing that Hebron had closed the Loong Fang PIPE Transaction, Shan Jiang was part of management at both companies*. ¶¶42, 93. Hebron relies on *Lewy v. Skypeople Fruit Juice, Inc.*, 2012 U.S. Dist. LEXIS 128416, at *57 (S.D.N.Y. Sept. 10, 2012) for the proposition that it is unclear whether the requirement to disclose related party transactions pursuant to Item 404 of Regulation S-K "applies to a situation in which a company agrees to purchase a target, declines for an extended period to do so, and corporate officers then take an interest in the target…." Br. at 15 n.15. The facts in *Skypeople* are distinct from the facts in this case and this action does not involve Item 404 of Regulation S-K.

18

challenge the materiality of any of the alleged false and misleading statements regarding this transaction. Instead, the Company argues that all the statements are true *under the related party standard applied in its 2019 Annual Report*. Br. at 15, 15 n.15.

While the Company argues that Huang is not a related party (Br. at 16), this argument may be ignored as *Plaintiffs do not allege that Huang is a related party*. According to Beijing Hengpu's SAMR records, Huang is registered as Beijing Hengpu's Chairman since June 28, 2017 and, as of October 30, 2020, remains the Chairman and Legal Representative of Beijing Hengpu. ¶55. Through these positions held, Plaintiffs adequately plead that Huang has "possession . . . of the power to direct or cause the direction of"[12] Beijing Hengpu during the time of the transaction on December 15, 2019.[13] Furthermore, Huang is also alleged to be the director and sole owner of HongKong D&L. He executed the Share Exchange Agreement on behalf of HongKong D&L for the Beijing Hengpu Acquisition. It is evident that through this action, he has control over HongKong D&L, an entity that is alleged to be an undisclosed related party through common control with Bodang Liu. ¶54

*Huang acts as an intermediary* between Beijing Hengpu and Bodang Liu. Since Huang is alleged to be the Chairman and Legal Representative of Beijing Hengpu and CEO of Benefactum, which is 99.99% owned by Bodang Liu, ***Beijing Hengpu and Hebron are related parties*** under common control from intermediaries and/or affiliates with Bodang Liu. ¶¶41, 56-58.[14] This

---

[12] ¶31 (ASC 850-10-20 (defining "control")).

[13] "Although Hebron claims that 'Huang left his position at Beijing Hengpu more than one year before' the Beijing Hengpu Acquisition, the Company admitted that as late as July 31, 2020, Huang was still listed as Beijing Hengpu's legal representative 'due to certain government regulatory policies that have temporarily prohibited the company from changing its registration information.'" ¶55. Unlike plaintiffs in *China Mobile*, 2018 U.S. Dist. LEXIS 29258, at *16-17, Plaintiffs here adequately allege facts showing that Huang continued to have *possession* . . . of the power to direct or cause the direction of" Beijing Hengpu during the time of the transaction on December 15, 2019.

[14] Plaintiffs allege that throughout 2019, Huang was reported to be CEO of Benefactum according to multiple media articles; CEO of HuiYingJinFu according to one article; and Vice President and Chief Fintech Officer of NiSun Shanghai according to NiSun Shanghai's website and multiple media articles. ¶¶56-57. Hebron takes issue with these articles because they are not in English and contend that the Court cannot "determine who made the alleged

19

conclusion is consistent with the first requirement described in the definition of related parties under ASC 850-10-20.

Hebron also contends that Plaintiffs fail to allege adequately that Peng Jiang is a related party. Br. at 17. Plaintiffs allege that SAMR filings confirm that Mr. Peng Jiang has been registered as Beijing Hengpu's director and manager since June 28, 2017. Members of the board of directors hire and/or approve the hiring of top management in companies, which gives them a certain amount of control. Additionally, managers are involved setting and implementing company policies and procedures. Through both of these positions, Peng Jiang had control over Beijing Hengpu at the time of the transaction on December 15, 2019. SAMR filings also confirm that he is a legal representative and 99% shareholder of NiSun Shanghai since October 17, 2019, a disclosed related party of Hebron. NiSun Shanghai's website also states that he is Vice President of NiSun Shanghai. Therefore, through his control relationships over NiSun Shanghai and Beijing Hengpu, ***Peng Jiang is an undisclosed related party of Hebron.  He is also is an undisclosed related party to the Beijing Hengpu Acquisition*** (i) via his relationship with NiSun Shanghai; and (ii) because he is also the legal representative of Hebron's 100%-owned VIE company, Shanghai Fintech, as

---

statements" and "evaluate their reliability" as a result. Br. at 17 n.16. But this argument carries no weight because the articles merely support Plaintiffs' allegations that Huang *was reported to have these titles.* Additionally, on a motion to dismiss, the court must assume that the facts alleged in the complaint are true and draw all inferences in favor of Plaintiffs, the non-moving parties. *See A.I.G. Asian Infrastructure Fund, L.P. v. Chase Manhattan Asia Ltd.*, 2004 U.S. Dist. LEXIS 27334, at *5 (S.D.N.Y. Mar. 25, 2004), *aff'd*, 122 Fed. App'x 541 (2d Cir. Feb. 25, 2005). Hebron's reliance on *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, 2016 U.S. Dist. LEXIS 98632, at *20 n. 11 (S.D.N.Y. July 28, 2016) is misplaced because *Vantone* involved a motion for summary judgment. *Id.* at *4, 19. Additionally, *Wei v. Sun*, 2018 U.S. Dist. LEXIS 65556, at *3 (N.D. Cal. Apr. 18, 2018), is inapposite to the present action. In *Wei*, plaintiff, who was proceeding *in forma pauperis*, attached "more than fifty pages of material," some of which were in Chinese, to his complaint, "[i]nstead of providing a short and plain statement identifying the basis of his claims…." 2018 U.S. Dist. LEXIS 65556, at *3. Therefore, "[m]uch of the Complaint is hard to follow." *Id.* That is far different than this action. Furthermore, *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 U.S. Dist. LEXIS 137387, at *81 (S.D.N.Y. Sept. 29 2014) is irrelevant. In that case, as opposed to here, plaintiffs relied on an article to establish scienter where the article did "not reveal the identity or position of the person who provided the information" that was the basis for the alleged scienter.

confirmed by SAMR filings. This conclusion is consistent with the first requirement described in the definition of related parties under ASC 850-10-20.[15]

### 4. Plaintiffs Adequately Allege False and Misleading Statements by Defendants Concerning the Nami Holding (Cayman) Acquisition

With respect to the Nami Holding (Cayman) Acquisition, Plaintiffs allege that *Jinbao Li, Shanghi Nami, Nami Holding (Cayman) and HuiYing Financial are undisclosed related parties to Hebron*. ¶¶68, 71, 75. Plaintiffs allege that the press release attached to the Company's May 22, 2020 Form 6-K announcing the transaction contain false and misleading statements concerning this acquisition. ¶¶95-96. Hebron does not challenge (i) whether Plaintiffs adequately allege that HuiYing Financial is a related party or (ii) the materiality of these statements. Instead, the Company argues that the statements are true because Jinbao Li, Shanghai Nami and Nami Holding Cayman are not related parties *under the related party standard applied in its 2019 Annual Report*. Br. at 18. But that argument carries no weight as the alleged false and misleading statements *are not in Hebron's 2019 Annual Report*. ¶95. Hebron also contends that Plaintiffs' allegations that Shanghai Nami is a subsidiary of either HuiYing Financial or NiSun Shanghai are contradictory. Br. at 18-19. But these are two different pathways to explain that Shanghai Nami is affiliated with Bodang Liu, who is the Chairman and Controller of Huiying Financial and Chairman and CEO of NiSun Shanghai. Through either affiliation to Bodang Liu via Huiying Financial or NiSun Shanghai, *Shanghai Nami is an undisclosed related party to Hebron*. ¶71.[16]

---

[15] Hebron directs the Court's attention to the findings of the investigation (Br. at 17 n.17), but as previously stated, such findings may not be considered for the truth of the matters asserted therein; there were shortcomings in the investigation; and there is no indication which related party standard was utilized by W&C. Hebron relies on *China Mobile* (Br. at 17), but in that case, unlike here, the complaint neither explained the relationship between parties nor described any facts showing decision-making power over a company. 2016 U.S. Dist. LEXIS 29258, at *17. Hebron contends that because Plaintiffs have failed to allege that Huang is a related party, they also fail to allege Beijing Hengpu is a related party to Hebron. Br. at 18 n.18. But as stated above, Plaintiffs do not allege that Huang is a related party.

[16] Hebron contends that Plaintiffs' CW allegations cannot be credited because the two CWs were not employed at NiSun Shanghai and Shanghai Nami, respectively, at the time of this acquisition. Br. at 19. However, the Second

B.       **Plaintiffs Sufficiently Allege Scienter**

Plaintiffs adequately plead a strong inference of scienter. In evaluating the strength of an inference of scienter, "courts must consider the complaint in its entirety" because the "inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "In the Second Circuit, there are two ways in which a securities fraud plaintiff can adequately plead scienter: (1) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Janel World Trade, Ltd. v. World Logistics Serv.*, 2009 U.S. Dist. 30256, at *14 (S.D.N.Y. Mar. 20, 2009).

With respect to opportunity, Plaintiffs adequately plead that the Individual Defendants, as officers of the Company, had an opportunity to commit securities fraud. *Id.* at *15. As to motive, Plaintiffs allege that the 2019 Annual Report disclosed that Hebron owed almost $2 million in bank loans and bank acceptance notes to multiple banks, and *that all of the debt was guaranteed by members of management and their immediate families. In fact, Defendant Sun and his brother guaranteed the debt with recourse to their respective homes*. Sun was under tremendous financial pressures to get Hebron's debt repaid. ¶101. As such, Plaintiffs adequately plead that Defendant Sun "had incentives relating to present, existing and personal liability . . . [at the time of each related party transaction] which created a concrete personal motive for him to participate in" this securities fraud. *Janel World*, 2009 U.S. Dist. LEXIS 30256, at *17. Moreover, two months after the allegations in the Grizzly Report were disclosed, Hebron disclosed that Sun had resigned from

---

Circuit has stated that "allegations concerning activity in one period can support an inference of similar circumstances in a subsequent period. *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015).

the Company as CEO and Chairman, effective immediately following the election of a successor. On September 4, 2020, Hebron announced that Defendant Sun had been replaced by Huang as CEO and Chairman on the Company. ¶107. Additionally, Defendant Liang, the CFO, is beholden to Bodang Liu. She appears to have been appointed CFO because Bodang Liu had significant influence over who holds key management positions at the Company. Prior to her position as Hebron's CFO, she had been a senior financial manager for NiSun Shanghai, which is controlled by Bodang Liu. Liang also served as CFO of Shanghai Fintech Holding since May 2019, which is a subsidiary of NiSun BVI, a company owned by Bodang Liu until it was acquired by Hebron on July 12, 2019. Defendant Liang's appointment as CFO helped set the stage for Defendants' fraud (¶102), as did the firing of the Company's highly regarded independent auditor, Friedman LLP, on February 26, 2019, before the transactions (¶106). Moreover, the fact that two of the three Related Party Transactions relate to Hebron's financial services segment, one of its two core business segments during the time in which the Individual Defendants were at Hebron's helm (¶104), provides further evidence of scienter. *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 Fed. App'x 10, 14 n.3 (2d Cir. 2011) (summary order) ("allegations of a company's core operations, GAAP violations, and removal of its executives can provide supplemental support for allegations of scienter"). Furthermore, the positions held by the Individual Defendants (CEO and CFO) in this *small* public holding company, in conjunction with the *number of related party transactions in a six-month period*, provide further support that the Individual Defendants, and by extension Hebron, knowingly or recklessly, made the misrepresentations and omissions concerning the transactions. The alleged false or misleading statements regarding the Company's Related Party Transactions would invariably be brought to the attention of senior executives in a small company, and therefore, the Individual Defendants' positions bolster the inference of

23

scienter. ¶105; *see Alaska Elec. Pension Fund v. Asar*, 768 Fed. App'x 175, 188 (5th Cir. 2019) ("the smaller the company the more likely it is that corporate executives would be familiar with the intricacies of day-to-day operations."); *Cohen v. Kitov Pharm. Holdings, Ltd.*, 2018 U.S. Dist. LEXIS 45676, at \*25-26 (S.D.N.Y. Mar. 20, 2018) (considering defendant's "position as CEO in a small organization" in scienter analysis). Accordingly, Plaintiffs adequately plead scienter.

C.    **Plaintiffs Adequately Plead Loss Causation**

To plead loss causation, a complaint "must simply give Defendants some indication of the actual loss suffered and . . . a plausible causal link between the loss and the alleged misrepresentations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). "This can be done by alleging...the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud…." *In re Vale S.A. Sec. Litig.*, 2017 U.S. Dist. LEXIS 42513, at \*81-82 (S.D.N.Y. Mar. 23, 2017). The burden of pleading loss causation is "not a heavy one." *Loreley*, 797 F.3d at 187. Here, Plaintiffs easily satisfy this standard by alleging that the June 3, 2020 presentation of excerpts from the Grizzly Report at a Virtual Investor Conference along with the publication of the entire Grizzly Report on Grizzly Research's website that same day, caused the Company's share price to drop over two consecutive days. ¶¶97-100. Hebron contends that Plaintiffs fail to adequately allege loss causation because their loss cannot be "proximately caused by non-existent misrepresentations or omissions." Br. at 2, 25. But this argument carries no weight because Plaintiffs adequately allege several actionable misrepresentations and/or omissions. *See* ¶¶81-96. The Company also argues that the Grizzly Report cannot constitute a corrective disclosure because the report relied on information that was theoretically available to the public. Br. at 25. However, *the Company's corporate filings in other countries, in Chinese*, do not transform the information contained within them into matters of general public knowledge that may properly be imputed to Hebron's investors. *See In re Fuwei*

24

*Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009); *see*, *e.g.*, ¶¶41-42, 54-57, 59, 66-67. The Grizzly Report revealed new information to the market directly contrary to Defendants' statements that had not been previously pieced together, published, and widely disseminated. *See Vale*, 2017 U.S. Dist. LEXIS 42513, at *86-87. ("the Court cannot conclude that [an analyst report] alone put the market on notice of the critical facts underlying the disclosure of the Brazilian court's ruling…sufficient to conclude as a matter of law that this disclosure was not corrective."). Consequently, Plaintiffs adequately allege loss causation.

## II.   PLAINTIFFS STATE A CLAIM UNDER SECTION 20(a)

Plaintiffs adequately plead control person liability against the Individual Defendants under Section 20(a) because they allege a primary violation by Hebron, control of Hebron by the Individual Defendants, and that the Individual Defendants were culpable participants in Hebron's fraud. *See ATSI*, 493 F.3d at 108; ¶¶130-33. Although Hebron argues for dismissal of this claim because Plaintiffs' primary claim fails (Br. at 25), ***Hebron lacks standing to make this argument on behalf of non-appearing defendants***. *See Ashcroft v. Dep't of Corr.*, 2007 U.S. Dist. LEXIS 49079, at *26 (W.D.N.Y. July 6, 2007). Moreover, even if it did have standing, Plaintiffs adequately allege a 10(b) claim.

### CONCLUSION

For all the above reasons, Hebron's motion to dismiss should be denied in its entirety.[17]

Dated: March 12, 2021                                    Respectfully submitted,

                                                        **POMERANTZ LLP**

---

[17] Should the Court find that the Complaint contains pleading deficiencies, Plaintiffs request leave to amend which shall be freely granted. *See* Fed. R. Civ. P. 15(a)(2). While the Court's December 22, 2020 Order states that "no further opportunities to amend will *ordinarily* be granted" (Dkt. No. 37 at 1), granting leave to amend is often appropriate when granting a motion to dismiss for failure to state a claim (*Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003)), and Hebron has not pointed to any compelling reason why leave to amend should be denied.

*/s/ Brenda Szydlo*
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
       bszydlo@pomlaw.com

*Counsel for Lead Plaintiff Edward A. Dahlke, Plaintiff Michael Clynes, and the proposed Class*

**THE SCHALL FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel: 310-301-3335
Fax: 877-590-0483
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Edward A. Dahlke*

**Glancy Prongay & Murray LLP**
Gregory B. Linkh
230 Park Avenue, Suite 530
New York, New York, 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
Email: glinkh@glancylaw.com

*Additional Counsel for Plaintiff Michael Clynes*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/Brenda Szydlo*
Brenda Szydlo
